**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

---------------------------------------------------------------x

KEVIN A. GADSON, et al.,             :
                                  :
         Plaintiffs,         :
                                  :
         v.           :     Civil Action No. 10-cv-01057-AW
                                  :
SUPERSHUTTLE INTERNATIONAL, INC., et al.,:
                                  :
         Defendants.       :

---------------------------------------------------------------x

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION TO COMPEL ARBITRATION
AND TO DISMISS THE FIRST AMENDED COMPLAINT**</u>

Russell R. Bruch, Esq. (Bar No. 17108)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
202-739-5293
202-739-3001 (fax)
rbruch@morganlewis.com

Christopher A. Parlo, Esq. *(admitted pro hac vice)*
Melissa C. Rodriguez, Esq. *(admitted pro hac vice)*
Leni D. Battaglia, Esq. *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
212-309-6000
212-309-6001 (fax)
cparlo@morganlewis.com
mcrodriguez@morganlewis.com
lbattaglia@morganlewis.com

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................... 3

III.   ARGUMENT ......................................................................................................... 6

     A.    The Applicable Rule 12(b)(6) Standard ........................................................... 7

     B.    The Legal Standards Concerning a Motion to Compel Arbitration ..................... 8

     C.    Plaintiffs Should Be Compelled To Arbitrate Their Claims Pursuant Their UFAs. ......................................................................................................... 10

          1.    There is a dispute between the parties which Plaintiffs have refused to arbitrate ........................................................................................... 10

          2.    The UFAs involve interstate commerce ................................................. 10

          3.    The arbitration provisions in the UFAs cover Plaintiffs' claims ............. 12

          4.    Dismissal Of This Action Is Also Proper Because All Claims Are Subject To Arbitration. ....................................................................... 15

     D.    The Court Should Dismiss Plaintiff's Class Claims For The Additional Reason That Their UFAs Prohibit Them From Bringing Class or Collective Action Claims. ........................................................................... 15

     E.    Plaintiffs' Claims Should Be Dismissed As Time-Barred .............................. 18

          1.    Plaintiffs' claims are barred by the one-year statute of limitations contained in the UFAs .......................................................................... 18

          2.    Plaintiff Enajekpo's Maryland Franchise Law claim is in any event time-barred. ...................................................................................... 20

     F.    Plaintiffs' Maryland Franchise Law Claim Should Be Dismissed Because It Was Not Pled With The Requisite Particularity. ......................................... 20

     G.    The Court Should Dismiss The Improperly Named Defendants ........................ 22

IV.    CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AT&T Technologies. v. Communications Workers of America*, 475 U.S. 643 (1986)..................................................................................................................9

*Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628 (S.D. W.Va. 2001) ............................14

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002)...................................... *passim*

*Akpan v. Bank of America, N.A.*, No. 04-cv-1544, 2004 U.S. Dist. LEXIS 28256 (D. Md. Sept. 27, 2004) ...............................................................................................15

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ..........................................11

*American General Life & Accident Insurance Co.*, 429 F.3d 83 (4th Cir. 2005)..............13

*Arrigo v. Blue Fish Commodities, Inc.*, 09 Civ. 7518, 2010 WL 391813 (S.D.N.Y. Feb. 4, 2010) ............................................................................................................17

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................8, 23

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)..................................................7, 23

*Carter v. Countrywide Industrial, Inc.*, 362 F.3d 294 (5th Cir. 2004) .......................13, 16

*Carter v. MasTec Servs. Co.*, No. 2:09-Civ.-2721 (PMD), 2010 WL 500421 (D.S.C. Feb. 5, 2010) .............................................................................................17

*Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707 (4th Cir. 2001)..........................................................................................................15

*Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324 (S.D.N.Y. 2003) ...................13

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001).................................................11

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) .......................................................11

*Cole v. Burns International Sec. Services*, 105 F.3d 1465 (D.C. Cir. 1997) ....................11

*Conley v. Gibson*, 355 U.S. 41 (1957) ...............................................................................7

*In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274 (4th Cir. 2007) ..............................19

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)..................................................9

# TABLE OF AUTHORITIES

*Dieng v. College Park Hyundai*, No. DKC 2009-0068, 2009 WL 2096076 (D. Md. July 9, 2009) ................................................................................................15, 19

*Drews Distributing, Inc. v. Silicon Gaming, Inc.*, 245 F.3d 347 (4th Cir. 2001) .........9, 12

*Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).....................................7

*Faber v. Menard, Inc.*, 367 F.3d 1048 (8th Cir. 2004) .......................................................8

*Gammaro v. Thorp Consumer Discount Co.*, 828 F. Supp. 673 (D. Minn. 1993)............17

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).........................................13

*Green Tree Finance Corp. - Ala. v. Randolph*, 531 U.S. 79 (2000)...................................9

*Harmon v. Bankunited*, No. WDQ-08-3456, 2009 WL 3487808 (D. Md. Oct. 22, 2009) ...........................................................................................................20, 21

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)................21

*Hartford Accident & Indemnity Co. v. Swiss Reinsurance America Corp.*, 246 F.3d 219 (2d Cir. 2001)..................................................................................8

*Industrial Wire Products, Inc. v. Costco Wholesale Corp.*, 576 F.3d 516 (8th Cir. 2009) ....................................................................................................9

*Johnson v. Daimlerchrysler Corp.*, No. C.A. 02-69 GMS, 2003 WL 1089394 (D. Del. Mar. 6, 2003)......................................................................................19

*Johnson v. Wheeler*, 492 F. Supp. 2d 492 (D. Md. 2007)................................................20

*Jones v. Genus Credit Management Corp.*, 353 F. Supp. 2d 598 (D. Md. 2005).............12

*Liebowitz v. Cornell Univ.*, No. 03 Civ. 9976 (GBD), 2005 WL 267560 (S.D.N.Y. Feb. 3, 2005) ................................................................................23

*Livingston v. Associates Finance, Inc.*, 339 F.3d 553 (7th Cir. 2003)............................16

*Madol v. Dan Nelson Automobile Group*, 372 F.3d 997 (8th Cir. 2004) .........................9

*McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1992).........................................................22

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)........8, 13

# TABLE OF AUTHORITIES

*Moses H. Cone Memorial Hospital*, 460 U.S. 1 (1983).......................................8

*Orion Construction Group, LLC v. Berkshire Wind Power, LLC*, No. 07-C-10,
   2007 WL 1118375 (E.D. Wis. Apr. 13, 2007)..............................................22

*Pick v. Discover Finance Services, Inc.*, No. Civ.A. 00-935-SLR, 2001 WL
   1180278 (D. Del. Sept. 28, 2001) ................................................................18

*Pleasants v. America Express Co.*, 541 F.3d 853 (8th Cir. 2008) ....................16

*Pomposi v. Gamestop, Inc.*, No. 3:09-Civ.-340 (VLB), 2010 WL 147196
   (D.Conn. Jan. 11. 2010)..............................................................................17

*Poteat v. Rich Products Corp.*, 91 F. App'x. 832 (4th Cir. 2004).........10, 13, 15

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967)..........12

*Reid v. SuperShuttle International, Inc.*, No. 08-CV-4854 (JG), 2010 WL
   1049613 (E.D.N.Y. Mar. 22, 2010) ............................................................16

*Samadi v. MBNA Am. Bank, N.A.*, 178 F. App'x 863 (11th Cir. 2006) ............18

*Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) .........................................9

*Secretary of State for Defense v. Trimble Navigation Ltd.*, 484 F.3d 700 (4th Cir.
   2007) ....................................................................................................7, 8, 23

*Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002) ...........17

*Turner v. Eastern Savings Bank, FSB*, No. 09-cv-2637-AW, 2010 WL 1409858
   (D. Md. Apr. 2, 2010) .................................................................................21

*White v. Moylan*, 554 F. Supp. 2d 263 (D. Conn. 2008)..................................22

*Whiteside v. Teltech Corp.*, 940 F.2d 99 (4th Cir. 1991)..................................10

## STATE CASES

*College of Notre Dame of Md. v. Morabito Consultants, Inc.*, 132 Md. App. 158,
   752 A.2d 265 (2000)....................................................................................19

*Edelist v. MBNA America Bank, N.A.*, 790 A.2d 1249 (Del. Super. Ct. 2001) ................18

# TABLE OF AUTHORITIES

*Hennegan v. Cardiology Consultants, P.A.*, C.A. No. 07C-02-015, 2008 WL
2943397, at \*4 (Del. Super. Ct. Jul. 15, 2008) ..............................................19

*Holmes v. Coverall N. America, Inc.*, 336 Md. 534, 649 A.2d 365 (1994) ......................13

*Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735 (2005) ......................................17

## FEDERAL STATUTES

9 U.S.C. § 2 ..............................................................................................................10

9 U.S.C. § 4 ................................................................................................................9

Federal Arbitration Act, 9 U.S.C. § 1 *et seq* ..................................................................6

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., ..........................................1

Fed. R. Civ. P. 5 (b)(2)(E) ...............................................................................................6

Fed. R. Civ. P. 6(d) .........................................................................................................6

Fed. R. Civ. P. 12(b)(2)...................................................................................................10

Fed. R. Civ. P. 12(b)(6)................................................................................................1, 6, 7

Fed. R. Civ. P. 15(a)(3)...............................................................................................1, 6

## STATE STATUTES

Md. Code  §§ 3-401 et seq................................................................................................1

Md. Code §§ 3-502 et seq.................................................................................................2

Md. Code §§ 14-201 et seq...............................................................................................2

Md. Code Ann. § 14-227 ..................................................................................................20

I.    **PRELIMINARY STATEMENT**

Defendants SuperShuttle International, Inc. ("SSI"), Shuttle Express Corporation[1]

("SEC"), Shuttle Express, Inc. ("SEI"), SuperShuttle Franchise Corporation ("SFC")

(collectively, "SuperShuttle"), Veolia Transportation, Inc. ("Veolia), and Veolia Environment

North America Operations LLC ("Veolia Environment") (collectively, "Veolia") (SuperShuttle

and Veolia, collectively, "Defendants") respectfully submit this memorandum of law in support

of their motion to compel arbitration of the claims of the three named Plaintiffs, and in support of

their motion under Fed. R. Civ. P. 12(b)(6) to dismiss the First Amended Complaint.[2]

Plaintiffs are current and former franchisees of SEI who transport(ed) customers, for a

charge, to and from the Baltimore-Washington International Airport and its surrounding area.

Throughout Plaintiffs' entire relationship with SEI they knowingly and voluntarily were

classified as independent contractors.  Their independent contractor relationships were explicitly

set forth in the Unit Franchisee Agreements ("UFAs") that each of them entered into with SEI.

Despite their acknowledgment of their status and treatment as franchisees and independent

contractors, and their acceptance of all of the tax and other benefits that came with that status,

Plaintiffs now claim that they are entitled to wages as "employees."  Specifically, in their First

Amended Complaint, Plaintiffs, on behalf of themselves and purported similarly-situated

franchisees, allege that Defendants failed to pay them minimum wage and overtime

compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.,

(Am. Compl. ¶¶ 38-47, First Count), the Maryland Wage and Hour Law ("MWHL"), Md. Code

---

[1] There is no legal entity named "Shuttle Express Corporation."  Declaration of Russell R. Bruch, ("Bruch Decl."), attached hereto as Exhibit 1, at ¶ 2.  It apparently is an entity, and name, Plaintiffs made up.
[2] Plaintiffs' original Complaint was filed on April 28, 2010 and served on or about May 7, 2010.  Dkt. Nos. 1, 5-7.  Thereafter, Plaintiffs' filed and served their First Amended Complaint on June 3, 2010. Dkt. No. 22.  Defendants now make this motion to within the time to respond to the Amended Complaint. Fed. R. Civ. P. 15(a)(3), 6(d).

§§ 3-401 et seq. and the Maryland Wage Payment and Collection Law ("MWPCA"), Md. Code

§§ 3-502 et seq. Am. Compl. ¶¶ 48-56, 65-71, Second and Fourth Counts.[3]  Plaintiffs

alternatively claim that, even if they were properly classified as franchisees and independent

contractors, Defendants misrepresented certain terms of their UFAs in alleged violation of the

Maryland Franchise Law, Md. Code §§ 14-201 et seq.  Am. Compl. ¶¶ 57-71, Third and Fourth

Counts.

     As demonstrated below, the Court should compel arbitration of all of Plaintiffs' claims

pursuant to the UFAs they each signed.  Each of the UFAs contains an arbitration provision that

requires Plaintiffs to arbitrate any and all claims "arising out of" the UFAs.  Because Plaintiffs'

claims are based on their allegations that Defendants misclassified them as independent

contractors in the UFAs, or misrepresented certain franchise terms contained in and governed by

the UFAs, all of their claims arise out of the UFAs and fit squarely within the scope of the

arbitration agreement.  Courts have consistently held that claims analogous to Plaintiffs' are

arbitrable, and Plaintiffs should be compelled to arbitrate all of their claims.

     Moreover, all of Plaintiffs' claims must be dismissed because when they signed their

UFAs they agreed not to bring any class or collective actions and to resolve any disputes

individually.  Specifically, the UFAs contain a class action waiver provision that expressly states

that a franchisee can bring a claim on "an individual basis only and not on a class-wide, multiple

plaintiff or similar basis."  Therefore, Plaintiffs' claims should be dismissed pursuant to their

agreement not to bring a class or collective action.

     Plaintiffs' claims should also be dismissed to the extent they are untimely under the one-

year statute of limitations period contained in their UFAs.  The UFAs expressly limit claims to a

---

[3] Plaintiffs also allege that Defendants violated the record-keeping requirements of the FLSA and the MWHL.  Am. Compl. ¶¶ 45, 54.

one-year limitations period.  Courts routinely uphold parties' agreements to shorten limitations

periods, and, therefore, all of Plaintiffs' claims should be dismissed, in whole or in part, as

untimely.  Alternatively, Plaintiff Enajekpo's Maryland Franchise Law claim should be

dismissed as time barred by the three-year statute of limitations under that Law.  Plaintiffs'

Maryland Franchise Law claim should also be dismissed because their averments concerning

alleged misrepresentations are not pled with the requisite particularity.  Finally, this Court should

dismiss the improperly named Defendants in this case.

      For these reasons, the Court should grant Defendants' motion to compel arbitration and

dismiss the First Amended Complaint.

## II.   <u>FACTUAL BACKGROUND</u>

      Plaintiffs are current or former franchisees of SEI.  Am. Compl. ¶¶ 18-20; Exs. A, B, C

and D to Bruch Decl.  As franchisees of SEI, Plaintiffs lease(d) or purchase(d) vans to transport

customers, for a charge, to and from the Baltimore-Washington International ("BWI") Airport

and the surrounding areas.  Am. Compl. ¶ 16; Exs. B, C and D to Bruch Decl.

      In order to become franchisees, each of the three named Plaintiffs -- Kevin A. Gadson,

Okirieta O. Enajekpo, and Samuel D. Muriithi -- voluntarily entered into a UFA with SEI setting

forth the terms of their independent contractor relationship as franchisees of SEI, including

remuneration, franchise fees, leasing or purchasing vans, and general operating procedures.  Am.

Comp. at ¶¶ 18-20; Exs. B, C and D to Bruch Decl.  Each UFA makes clear that no Plaintiff-

franchisee has an employment relationship with SEI:

        N. Relationship of the Parties

        (1) Nothing herein contained shall be deemed or construed to
        create the relationship of principal and agent, partnership, joint
        venture or employment, or a fiduciary relationship, and the
        Franchisee shall not hold itself as an agent, legal representative

3

> partner, subsidiary, joint venturer, servant or employee of [SEI] or
> any affiliate of [SEI].  With respect to all matters pertaining to the
> operation of business conducted hereunder, the Franchisee is, and
> shall be, an independent contractor. . . .

Exs. B, C and D to Bruch Decl. at § 15(N)(1).

Each of the UFAs also contained an arbitration provision whereby each Plaintiff agreed

to arbitrate any and all claims arising out of their UFAs.  Specifically, the arbitration provisions

in the UFAs signed by Plaintiffs state:

> . . . any controversy arising out of this Agreement shall be
> submitted to the American Arbitration Association at its offices in
> or nearest to Baltimore, Maryland, for final and binding arbitration
> in accordance with its commercial rules and procedures which are
> in effect at the time the arbitration is filed.

Exs. E, F and G to Bruch Decl. at § 15(G).[4]  Moreover, Plaintiffs voluntarily and knowingly

agreed to waive participation in any class action.  In that regard, the UFAs state: "any

arbitration, suit, action or other legal proceeding shall be conducted and resolved on an

individual basis only and not on a class-wide, multiple plaintiff or similar basis." Id.

Plaintiffs also consented to a one-year statute of limitations for any arbitration, suit,

action, or other proceeding relating to their UFAs.  Id.; Exs. H, I and J to Bruch Decl. at § 15(I).

In addition, the UFAs contained a choice of law provision stating that Delaware law would

govern:

> This Agreement, including all matters relating to the validity,
> construction, performance, and enforcement thereof, shall be
> governed by the laws of Delaware without giving effect to its
> provision regarding choice of laws.

---

[4] The relevant arbitration language in the UFA signed by Plaintiff Enajekpo varies slightly from that cited
above and states: ". . . any controversy arising out of this Agreement shall be submitted to the American
Arbitration Association at its offices in or nearest to Baltimore, Maryland, for arbitration in accordance
with its commercial rules and procedures which are in effect at the time the arbitration is filed."  Bruch
Decl., Ex. F, at § 15(G).

Bruch Decl., Exs. K, L and M, at § 15(M).

Notwithstanding their agreements to arbitrate and to not seek class relief, on April 28, 2010, Plaintiffs filed their Complaint in this Court asserting claims arising out of their UFAs. Docket No. 1.  On May 26, 2010, Defendants' counsel contacted Plaintiffs' counsel in an attempt to avoid having to file this motion.  Bruch Decl., Ex. N.  Specifically, defense counsel asked Plaintiffs' counsel whether Plaintiffs would agree to voluntarily dismiss: (1) the improperly named Defendants; and (2) their lawsuit from this Court and to submit their claims to arbitration, as required by the UFAs.  Id.  Defendants' counsel explained that Plaintiffs entered into UFAs with SEI only.[5]  Counsel further explained that SII, SEC and Veolia are merely parents or subsidiaries (some removed from SEI by several corporate layers),[6] and with which Plaintiffs did not have any agreements or perform any work.  Id.  Defense counsel even suggested dismissing SII, SEC  and Veolia without prejudice, to alleviate any concerns Plaintiffs may have regarding any facts they might learn in the future, or regarding the ability of any proper defendant to satisfy any judgment in this case.  Id.  Counsel for Defendant also explained that there was no legal entity named Shuttle Express Corporation.  Plaintiffs' counsel have not agreed to dismiss any Defendants.

Defense counsel also inquired whether Plaintiffs' counsel knew about and had reviewed the arbitration provisions contained in the UFAs and, if so, whether Plaintiffs would agree to submit their claims to voluntary arbitration.  Id.  Other than stating that they believe they are in the right forum and that the UFAs are somehow invalid because they identify Plaintiffs as independent contractors, Plaintiffs' counsel was unable or unwilling to articulate any reason why the arbitration provisions in the UFAs do not apply to Plaintiffs' claims and mandate arbitration.

---

[5] SEI was not a Defendant in the original Complaint.  See Dkt. No. 1

Instead, Plaintiffs' counsel merely stated that they would not agree to submit their claims to arbitration and invited Defendants to make the instant Motion.

On June 3, 2010, Plaintiffs' filed their First Amended Complaint, Dkt. No. 22, in which they added SEI and SFC.  On June 8, 2010, Defendants' counsel again inquired whether Plaintiffs would be willing to proceed to arbitration pursuant to the UFAs they signed and whether Plaintiffs would be willing to voluntarily dismiss their claims, without prejudice, against Defendants SEC, SII, SFC and Veolia because Plaintiffs never entered into a UFA with these Defendants and because Plaintiffs never performed any services for these Defendants.  Bruch Decl., Ex. P.  On June 17, 2010, Plaintiffs' counsel responded that Plaintiffs would only agree to stay this action and proceed to arbitration on the condition that Defendants waive several important provisions that the parties agreed to in the UFAs.  Plaintiffs' counsel also stated that Plaintiffs would not voluntary dismiss any of the Defendants from this action.  As Plaintiffs will not agree to voluntarily dismiss the improperly named parties, and as they refuse to abide by the terms of their arbitration agreement, Defendants timely filed this motion in lieu of an answer to the Amended Complaint.  See Fed. R. Civ. P. 15(a)(3) (providing a party 14 days to respond to an amended pleading); Fed. R. Civ. P. 6(d) (adding an additional 3 days to respond to an amended pleading when service is effectuated through an electronic filing with the Court under Fed. R. Civ. P. 5(b)(2)(E) as occurred here).

## III.   ARGUMENT

Pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), Plaintiffs' Complaint should be dismissed or, in the alternative, should be stayed and

---

[6] See Defendants' Corporate Disclosure Statement, Dkt. No. 25.

Plaintiffs ordered to submit to arbitration in accordance with the UFA's arbitration provisions.

As explained below, Plaintiffs' claims fall squarely within the scope of the types of disputes that

the parties agreed would be determined solely by an arbitrator – and not by a court.  Moreover,

Plaintiffs' claims should be dismissed for the separate reasons that: (1) each Plaintiff expressly

waived his or her right to bring a class action against Defendants; (2) many of the claims are

time-barred; (3) several claims are not pled with the required specificity; and (4) several

defendants have been improperly named.

### A.    The Applicable Rule 12(b)(6) Standard.

Under Fed. R. Civ. P. 12 (b)(6), a court should dismiss a complaint for failure to state a

cause of action unless it sets forth "enough facts to state a claim to relief that is plausible on its

face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007) (criticizing the long-standing

holding in Conley v. Gibson, 355 U.S. 41 (1957), and dismissing plaintiffs' claims because they

failed to cross "the line from conceivable to plausible").  While a court deciding a motion to

dismiss must assume that "all the allegations in the complaint are true,"[7] (Twombly, 550 U.S. at

555), the complaint must contain "more than labels and conclusions, and a formulaic recitation

of a cause of action's elements."  Id. at 545; see also Sec'y of State for Def. v. Trimble

Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (the court is "not required to accept as true

the legal conclusions set forth in plaintiff's complaint") (quoting Edwards v. City of Goldsboro,

178 F.3d 231, 244 (4th Cir. 1999).  As the Supreme Court recently explained:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to state a claim to relief that is
> plausible on its face.  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the

---

[7] Defendants accept as true the minimal facts in the First Amended Complaint for purposes of this Motion only.  Defendants reserve the right to challenge the facts alleged should this case proceed beyond the instant Motion.

> reasonable inference that the defendant is liable for the misconduct
> alleged.   The plausibility standard is not akin to a probability
> requirement, but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.   Where a complaint pleads facts
> that are merely consistent with a defendant's liability, it stops short
> of the line between possibility and plausibility of entitlement to
> relief [and should be dismissed].

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citation and quotation marks omitted).

Further, in determining the sufficiency of Plaintiffs' claims under Rule 12(b)(6), the Court may consider documents attached or integral to the First Amended Complaint, such as the UFAs.  Sec'y of State for Def., 484 F.3d at 705.

### B.    The Legal Standards Concerning a Motion to Compel Arbitration

It is well established that the FAA embodies "a strong federal policy favoring arbitration."  Faber v. Menard, Inc., 367 F.3d 1048, 1052 (8th Cir. 2004); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 631 (1985) (noting the "emphatic federal policy in favor of arbitral dispute resolution," and that courts should "rigorously enforce agreements to arbitrate") (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  Moreover, the courts should construe arbitration clauses as broadly as possible and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Mem'l Hosp., 460 U.S. 1, 24-25 (1983); see also Adkins v. Labor Ready, Inc., 303 F.3d 496, 500 (4th Cir. 2002) (affirming order compelling arbitration of FLSA and state law wage claims after noting that ambiguities as to the scope of an arbitration clause should be resolved in favor of arbitration); Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) ("There is a strong federal policy favoring arbitration as an alternative means of dispute resolution . . . [i]n accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of

arbitrability").  Any party resisting arbitration "bears the burden of proving that the claims at

issue are unsuitable for arbitration."  <u>Madol v. Dan Nelson Auto. Group</u>, 372 F.3d 997, 999 (8th

Cir. 2004) (<u>quoting</u> <u>Green Tree Fin. Corp. – Ala. v. Randolph</u>, 531 U.S. 79, 91 (2000)).  Thus, in

the presence of an arbitration agreement, courts should find the dispute at issue subject to

arbitration, "unless it may be said with positive assurance that the arbitration clause is *not*

*susceptible* of an interpretation that covers the asserted dispute."  <u>AT&T Techs. v. Commc'ns</u>

<u>Workers of Am.</u>, 475 U.S. 643, 650 (1986); <u>Drews Distrib., Inc. v. Silicon Gaming, Inc.</u>, 245

F.3d 347, 349-50 (4th Cir. 2001) (internal citations and quotation marks omitted); <u>accord</u> <u>Indus.</u>

<u>Wire Prods., Inc. v. Costco Wholesale Corp.</u>, 576 F.3d 516, 520-21 (8th Cir. 2009).

Given this statutory directive and supporting policy rationale, when a litigant in a court

proceeding refuses to arbitrate a dispute within the scope of a valid arbitration agreement, a

judicial order compelling arbitration is mandatory.  A motion to compel arbitration is governed

by Section 4 of the FAA, which provides that "[a] party aggrieved by the alleged failure, neglect

or refusal of another to arbitrate under a written agreement for arbitration may petition any

United States district court . . . for an order directing that such arbitration proceed in the manner

provided for in such agreement."  9 U.S.C. § 4; <u>see also</u> <u>Dean Witter Reynolds, Inc. v. Byrd</u>, 470

U.S. 213, 217 (1985) (holding that the FAA leaves no room for the exercise of discretion and

mandates that a district court direct the parties to proceed to arbitration on issues within the

scope of an arbitration agreement); <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 511 (1974)

("[Section] 4 of the Act directs a federal court to order parties to proceed to arbitration if there

has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate").

In the Fourth Circuit, arbitration must be compelled under the FAA where, as here, the

following is established: "(1) the existence of a dispute between the parties; (2) a written

agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute." Poteat v. Rich Products Corp., 91 F. App'x. 832, 834 (4th Cir. 2004) (holding that FLSA claims may be properly resolved in mandatory arbitration proceedings); Adkins, 303 F.3d at 500-01 (using the same four factor test) citing Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991).

C.   **Plaintiffs Should Be Compelled To Arbitrate Their Claims Pursuant Their UFAs.**

In the instant matter, Plaintiffs' federal and state law claims are clearly within the scope of the valid and enforceable arbitration agreements each Plaintiff entered into when they respectively signed their UFAs. See Am. Compl. ¶¶ 18-20 (alleging that Plaintiffs entered into the UFAs with Defendants). As such, Plaintiffs, pursuant to the terms of the UFAs, should be compelled to arbitrate this dispute before the American Arbitration Association ("AAA") and their claims in this matter should be dismissed in their entirety.

1.   **There is a dispute between the parties which Plaintiffs have refused to arbitrate.**

There can be no question that: (1) Plaintiffs have a dispute with Defendants and brought suit against them under the FLSA and Maryland state law; and (2) rather than pursue their claims in arbitration, as required by the UFAs, Plaintiffs have filed this action and refused to voluntarily submit their claims to arbitration. See, supra, at pp. 3-5. Therefore, the first and fourth requirements set forth in Adkins for compelling arbitration are established.

2.   **The UFAs involve interstate commerce.**

Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable and enforceable." 9 U.S.C. § 2

10

(emphasis added); see also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 111-12 (2001).  The

United States Supreme Court has made clear that Section 2 of the FAA is extremely broad and

applies to any transaction directly or indirectly affecting interstate commerce.  See, e.g. Citizens

Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) ("We have interpreted the term "involving

commerce" in the FAA as the functional equivalent of the more familiar term "affecting

commerce" – words of art that ordinarily signal the broadest permissible exercise of Congress'

Commerce clause power.") (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-81

(1995) (discussing the meaning of "involving commerce")).   Thus, Section 2 of the FAA covers

"more than 'only persons or activities within the flow of interstate commerce.'"  Allied-Bruce,

513 U.S. at 273 (emphasis in original); see also Circuit City, 532 U.S. at 115-16 (distinguishing

between the phrase "involving commerce," as used in Section 2 of the FAA, which "signals an

intent to exercise Congress' commerce power to the full" from the phrase "engaged in

commerce," which is "understood to have a more limited reach") (citations omitted).[8]  Here, the

UFAs -- which create and document the franchises which allow the franchisees to transport

passengers to and from BWI and surrounding areas for a charge -- are clearly related to

commerce.  Indeed, there can be no dispute that passengers flying into and out of BWI, and

being transported to and from Virginia, Maryland and Washington, D.C., are involved in

commerce.  Therefore, the third requirement in Adkins is also satisfied.

---

[8] This is in stark contrast to the phrase "engaged in . . . interstate commerce" as used in Section 1 of the FAA, which describes only employees actually involved within the flow of interstate commerce, such as seamen and railroad employees (see Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1471-72 (D.C. Cir. 1997); see also Circuit City Stores, Inc., 532 U.S. at 115-16) and which, hence, does not apply to Plaintiffs, who provide ground transportation to airport passengers.  While Plaintiffs are not employees "engaged in interstate commerce" within the meaning of Section 1 of the FAA, Defendants have not waived and reserve the right to raise any applicable claims or defenses under other statutes, including any applicable federal or state wage and hour statutes, that exist.

### 3.      The arbitration provisions in the UFAs cover Plaintiffs' claims.

The final <u>Adkins</u> factor -- whether there is a written arbitration agreement which purports to cover the dispute -- is also satisfied here.  Indeed, the UFAs' arbitration provisions are extraordinarily broad, and certainly broad enough to encompass all of Plaintiffs' claims.  As shown above, the UFAs require arbitration of "*any* controversy arising out of this Agreement . . . ."  Bruch Decl., Exs. E, F and G, at § 15(G) (emphasis added).  Thus, the arbitration provision governs all aspects of any claims under the UFAs, including Plaintiffs' contentions that they are/were "employees."[9]  <u>See</u>, <u>e.g.</u>, <u>Prima Paint Corp. v. Flood & Conklin Mfg. Co.</u>, 388 U.S. 395, 406 (1967) (holding that agreement to arbitrate any controversy or claim arising out of or relating to this Agreement, or breach thereof was "easily broad enough" to encompass the plaintiff's claims); <u>Drews Distrib., Inc.</u>, 245 F.3d at 350 ("In this case, the parties contractually agreed to arbitrate 'any controversy or claim' between them 'arising out of or related to' the Distributor Agreement; that remains their obligation."); <u>Jones v. Genus Credit Mgmt. Corp.</u>, 353 F. Supp. 2d 598, 602 (D. Md. 2005) ("In any event, the arbitration clause also requires arbitration of 'any dispute between us that cannot be amicably resolved. . . .'").

This language in the UFAs clearly is broad enough to cover the claims asserted by the Plaintiffs in this action.  Specifically, as Plaintiffs base all of their minimum wage and overtime claims on the allegations that they were misclassified as independent contractors <u>in the UFA</u>, and alternatively allege that Defendants misrepresented certain terms <u>governed by their UFAs</u>, those claims are grounded in the very document that mandates arbitration.  <u>See</u> Am. Compl., ¶¶ 38-71.  As such, there is no dispute that all of Plaintiffs' claims "arise out of" their UFAs and, therefore, Plaintiffs' claims are subject to arbitration in accordance with the UFAs' arbitration provisions.

---

[9] Paragraph 15(N) of the UFA explicitly states the Plaintiffs are not employees of SEI or any affiliate of SEI but rather are independent contractors.  <u>See</u> Bruch Decl., Exs. B, C and D.

To the extent that Plaintiffs may attempt to argue that their statutory claims are not subject to arbitration, that argument has expressly been rejected by both the Supreme Court and by the 4th Circuit Court of Appeals.  See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum.") (quoting Mitsubishi, 473 U.S. at 628).  Specifically, courts in this Circuit routinely require plaintiffs to arbitrate their statutory wage/hour claims.  See, e.g., Poteat, 91 F. App'x. at 834 (holding that employee's agreement to arbitrate FLSA claims against employer was enforceable); Am. Gen. Life & Accident Ins. Co., 429 F.3d 83, 92 (4th Cir. 2005) (holding that employee's state law discrimination and wage claims were arbitrable under valid and enforceable arbitration agreement); Adkins, 303 F.3d at 506 (holding that FLSA and state wage claims may be properly resolved in mandatory arbitration proceedings).  See also Carter v. Countrywide Indus., Inc.,362 F.3d 294, 297-98, 301 (5th Cir. 2004); Ciago v. Ameriquest Mortgage Co., 295 F. Supp. 2d 324, 331-33 (S.D.N.Y. 2003).  Similarly, Plaintiffs' Maryland Franchise Law claims are also subject to compulsory arbitration.  See Holmes v. Coverall N. Am., Inc., 336 Md. 534, 553, 649 A.2d 365 (1994) (holding that in a dispute concerning the Maryland Franchise Law, allegations of fraudulent inducement in a franchise agreement containing a broad arbitration clause were not sufficient to permit the franchisee to avoid arbitration of the dispute).

Accordingly, Plaintiffs' statutory claims, as well as their other claims, fall squarely within the scope of the parties' broad arbitration agreements and Plaintiffs must therefore be compelled to arbitrate their claims.

Defendants anticipate that Plaintiffs may also argue that the Court cannot enforce the arbitration agreements because, excluding SEI, none of the other Defendants are signatories to

13

the UFAs.  Under identical circumstances, however, federal courts have rejected this argument.

See, e.g., Adkins v. Labor Ready, Inc., 185 F. Supp. 2d 628, 640-41 (S.D. W.Va. 2001) aff'd 303

F.3d 496 (4th Cir. 2002).  In Adkins, the plaintiff filed an FLSA collective action against Labor

Ready, a temporary employment agency, for failing to pay for "call time, training time, travel

time and overtime."  Id. at 631.  The individual plaintiff signed a Labor Ready employment

application containing an arbitration clause.  Id., at 631-32 ("I agree that any disputes arising out

of my employment . . . will be resolved by arbitration as my sole remedy").  Labor Ready moved

to compel arbitration and stay the proceedings.  Id.  In an apparent attempt to thwart Labor

Ready's motion to compel arbitration, the plaintiffs subsequently amended their complaint to add

sixty-four (64) businesses for whom the plaintiffs worked through Labor Ready, on the basis that

the proposed additional defendants were joint employers of the plaintiffs along with Labor

Ready.  Id. at 633.  The plaintiffs claimed that these additional defendants, who were Labor

Ready customers, controlled and supervised the plaintiffs at Labor Ready worksites.  Id.  None

of the additional defendants were signatories to the arbitration agreements.

Notwithstanding the plaintiffs' amended complaint, the district court granted Labor

Ready's motion to compel arbitration.  The court held that "[w]hen a signatory to an arbitration

agreement makes an appropriate motion for an order of arbitration, the court is not precluded

from ordering the arbitration simply because there are pending claims against a non-signatory."

Id. at 640 (citing to Moses H. Cone Memorial Hosp. and Dean Witter Reynolds).  In the court's

estimation, "it is clear that if the court concludes that plaintiff and Labor Ready have a valid

agreement to arbitrate covering plaintiff's claims, then an order of arbitration is appropriate

notwithstanding the possibility that plaintiff may have claims against non-signatories to the

agreement."  Id.  Adkins, Dean Witter Reynolds and Moses H. Cone Memorial Hospital support

14

the enforcement of Plaintiffs' arbitration agreements, notwithstanding the addition of several non-signatories as defendants.

In sum, because Plaintiffs entered into valid and enforceable arbitration agreements encompassing their FLSA, MWHL, MWPCA and Maryland Franchise Law claims, this Court should compel Plaintiffs to arbitrate all of their claims before the AAA.

**4.      Dismissal Of This Action Is Also Proper Because All Claims Are Subject To Arbitration.**

Because all of the claims against Defendants in the Complaint are subject to arbitration pursuant to the UFAs, the Complaint should be dismissed rather than stayed.  It is well established that where all claims in a complaint are subject to a binding arbitration agreement, dismissal -- rather than issuance of a stay -- is appropriate.  Poteat, 91 F. App'x at 835 (remanding the case with instructions to dismiss the action after enforcing arbitration agreement); Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc., 252 F.3d 707, 709-10 (4th Cir. 2001) ("Notwithstanding the terms of §3 [of the FAA], however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."); Dieng v. College Park Hyundai, No. DKC 2009-0068, 2009 WL 2096076, at *8 (D. Md. July 9, 2009) (granting defendant's motion to dismiss and compel arbitration); Akpan v. Bank of Am., N.A., No. 04-cv-1544, 2004 U.S. Dist. LEXIS 28256, *7 (D. Md. Sept. 27, 2004) (Williams, J.) ("[T]his court finds that judicial economy counsels in favor of a dismissal.").  Accordingly, this Court should dismiss Plaintiff's Complaint in its entirety.  Id.

**D.      The Court Should Dismiss Plaintiff's Class Claims For The Additional Reason That Their UFAs Prohibit Them From Bringing Class or Collective Action Claims.**

In addition to compelling Plaintiffs to arbitrate their claims, the Court also should dismiss all class allegations in the Complaint because Plaintiffs expressly and voluntarily agreed in the

UFAs that they each signed that they would not bring or participate in any class or collective action against Defendants.  Specifically, as part of their UFAs, Plaintiffs voluntarily and knowingly agreed that "any arbitration, suit, action or other legal proceeding shall be conducted and resolved on an individual basis only and not on a class-wide, multiple Plaintiff or similar basis."  Bruch Decl., Exs. E, F and G, at § 15(G).  Accordingly, Plaintiffs are contractually barred from pursuing any class or collective action claims, and all of their claims in the First Amended Complaint should be dismissed on this ground as well.  Indeed, in a case directly analogous to the instant case, the Eastern District of New York recently concluded that the class and collective action claims of SuperShuttle franchisees -- who signed UFAs nearly identical to those signed by Plaintiffs here -- were subject to mandatory arbitration pursuant to the clear language of the UFAs.  See Reid v. SuperShuttle Int'l, Inc., No. 08-CV-4854 (JG)(VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010).  See also Pleasants v. Am. Express Co., 541 F.3d 853, 858-59 (8th Cir. 2008) (granting defendant's motion to compel plaintiffs to arbitrate their claims on an individual basis, where the court found that the arbitration and class action waiver provisions of the parties' agreements were not unconscionable); Carter, 362 F.3d at 298 (affirming order compelling arbitration and rejecting plaintiffs' argument that arbitration agreement's class/collective action waiver provision was unenforceable because it deprived plaintiffs of right under FLSA to bring collective action); Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 559 (7th Cir. 2003) ("The Arbitration Agreement at issue here explicitly precluded [plaintiffs] from bringing class claims or pursuing 'class action arbitration,' so we are therefore obliged to enforce the type of arbitration to which these parties agreed, which does not include arbitration on a class basis"); Adkins, 303 F.3d at 503 (finding that nothing in the FLSA suggested that "Congress intended to confer a nonwaivable right to a class action under that

16

statute" and thus affirming order dismissing plaintiffs class action complaint and compelling arbitration on an individual basis); Pomposi v. Gamestop, Inc., No. 3:09-Civ.-340 (VLB), 2010 WL 147196 (D.Conn. Jan. 11. 2010) (finding that the costs of prosecuting claims for wages were not so disproportionate to the plaintiff's possible recovery that a collective action wavier for a wage claim should be found unenforceable); Carter v. MasTec Servs. Co., No. 2:09-Civ.-2721 (PMD), 2010 WL 500421 (D.S.C. Feb. 5, 2010) (applying the national policy favoring arbitration, the court enforced an arbitration agreement in a purported collective action alleging, *inter alia*, failure to pay overtime wages in violation of federal and state wage laws); Arrigo v. Blue Fish Commodities, Inc., 09 Civ. 7518 (VM), 2010 WL 391813 (S.D.N.Y. Feb. 4, 2010) (same).[10]

Plaintiffs will likely argue that the class action waivers are unconscionable.  Any such argument has been rejected by courts in this Circuit, which consistently hold that contractual provisions precluding class action relief are enforceable.  See, e.g., Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 638 (4th Cir. 2002) ("We [] reject Snowden's argument that the Arbitration Agreement is unenforceable as unconscionable because without the class action vehicle, she will be unable to maintain her legal representation given the small amount of her individual damages."); Adkins, 303 F.3d at 503 ("His inability to bring a class action, therefore, cannot by itself suffice to defeat the strong congressional preference for an arbitral forum."); Walther v. Sovereign Bank, 386 Md. 412, 438, 872 A.2d 735, 750 (2005) ("[W]e would be averse to a holding in the present case which would allow petitioners to avail themselves of a

---

[10]  Even if the UFAs did not contain a clear class action waiver provision (which they do), several courts have held that a court cannot order an arbitrable matter to proceed on a class-wide basis absent a specific provision in the parties' arbitration agreement allowing for such class-based arbitration.  See, e.g., Gammaro v. Thorp Consumer Discount Co., 828 F. Supp. 673, 674 (D. Minn. 1993) (finding that the court was "without power to order this matter to proceed to arbitration as a class action" where the

class action contrary to the provisions of a freely-signed agreement to arbitrate that includes a no-class-action provision which was conspicuously presented as part of the arbitration clause.").

Moreover, Delaware state and federal courts applying Delaware law[11] have repeatedly upheld class action waivers when challenged as unconscionable.  See Edelist v. MBNA Am. Bank, N.A., 790 A.2d 1249, 1261 (Del. Super. Ct. 2001) ("The surrender of [the] class action right was clearly articulated in the arbitration agreement.  The Court finds nothing unconscionable about it and finds the bar on class actions enforceable."); see also Samadi v. MBNA Am. Bank, N.A., 178 F. App'x 863, 866 (11th Cir. 2006) (relying on Edelist in finding an arbitration provision containing a class action waiver enforceable); Pick v. Discover Fin. Servs., Inc., No. Civ.A. 00-935-SLR, 2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001) (holding that "it is generally accepted that arbitration clauses are not unconscionable [under Delaware law] because they preclude class actions.").

As Plaintiffs are contractually barred from pursuing class or collective claims, the Complaint should be dismissed.

**E.    Plaintiffs' Claims Should Be Dismissed As Time-Barred.**

**1.    Plaintiffs' claims are barred by the one-year statute of limitations contained in the UFAs.**

Plaintiffs' claims should also be dismissed, in whole or in part, to the extent they are time-barred by the one-year statute of limitations provision contained in the UFAs.  All of the UFAs contain the following one-year statute of limitations language for bringing an action:

---

arbitration agreement did not expressly provide for class relief).  Here, unlike Gammaro, the UFAs are not silent on the issue of class-wide arbitration – they expressly *preclude* such class relief.

[11] See Bruch Decl., Exs. K, L and M, at § 15(M) regarding the applicability of Delaware law.

18

> The parties hereby acknowledge and agree that any arbitration, suit, action or other proceeding relating to this Agreement must be brought within one (1) year after the occurrence of the act or omission that is the subject of the arbitration, suit, action or other legal proceeding.

(Bruch Decl., Exs. H, I and J, at § 15(I)).  Thus, if the Court does not compel Plaintiffs to individually arbitrate their claims, it should nonetheless dismiss these claims as barred, in whole or in part, by the statute of limitations.

Courts have consistently held that parties to a contract may agree on a limitations period shorter than that prescribed by statute.  See, e.g., In re Cotton Yarn Antitrust Litig., 505 F.3d 274, 287-88 (4th Cir. 2007) (noting that "Courts have frequently found contractual limitations of one year (or less) to be reasonable."); Dieng, 2009 WL 2096076, at *7-8 (noting the "general rule that statutory limitations periods may be shortened by contract" and enforcing contractually agreed to 60/180 day limitation); Johnson v. Daimlerchrysler Corp., No. C.A. 02-69 GMS, 2003 WL 1089394, at *3-4 (D. Del. Mar. 6, 2003) ("It is well-settled under Delaware and federal law that parties may validly contract to limit the time period for filing a federal cause of action" and noting that "cases abound in which courts have approved a contractual limitations period of one year, even when this period is shorter than the relevant statute of limitations) (citing cases); Hennegan v. Cardiology Consultants, P.A., C.A. No. 07C-02-015, 2008 WL 2943397, at *4 (Del. Super. Ct. Jul. 15, 2008) ("courts will enforce contract provisions which shorten a statute of limitations period"); College of Notre Dame of Md. v. Morabito Consultants, Inc., 132 Md. App. 158, 173, 752 A.2d 265, 273 (2000) (holding that parties may agree to a provision that modifies the limitations period that would otherwise pertain).

Plaintiffs commenced this action by filing their Complaint on April 28, 2010. Accordingly, any claims which arose prior to April 28, 2009 are barred by the one-year limitations period in their UFAs and should, therefore, be dismissed.

19

**2.     Plaintiff Enajekpo's Maryland Franchise Law claim is in any event time-barred.**

In the alternative, assuming *arguendo* that the Court decides not to enforce the limitation period Plaintiffs agreed to in their UFAs, Plaintiff Enajekpo's claim under the Maryland Franchise Law is barred by the applicable three-year statute of limitations.   Under the Maryland Franchise Law, a civil action "must be brought within 3 years after the grant of the franchise." Maryland Franchise Law, Md. Code Ann. § 14-227.   Plaintiff Enajekpo was granted his franchise upon entering into the UFA on September 7, 2005.   Am. Compl. ¶ 19; Bruch Decl. Ex. O.   The Complaint was not filed until nearly five years later on April 28, 2010.   Dkt. No. 1. Accordingly, Plaintiff Enajekpo's Maryland Franchise Law claim is time-barred and must be dismissed.

**F.     <u>Plaintiffs' Maryland Franchise Law Claim Should Be Dismissed Because It Was Not Pled With The Requisite Particularity.</u>**

When a plaintiff alleges misrepresentation or any other claim that sounds in fraud, "it must be pled with particularity under Rule 9(b)."   <u>Harmon v. Bankunited</u>, No. WDQ-08-3456, 2009 WL 3487808, at*3 (D. Md. Oct. 22, 2009); <u>Johnson v. Wheeler</u>, 492 F. Supp. 2d 492, 509 (D. Md. 2007) ("If indeed the Johnsons have specific active misrepresentations or omissions in mind, fairness requires that they state them with considerably greater particularity than they have done in their Complaint.").

Plaintiffs' Maryland Franchise Law claim must be dismissed because Plaintiffs allege fraudulent misrepresentation and omissions, but fail to plead their claim with particularity as required by Federal Rule of Civil Procedure 9(b).

Rule 9(b) is intended to ensure that "the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of," to "protect defendants from frivolous suits," and to "eliminate fraud actions in which all the facts are learned after

discovery." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)

(citation omitted). The "circumstances" required to be plead with particularity under Rule 9(b)

are "the time, place, and contents of the false representations, as well as the identity of the person

making the misrepresentation and what he obtained thereby." Id. at 783-84; see also Turner v.

Eastern Savings Bank, FSB, No. 09-cv-2637-AW, 2010 WL 1409858, at *4 (D. Md. Apr. 2,

2010) (Williams, J.) ("Plaintiffs do not state the circumstances behind their fraud claim with the

particularity required under Rule 9(b) because the allegations are general, conclusory, and

nonspecific. Without more, Plaintiff's fraud allegations cannot survive a motion to dismiss.").

Additionally, "[w]hen a complaint alleges fraud against multiple defendants, Rule 9(b) requires

that the plaintiff identify each defendant's participation in the alleged fraud." Harmon, 2009 WL

3487808 at *2. Conclusory assertions that one defendant controlled another, or that some

defendants are guilty by their association with another are insufficient under Rule 9(b). Id.

Here, Plaintiffs' averments that Defendants violated Maryland Franchise Law through

fraudulent misrepresentation and omissions are woefully inadequate. See Am. Compl. ¶¶ 21-22,

57-64. Plaintiffs allege only that "Defendants" misled Plaintiffs during the Plaintiffs' "one week

trial" period (Am. Compl. at ¶ 21), but never aver who specifically made any alleged

misrepresentation or omission, the specific content of the alleged misrepresentation, the specific

time and place of the misrepresentation, or what was gained by the person making the alleged

misrepresentation. Thus, Plaintiffs' allegations regarding their claim under the Maryland

Franchise Law are inadequate and Defendants should not be forced to wait until discovery to

discover the information that underlies Plaintiffs' claim. Consequently, Plaintiffs' Maryland

Franchise Law claim should be dismissed because they have failed to state this claim with the

requisite particularity.

### G.      The Court Should Dismiss The Improperly Named Defendants.

Veolia, SSI, SEC, and SFC should be dismissed from this case because Plaintiffs have

not alleged any <u>facts</u> that would support a finding that any of them are proper Defendants in this

case.  Indeed, while Plaintiffs conclusorily allege in the Complaint that they were "employed as

primary drivers by defendant Shuttle Express, Inc., Shuttle Express Corp., SSI, SuperShuttle

Franchise Corporation, Veolia and Veolia Environment," and that they entered into UFAs "with

Defendants" (Compl. ¶¶ 18-21), they offer no <u>facts</u> to support these allegations.  Nor could they.

As noted above, Plaintiffs entered into UFAs only with SEI, not with any of the other

Defendants.  Plaintiffs also do not and cannot allege that they performed any actual work with

SEC,[12] SSI, SFC, Veolia and/or Veolia Environment, or that any of these entities controlled the

terms of their UFAs.  <u>See</u> Am. Compl.  Indeed, none of those entities are even named in the

UFAs at all.  Bruch Decl., Ex. A.

While Plaintiffs generically allege -- "upon information and belief," -- that "each

defendant acted in all respects pertinent to this action as the agent of the other defendants, carried

out a joint scheme, business plan or policy in all respects pertinent thereto, and the acts of each

defendant are attributable to each other" (Compl. ¶ 15), they do not allege a single fact in support

of these conclusory allegations.  The law is clear, however, that the complaint must contain

---

[12] SEC should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) because this Court does not have personal jurisdiction over a non-existent entity.  <u>See</u> <u>White v. Moylan</u>, 554 F. Supp. 2d 263, 266 (D. Conn. 2008) ("Because the court lacks personal jurisdiction over an entity that does not exist, the defendant's motion to dismiss on this basis is being granted"); <u>Orion Construction Group, LLC v. Berkshire Wind Power, LLC</u>, No. 07-C-10, 2007 WL 1118375, at *6 (E.D. Wis. Apr. 13, 2007) (granting motion to dismiss non-existent defendant for lack of personal jurisdiction); <u>see</u> <u>also</u> <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1056-57 (9th Cir. 1992) (stating that district courts "likely" have the authority to dismiss nonexistent defendants even though there appears to be no explicit basis for this authority in the Federal Rules of Civil Procedure or in federal statutes).  As noted above, SEC does not exist.  (Bruch Decl. ¶ 2). Accordingly, this Court does not have personal jurisdiction over the non-existent SEC which must, therefore, be dismissed from this action.  <u>See</u> <u>White</u>, 554 F. Supp. 2d at 266; <u>Orion</u>, 2007 WL 1118375, at *6.[12]

"more than labels and conclusions, and a formulaic recitation of a cause of action's elements."

Twombly, 550 U.S. 544, 545 (2007); see also Sec'y of State for Def., 484 F.3d at 705; Liebowitz

v. Cornell Univ., No. 03 Civ. 9976 (GBD), 2005 WL 267560, at *4 (S.D.N.Y. Feb. 3, 2005)

(granting motion to dismiss plaintiff's discrimination claims after noting that "neither

unsupported assertions nor factual allegations . . . based on information and belief, is sufficient to

withstand motion to dismiss").  Plaintiffs do not aver what is the alleged "joint scheme," which

acts any of the Defendants took jointly, or any basis to attribute any acts of one Defendant to

another.  Particularly in light of the Supreme Court's decision in Iqbal setting forth the standard

against which the Plaintiffs' complaint must be measured ("a complaint must contain sufficient

factual matter"), Plaintiffs' claims against Defendants SII, SEC, SFC and Veolia must be

dismissed.  Iqbal, 129 S. Ct. 1937, 1949 (2009).

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court:

1.      Compel the arbitration all of Plaintiffs' claims pursuant to the arbitration

provision in their UFAs;

2.      Dismiss Plaintiffs' class and collective action claims because they agreed not to

bring or participate in any class or collective action;

3.      Dismiss Plaintiffs' claims to the extent they are time-barred;

4.      Dismiss Plaintiffs' Maryland Franchise Law claim for failure to contain the

requisite particularity required under the Federal Rules of Civil Procedure; and

5.      Dismiss the improperly named Defendants.

Dated: June 18, 2010               Respectfully submitted,

/s/ Russell R. Bruch
Russell R. Bruch, Esq. (Bar No. 17108)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
202-739-5293
202-739-3001 (fax)
rbruch@morganlewis.com

Christopher A. Parlo, Esq.  *(admitted pro hac vice)*
Melissa C. Rodriguez, Esq.  *(admitted pro hac vice)*
Leni D. Battaglia, Esq.  *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
212-309-6000
212-309-6001 (fax)
cparlo@morganlewis.com
mcrodriguez@morganlewis.com
lbattaglia@morganlewis.com

*Attorneys for Defendants*

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on June 18, 2010, I caused to be served by ECF a copy of the foregoing Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and To Dismiss the First Amended Complaint and Declaration of Russell R. Bruch, on the following counsel for Plaintiffs:

Molly A. Elkin
Gregory McGillivary
David Rickseeker
Diana Nobile
Woodley & McGillivary
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005

Laura Brown
Arthur Rogers
DC Employment Justice Center
727 15th St. NW, 2nd Floor
Washington, DC 20005

  /s/ Russell R. Bruch
Russell R. Bruch

DB2/21718629.11