**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT DIVISION)**

| | | |
|---|---|---|
| KEVIN A. GADSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-cv-01057-AW |
| | ) | |
| SUPERSHUTTLE | ) | |
| INTERNATIONAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION AND TO DISMISS THE FIRST
AMENDED COMPLAINT**

Molly Ann Elkin
WOODLEY & MCGILLIVARY
1101 Vermont Ave NW Ste 1000
Washington, DC 20005
(202) 833-8855
(202) 452-1090 (fax)
mae@wmlaborlaw.com

Gregory K McGillivary (*pro hac vice*)
David Ricksecker (*pro hac vice*)
Diana J. Nobile (*pro hac vice*)
WOODLEY & MCGILLIVARY
1101 Vermont Ave NW Ste 1000
Washington, DC 20005
(202) 833-8855
(202) 452-1090 (fax)
gkm@wmlaborlaw.com
dr@wmlaborlaw.com
djn@wmlaborlaw.com

Laura Brown
DC Employment Justice Center
727 15th St NW Second Fl
Washington, DC 20005
(202) 828-9675
(202) 828-9190 (fax)
lbrown@dcejc.org

## TABLE OF CONTENTS

I.    Preliminary Statement…………………………………………………………2

II.   Background……………………………………………………………………3

III.  Argument……………………………………………………………………...6

      A.  Plaintiffs' Complaint Should Not Be Dismissed…………………………6

      B.  Plaintiffs are Not Required to Arbitrate Their Claims Because They Did
          Not Sign a Valid and Enforceable Agreement to Arbitrate that
          Encompassed The Claims in the First Amended Complaint……………...7

          1.  The Arbitration Clause Does Not Cover The Claims Pled In The
              Complaint……………………………………………………………8

          2.  The Plaintiffs are Exempt from the FAA Because they are
              Transportation Workers Engaged in Interstate Commerce…….14

          3.  The Arbitration Provisions in the UFA Are Not Valid and
              Enforceable Because Must be Unconscionable and Must be
              Stricken Because They Operate to Deny Plaintiffs the Ability to
              Vindicate their Rights……………………………………………18

              a.  Defendants' Fee-splitting Provision Prevents Plaintiffs
                  from Vindicating Their Rights and is Thus
                  Unenforceable…………………………………………....19

              b.  Defendants' Prohibition on Class Actions Prevents
                  Plaintiffs from Vindicating their Rights and Thus is
                  Unenforceable…………………………………………22

              c.  Defendants' Provision Limiting Damages Prevents
                  Plaintiffs from Vindicating Their Rights………………...25

              d.  Defendants' Provision Truncating the Statute of
                  Limitations Prevents Plaintiffs from Vindicating Their
                  Rights……………………………………………………26

          4.  The Arbitration Provision is Unconscionable…………………27

              a.  It is Unconscionable that Plaintiffs Cannot Vindicate their
                  Statutory Right in Arbitration……………………………30

b.  Defendants Retention of Sole Discretion to Waive Provisions Under the Agreement is Unconscionable.......31

c.  The Application of the American Arbitration Association's Commercial Rules and Procedures is Unconscionable.....32

d.  The Offending Provisions May Not Be Severed...........33

C.  Plaintiffs' Maryland Franchise Act Claim was Pled with Sufficient Particularity.................................................................34

D.  Plaintiffs Enajekpo's Maryland Franchise Law Claim Should Not Be Time Barred Based on Equitable Principles.......................................40

E.  Defendants Veolia, SSI, and SFC are Properly Named Defendants........40

IV.  Conclusion.................................................................42

# TABLE OF AUTHORITIES

## FEDERAL CASES

*14 Penn Plaza LLC, et al. v. Pyett*, 129 S. Ct. 1456 (2009) ..........................................6, 12

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002).............................................7, 22

*Alexander v. Anthony Intern., L.P.*, 341 F.3d 256 (3d Cir. 2003)...............................21, 33

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ...........................................17

*America General Life & Accident Insurance Co. v. Wood*, 429 F.3d 83 (4th Cir.
    2005) ....................................................................................................................................7, 27

*America Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466 (11th
    Cir. 1987) ..............................................................................................................................14

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)..................................................23

*America Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88 (4th
    Cir. 1996) ..............................................................................................................................13

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (U.S. 2009)....................................................................6

*Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728 (1981) ..................................27

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................6

*Bernhardt v Polygraphic Co. of America*, 350 U.S. 198 (1956) .......................................17

*Bonfield v. Aamco Transmissions, Inc.*, 708 F. Supp. 867 (N.D. Ill. 1989).....................35

*Booker v. Robert Half Intn'l Inc*, 413 F.3d 77 (D.C. Cir. 2005) .......................................34

*Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001)...........19

*Britton v. Tech., Automation & Management, Inc.*, U.S. Dist. LEXIS 47411 (D.
    Md. June 16, 2008) ...............................................................................................................28

*Carlson v. General Motors Corp.*, 883  F.2d 287 (4th Cir.1989)......................................28

*Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002)......................................26

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) .............................................14, 16

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ......................................................16

*Cole v. Burns Intern. Sec. Services*, 105 F.3d 1465 (D.C. Cir. 1997) .......................18, 24

*In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274 (4th Cir. 2007) ..............................18

*Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007)...............................26, 27

*Deposit Guaranty National Bank v. Roper*, 445 U.S. 326 (1980) ....................................22

*Dieng v. College Park Hyundai*, 2009 U.S. Dist. LEXIS 58785 (D. Md. July 9, 2009) .............................................................................................................29, 30

*Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996) .............................................27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)........................................................22

*Falk v. Brennan*, 414 U.S. 190 (1973) ..............................................................................39

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)........................................28

*Flynn v. Everything Yogurt*, 1993 U.S. Dist. LEXIS 15722, 1993 WL. 454355 (D Md. Sept. 14 1993)...................................................................................36, 37

*Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009) ..........................................................6

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)..........................................17

*Graham Oil Co. v. Arco Products Co.*, 43 F.3d 1244 (9th Cir. 1993).............................18

*Granite Rock Co v. Int'l Bhd. Of Teamsters*, 2010 U.S. LEXIS 5255 ...........................7, 8

*Green Tree Finance Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000) ....................17, 18

*Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186 (1974) .................................................16

*Harden v. Roadway Packaging System*, 249 F.3d 1137 (9th Cir. 2001) ...........................14

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)................37

*Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452 (D. Md. 2000) .....................................32

*Hill v. Brush Engineered Materials, Inc.*, 383 F. Supp. 2d 814 (D.Md. 2005) ...........36, 37

*Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540 (4th Cir. 2005) ........................................28, 31

*Hoffmann-La Roche v. Sperling*, 493 U.S. 165 (1989) ........................................................24

*Hooters of America, Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) .............................7, 28

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ..............................................7

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ...............................26, 30

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ......................................................................6

*Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008) ..........................16, 17

*Kristian v. Comcast Cable Holdings, LLC*, 446 F.3d 25 (1st Cir. 2006) ....................23, 30

*Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726 (M.D. Pa. 2007) ................................39

*Long v. Silver*, 248 F.3d 309 (4th Cir. 2001) ....................................................................13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*, 473 U.S. 614 (1985) .......25, 28

*Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646 (6th Cir. 2003) ................................18

*Murray v. UFCW International, Local 400*, 289 F.3d 297 (4th Cir. 2002) .................18, 27

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) .........................................33

*Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir. 1998) ..........18

*Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3rd Cir. 2004) .....................................14

*Penn Mutual Life Insurance Co. v. Berck*, 2010 U.S. Dist. LEXIS 27432 (D. MD,
   March 23, 2010) ...........................................................................................................36

*Perez v. Globe Airport Sec. Services, Inc.*, 253 F.3d 1280 (11th Cir. 2001) ...................33

*Perry v. Thomas*, 482 U.S. 483 (1987) ..............................................................................28

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) .....................................................22

*Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395 (1967) ............8

*Rent-A-Center, W., Inc. v. Jackson*, 2010 U.S. LEXIS 4981 (June 21, 2010) ....................8

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .............................................................................6

*Schultz v. AT&T Wireless Services*, 376 F. Supp. 2d 685 (N.D. W. Va 2005) .................22

*Schultz v. Capital International Sec., Inc.*, 466 F.3d 298 (4th Cir. 2006) ........................32

*Shankle v. B-G Maintenance Management of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999) ...........................................................................................................18

*Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539 (D. Md. 1997)..............36

*Skirchak et al v. Dynamics Research Corp.*, 432 F. Supp. 2d 175 (D.Mass 2006) ..........30

*Snowden v. Checkpoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002)............................23

*Sydnor v. Conseco Finance Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001) ....................28

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) .................................................................30

*United States v. Silk*, 331 U.S. 704 (1947).....................................................................32

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960).......................................................................................................................12

*Wabash Radio Corp. v. Walling*, 162 F.2d 391 (6th Cir. 1947) .......................................39

*Zheng v. Liberty Apparel*, 556 F. Supp. 2d 284 (2d Cir. 2003) ........................................39

## STATE CASES

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656 (Md. 2003) ..................31

*Doyle v. Finance America, LLC*, 918 A.2d 1266 (Md. Ct. Spec. App. 2007)..............28, 29

*Garfinkel v. Morristown Obstetrics*, 773 A.2d 665 (N.J. 2001) .......................................12

*Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14 (2007).......................................33, 34

*State of West Virginia ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002)..............30

*Walther v. Sovereign Bank*, 386 Md. 412, 872 A.2d 735 (Md. 2005) ...............................29

*Warfield v. Beth Israel Deaconess Medical Center*, 454 Mass. 390 (2009).....................12

## FEDERAL STATUTES

9 U.S.C. §1    .............................................................................................5, 14, 17

9 U.S.C. § 2.................................................................................................7, 17, 27

9 U.S.C. § 3 ..........................................................................................................3, 17

15 U.S.C. § 1601 .........................................................................................................23

28 U.S.C. § 1914(a) ....................................................................................................21

29 C.F.R. 791.2(a)(b) ...................................................................................39, 40, 41

29 U.S.C. § 216(b) ...............................................................................................24, 25

29 U.S.C. § 255(a) .....................................................................................................26

Fed. R. Civ. P. 8(a) ......................................................................................................6

Fed. R. Civ. P. 12(b)(6) .....................................................................................6, 37

9 U.S.C.S. §§ 1-3 ........................................................................................................17

## I.   PRELIMINARY STATEMENT

Plaintiffs respectfully submit Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration and to Dismiss Plaintiffs' First Amended Complaint.  Defendants' motion is premised on a Unit Franchise Agreement (UFA) that defendants' fraudulently induced plaintiffs to sign, insisting, even now, that the plaintiffs are franchisees or independent contractors rather than employees.

As pled in the Complaint, the plaintiffs are employees and this dispute arises out of an employee-employer relationship.  As such, it is not subject to arbitration under the UFA.  Indeed, the plain language in the UFA limits arbitration to purely commercial matters.  Furthermore, plaintiffs are exempt from coverage under Section 1 of the Federal Arbitration Act ("FAA") because they are transportation workers engaged in interstate commerce.  Moreover, even assuming arguendo that plaintiffs' claims are somehow found to be covered by the FAA or the language in the arbitration provision, the arbitration provision fails to ensure plaintiffs' ability to vindicate their statutory employment rights and is unconscionable requiring that this Court it down in its entirety.

The arbitration provision contains the following clauses which are unconscionable and/or fail to ensure plaintiffs' ability to vindicate their statutory rights:

- requiring plaintiffs to split the costs and fees associated with arbitration (which may require payments greater than any potential recovery);

- precluding a class/collective action or multi-plaintiff mechanism;

- limiting statutorily available damages;

- shortening the applicable statute of limitations;

- providing defendants with the sole discretion to waive provisions of the agreement; and

- mandating application of the American Arbitration Association's commercial rules, rather than employment rules;

Through its attempt to use a one-sided arbitration provision, that severely limits plaintiffs' rights in a number of ways, defendants seek to avoid, or substantially limit, the consequences of its egregious practices. The Court should reject these attempts, deny the motion in full, and allow this case to proceed as filed.[1]

In addition, the Court should deny the defendants' motion to dismiss the sections of the complaint based on the Maryland Franchise Law because at this stage plaintiffs have alleged enough facts to go forward with their fraud claims. Further, all of the defendants listed in Plaintiffs' Amended Complaint are proper parties that may be included for complete relief.

## II.   BACKGROUND

Plaintiffs and those similarly situated[2] are current and former shuttle van drivers, employed by defendants to transport airline passengers to and from the Baltimore-Washington International Airport. Plaintiffs each entered into a UFA with defendants. *See* the accompanying Declaration of David Ricksecker, dated July 16, 2010, ("Ricksecker Decl.") at Ex. 1. Prior to entering into the UFA with defendants, defendants arranged for trial periods in which plaintiffs operated a SuperShuttle van for a period of

---

[1] In the alternative, should the Court somehow find that plaintiffs' claims must proceed through arbitration, the Court should exercise its authority under FAA to stay these court proceedings and strike the unconscionable provisions of the arbitration agreement. *See* 9 U.S.C. § 3.

[2] Hereinafter, when referring to "plaintiffs" this includes those similarly situated, as the plaintiffs are pursuing this matter as a class/collective action.

time in order to allegedly demonstrate the potential income they could earn. *See* Am. Compl. at ¶ 21. However, during these trials, defendants did not withhold the numerous fees and costs that are withheld once the trials were over and the UFAs were signed. *Id..* In failing to withhold these fees — which amount to thousands of dollars — defendants omitted facts, failed to explain costs and fees, provided misleading information and induced plaintiffs into signing the UFAs. *See Id.* at ¶ 22. Once the trial periods were over, and drivers began their regular jobs with defendants, they earned significantly less. *See Id.* at ¶¶ 34-37.

Plaintiffs have brought suit against defendants as a result of defendants' failure to properly classify them as employees, thereby depriving plaintiffs of both minimum wage and overtime pay under the Fair Labor Standards Act ("FLSA") and Maryland Wage and Hour law.[3] Once the fees and costs were withheld, **plaintiffs were not getting paid the minimum wage**. In addition, plaintiffs were not getting paid overtime because the defendants improperly classified them as independent contractors or franchisees. The crux of the defendants' arguments is that they were not required to pay the plaintiffs even the minimum wage because they were "franchisees" not employees, and that the plaintiffs should be compelled to arbitrate their "franchise claims" under the UFA. The defendants' arguments must be rejected.

First, it is clear that the plaintiffs are employees. The control reserved by defendants over plaintiffs in the UFA alone, which details the requirements, policies and operating procedures that drivers are required to follow and can be changed by defendants unilaterally at any time, plainly reflects an employment relationship between

---

[3] The FLSA and Maryland Wage and Hour laws are designed to protect workers from exploitation, as here, where the plaintiffs consistently and regularly earn less than the minimum wage.

plaintiffs and defendants. Indeed, the Maryland Department of Labor, Licensing and Regulation under the Maryland Unemployment Insurance Law has determined that plaintiffs are "employees" not franchisees. *See* Ricksecker Decl. at Ex. 2.

Second, the arbitration clause, in the UFAs the plaintiffs were forced to sign, only applies to commercial disputes arising out of the UFA, as the plain language of the clause states "any controversy **arising out** of the [UFA] shall be submitted to the [AAA]…for final and binding arbitration in accordance with its **commercial rules and procedures**." *See* Ricksecker Decl. at Ex. 1, ¶15G.

Third, Section 1 of the FAA explicitly excludes contracts of employment of transportation workers, such as SuperShuttle drivers, who are engaged in interstate commerce. *See* 9 U.S.C. § 1. The plaintiffs meet this exclusion as they are employees of SuperShuttle, hired to drive passengers and luggage to and from the BWI airport throughout Maryland, the District of Columbia and Virginia. *See* Am. Compl. at ¶ 24.

Fourth, the arbitration provision is unconscionable and fails to provide a forum for the plaintiffs to vindicate their statutory employment rights. It includes the following terms: (1) a fee-splitting provision requiring each party to pay half of the fees and costs of the arbitrator; (2) a provision prohibiting class/collective or multi-plaintiff actions; (3) a provision limiting statutorily recoverable damages; (4) a provision providing for a truncated limitations periods; and (5) significantly, a provision giving defendants' the sole discretion to waive provisions of the "agreement." Such terms, taken together and apart, render the arbitration provision unenforceable. Therefore, it must be stricken and this Court should deny defendants' request to compel arbitration.[4]

---

[4] Assuming arguendo the Court somehow finds the plaintiffs to be franchisees or independent contractors, the plaintiffs bring claims for the defendants' violation of the Maryland Franchise Act.

## III.    ARGUMENT

### A. PLAINTIFFS' COMPLAINT SHOULD NOT BE DISMISSED

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires a court to determine whether a cognizable claim has been pled in the complaint.[5]  Fed. R. Civ. P. 8(a) requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a); *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  In its scrutiny of the complaint, a court must construe all well-pled facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The plaintiff must only satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty,* 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom., Ashcroft v. Iqbal,* 129 S. Ct. 1937 (U.S. 2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  As the Supreme Court recently noted, "[t]he plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 129 S. Ct. at 1949.  As explained fully below, the plaintiffs have demonstrated more than a sheer possibility that the defendants have acted unlawfully.  Therefore, defendants' motion to dismiss must be denied.

---

[5] Defendants have argued that the amended complaint should be dismissed, and not stayed for arbitration, because the arbitration clause is valid and enforceable.  Because they are in error and arbitration is not appropriate, the Court should refuse to stay or dismiss this case.

**B. PLAINTIFFS ARE NOT REQUIRED TO ARBITRATE THEIR CLAIMS BECAUSE THEY DID NOT SIGN A VALID AND ENFORCEABLE AGREEMENT TO ARBITRATE THAT ENCOMPASSED THE CLAIMS RAISED IN THE FIRST AMENDED COMPLAINT**

It is well settled that only a party to a ***valid and enforceable*** arbitration agreement is entitled to a stay of federal court proceedings pending arbitration, and that a written arbitration agreement "shall be valid, irrevocable, and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract**." *See* 9 U.S.C. § 2 (emphasis added). Moreover, a party may only compel arbitration if it can demonstrate "a written agreement that includes an arbitration provision which **purports to cover the dispute**." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (citing *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002)) (emphasis added).

These threshold questions of arbitrability are ones for this court to decide. *See Granite Rock Co. v. Int'l Bhd of Teamsters,* 2010 U.S. LEXIS 5255, *18 (June 24, 2010)[6] (stating that it is well settled that whether parties have agreed to "'submit[t] a particular dispute to arbitration'" is typically an "'issue for judicial determination'") (quoting *Howsam v. Dean Witter Reynolds,* Inc., 537 U.S. 79, 83 (2002) (noting that as a matter of contract, a plaintiff cannot be required to submit to arbitration any dispute which he has not agreed to arbitrate)). In determining the question of arbitrability, a court must engage in a limited review to ensure that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that arbitration agreement. *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 937 (4th Cir. 1999). Here, no

---

[6] Unreported Cases are attached to the Ricksecker Decl. at Ex. 8.

such agreement exists and to the extent that the parties entered into any agreement, it does not cover the claims alleged in this case.[7]

### 1. The Arbitration Clause Does Not Cover The Claims Pled In The Complaint

The arbitration provision states:

> Except as provided below, any controversy **arising out of** this Agreement shall be submitted to the American Arbitration Association at its offices in or nearest to Baltimore, Maryland, for final and binding arbitration **in accordance with its commercial rules and procedures** which are in effect at the time the arbitration is filed.

Ricksecker Decl. at Ex. 1, ¶ 14G (emphasis added). The plain language of the UFA arbitration provision evidences that it does not apply to all of the plaintiffs' claims, but only to commercial claims — *i.e.*, only to claims involving a franchisee/franchisor relationship. Plaintiffs' first two counts are based on defendants misclassifying plaintiffs as franchisees and their attempt to avoid laws pertaining to the employee/employer relationship, which is the true nature of the relationship. Plaintiffs allege violations of the FLSA and Maryland Wage and Hour Law, which are employment claims that are clearly outside the bounds of the commercial disputes addressed in the arbitration clause. In fact, the crux of the dispute between the parties is whether the plaintiffs are employees, an employment law issue improper for resolution through commercial arbitration.

---

[7] Plaintiffs' recognize that under well-established precedent, the grounds for revocation of an agreement must relate specifically to the arbitration clause and not to the contract as a whole. *See Granite Rock Co.*, 2010 U.S. LEXIS 5255 at *26-27; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-04, (1967). Without waiving its right to challenge the validity of the UFA as a whole, for purposes of this Motion currently before the court, the plaintiffs challenge the validity of the arbitration provisions themselves. In addition, the Supreme Court's recent decision in *Rent-A-Center, W., Inc. v. Jackson*, 2010 U.S. LEXIS 4981 (June 21, 2010) does not apply in this case because it dealt with an arbitration clause that specifically delegated to the arbitrator the question of whether there was a valid agreement. No such clause is at issue in this case.

There is an obvious distinction between a commercial dispute and an employment dispute.  Commercial law is defined as "[t]he substantive law dealing with the sale and distribution of goods…" commonly governed by the Uniform Commercial Code.  *See* Black's Law Dictionary, Seventh Edition at p. 263.  Employment is defined as "work for which one has been hired and is being paid by an employer."  *Id.* at p. 545.

Furthermore, the American Arbitration Association ("AAA") itself has separate and distinct rules and procedures for commercial arbitration and employment arbitration, evidencing its intent to treat the two types of arbitration independently.  The AAA's introduction to the Commercial Arbitration Rules and Mediation Procedures ("Commercial Rules") describe commercial disputes as follows:

> Each year, many millions of business transactions take place. Occasionally, disagreements develop over these business transactions. Many of these disputes are resolved by arbitration, the voluntary submission of a dispute to an impartial person or persons for final and binding determination. Arbitration has proven to be an effective way to resolve these disputes privately, promptly, and economically.

*See* Ricksecker Decl. at Ex. 4.  These rules make clear that for commercial matters, parties should specify that the Commercial Rules apply.

On the other hand, the Employment Arbitration Rules and Mediation Procedures ("Employment Rules") state:

> Federal and state laws reflecting societal intolerance for certain workplace conduct, as well as court decisions interpreting and applying those statutes, have redefined responsible corporate practice and employee relations. Increasingly, employers and employees face workplace disputes involving alleged wrongful termination, sexual harassment, or discrimination based on race, color, religion, sex, national origin, age and disability.
>
> As courts and administrative agencies become less accessible to civil litigants, employers and their employees now see alternative dispute

> resolution ("ADR") as a way to promptly and effectively resolve workplace disputes. ADR procedures are becoming more common in contracts of employment, personnel manuals, and employee handbooks.
>
> Increasingly, corporations and their employees look to the American Arbitration Association as a resource in developing prompt and effective employment procedures for employment-related disputes.
>
> These Rules have been developed for employers and employees who wish to use a private alternative to resolve their disputes, enabling them to have complaints heard by an impartial person with expertise in the employment field. These procedures benefit both the employer and the individual employee by making it possible to resolve disputes without extensive litigation.

*See* Ricksecker Decl. at Ex. 5.  The Employment Rules incorporate "The Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship," developed in 1995 by a special task force, which "encourages mediation and arbitration of statutory disputes, **provided there are due process safeguards**." *Id.* (emphasis added).  Because the AAA provides rules and procedures in a variety of areas, including commercial and employment, if the arbitration clause specifies that the Commercial Rules will apply, a court interpreting the clause should find that the parties only intended to submit commercial disputes to arbitration.

There are several key differences between the Commercial and Employment rules, designed to ensure that due process safeguards are in place for statutory employment claims, such as those under the FLSA.  The key differences are as follows:

- The Employment Rules mandate that the parties participate in an arbitration management conference within 60 days of selecting an arbitrator, where the arbitrator will issue an oral or written order reflecting his or her decisions on any outstanding issues. *Id.* at Rule 8.

10

- The Commercial Rules are silent as to discovery, while the Employment Rules give the arbitrator the authority to order discovery.[8] *Compare Id.* at Rule 9 *with* Commercial Rules, (Ricksecker Decl. at Ex 4).

- The arbitrator selected under the Employment Rules must be experienced in the field of employment law, whereas in the commercial context there is no experience requirement. *Compare* Employment Rules at Rule 12, (Ricksecker Decl. at Ex 5) *with* Commercial Rules at R-11-12 (Ricksecker Decl. at Ex 4).

- The Employment Rules set forth more detailed procedures regarding the manner of the proceedings, specifically mandating that the same burdens of proof and burdens of producing evidence apply as if the claims had been brought in court and that witnesses are subject to direct and cross examination. *Compare* Employment Rules at Rule 28 (Ricksecker Decl. at Ex 5) *with* Commercial Rules at R-30 (Ricksecker Decl. at Ex 4).

- The Employment Rules require the arbitrator to provide the written reasons for the award (unless the parties agree otherwise), while the Commercial Rules do not have the same reasoned award requirement. *Compare* Employment Rules at Rule 39 (Ricksecker Decl. at Ex 5) *with* Commercial Rules at R-42 (Ricksecker Decl. at Ex 4).

Not only are there key differences between and rules and procedures, but there are key differences regarding fees. Under the Commercial Rules, the parties' only options are whether to proceed under a standard fee schedule or flexible fee schedule (neither of

---

[8] The Commercial Arbitration Rules for large, complex commercial disputes provide for discovery, however these rules are only applicable for claims that exceed $500,000.

which contains a hardship exception and both of which require payment by the filing party when a claim is filed). *See* Ricksecker Decl. at Ex. 6. However, the Employment Rules contain a sub-section dealing with fees for disputes arising out of employer-promulgated plans.[9] Under these rules, the employer is required to pay the arbitrator's compensation (unless the employee, **post-dispute**, voluntarily elects to pay a portion), all expenses of the arbitrator, any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator. *See* Ricksecker Decl. at Ex. 7. The employee is only responsible for a $175 filing fee. *Id.*

It is also critical that the arbitration provision states that it only pertains to disputes "arising out of this Agreement." If the defendants intended to include arbitration of employment claims or to compel arbitration of employment cases or any non-commercial issues, they should have stated so clearly. *See Warfield v. Beth Israel Deaconess Medical Center*, 454 Mass. 390 (2009) (language did not evidence an intent to arbitrate the plaintiff's statutory discrimination claims) relying in part on *14 Penn Plaza LLC, et al. v. Pyett*, 129 S. Ct. 1456 (2009); s*ee also Garfinkel v. Morristown Obstetrics*, 773 A.2d 665 (N.J. 2001).

A court cannot force parties to arbitrate an agreement unless the parties have agreed to do so. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Although the Fourth Circuit has held that an arbitration clause which required arbitration for any dispute that "arose out of or related to" the agreement was "capable of expansive reach," when an arbitration clause is broadly worded, as in

---

[9] The Employment Rules also contain a sub-section dealing with fees for disputes arising out of individually-negotiated employment agreements or contracts (which then include the standard and flexible fee options). As plaintiffs' have alleged, the UFA and the arbitration provision therein were not individually negotiated but rather thrust upon plaintiffs in a take-it-or-leave-it format.

*American Recovery*, courts will apply the arbitration provision to disputes only if there is a "significant relationship" between the claims at issue and the contract containing the arbitration clause. *Cf Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996); *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001). This "significant relationship" simply does not exist in the case presently before this Court.

The arbitration clause at issue here is much narrower than the clause in *American Recovery*. In that case, the clause required all disputes which "arose out of or related to" the agreement to go to arbitration. Here, the UFA only applies to disputes "arising out of" the agreement to go to *commercial arbitration*. The narrow wording of the arbitration clause limiting it to commercial disputes arising out of the agreement plainly does not apply to claims arising out of an "employer-employee" relationship.

The clear intention of the clause to apply only to commercial disputes precludes compelling arbitration for plaintiffs' claims, which clearly are not commercial in nature. Forcing the plaintiffs to arbitrate under the Commercial rules will deny plaintiffs many important due process safeguards specifically considered by the AAA in formulating the employment arbitration framework and impose costs on plaintiffs for which they would not be responsible under the Employment Rules. Because the arbitration clause in the UFA is limited to **commercial** disputes, was clearly contemplated to only apply to **commercial** disputes, and because this is a statutory **employment** dispute, plaintiffs' claims are not subject to arbitration, and the Court must retain jurisdiction.

### 2. The Plaintiffs are Exempt from the FAA Because they are Transportation Workers Engaged in Interstate Commerce

The FAA states, "nothing herein shall apply to contracts of employment of seamen, railroad employees, or any other classes of workers engaged in foreign or interstate commerce." 9 U.S.C. §1. The Supreme Court addressed this provision of the FAA, and found that this exemption language did not apply to **all** employment contracts of employees engaged in interstate commerce, but rather only applied to transportation workers. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (holding that the §1 exemption is confined to transportation workers).[10] Indeed, when describing the intent of Congress regarding §1, the Court merely stated that "[i]t would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation." *Id.* at 121.

While the status of the plaintiffs as employees is a dispute in this case (an issue that needs to be addressed by this Court), it cannot be disputed that the plaintiffs were clearly working within the realm of transportation. Moreover, the plaintiffs have pled that they are in fact employees or workers in the transportation industry, (*see* Am. Compl.

---

[10] Courts have applied this clause to deny motions to compel arbitration in cases involving the employment of transportation workers. *Harden v. Roadway Packaging Sys.*, 249 F.3d 1137 (9th Cir. 2001); *see also Am. Postal Workers Union v. United States Postal Serv.*, 823 F.2d 466, 473 (11th Cir. 1987) ("Numerous courts have limited the exclusion [in § 1 of the FAA] to 'workers actually engaged in interstate commerce,' including bus drivers and truck drivers."). Similarly, the Third Circuit found that a "field services supervisor" who supervised between 30 and 35 drivers and monitored and improved the performance of the drivers to ensure efficient deliveries at an intrastate, interstate, and international package transportation and delivery company was a transportation worker. *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 590 (3d Cir. 2004). The court held that the field services supervisor's "direct supervision of package shipments [made her] work 'so closely related [to interstate and foreign commerce] as to be in practical effect part of it.'" *Id.* at 593 (quoting *Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of Am.*, 207 F.2d 450, 452 (3d Cir. 1953)). The court refused to limit the § 1 exemption to only those truck drivers who physically move packages because such a limitation would narrow the exemption in a manner that Congress never intended; if Congress wanted the residual clause to cover only employees who physically transport goods, it could have phrased the residual clause differently. *Id.* at 593-94.

¶¶ 16, 24), which for purposes of a motion to dismiss, must be taken as true.  As such, the FAA does not apply to them.  The plaintiffs are employees of SuperShuttle, hired to drive passengers and luggage throughout Maryland, the District of Columbia and Virginia to and from the BWI airport.  They are transportation workers, akin to seamen and railroad employees engaged in interstate commerce, and thus are properly exempted from the FAA.

Undoubtedly, defendants will argue that the clause only applies to transportation workers who are ***moving goods*** through interstate commerce – that because the plaintiffs do not solely transport goods, the plaintiffs somehow are *not* akin to seamen and railroad employees.  The Supreme Court, when describing the split in circuits regarding whether §1 applied to *all* employees engaged in interstate commerce or *only* transportation workers, stated that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, ***for instance,*** as those workers "actually engaged in the movement of goods in interstate commerce."  *Adams*, 532 U.S. at 112 (emphasis added and citation omitted).  The Supreme Court never defined transportation workers covered by this exclusion as ***only*** those workers engaged in the transportation of goods, but rather that the exclusion only applied to "transportation workers" engaged in interstate commerce.  *Id*. at 109.

The defendants will likely rely on a case decided since *Circuit City v. Adams* that found "black car drivers" were not covered by the FAA exclusion.  *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008).  The *Kowalewski* court mistakenly determined that the Supreme Court limited the "residuary exemption" to "transportation

workers," defined "as those workers 'actually engaged in the movement of goods in interstate commerce.'" *Id.* (quoting *Adams*, 532 U.S. at 112). In doing so, however, the *Kowalewski* court omitted a critical phrase by the Court. The Supreme Court *never* defined "transportation workers" to *only* include those transporting goods, but described transportation workers "*for instance,* as those workers actually engaged in the movement of goods in interstate commerce." *Adams*, 532 U.S. at 112 (emphasis supplied). The phrase "for instance" describes a mere example of a transportation worker, and is not a definitive, all encompassing limitation to only those workers engaged in transporting goods.

The defendants', as well as the *Kowalewski* court's interpretation of *Adams* does not comport with the language of the statute, nor does it comport with the definition of the phrase "in commerce" or the word "commerce." The Supreme Court dealt squarely with the definition and reach of the phrase "in commerce" in *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 195 (1974) (defining "in commerce" as related to the "flow" and defining the "flow" to include "the generation of *goods and services* for interstate markets and their transport and distribution to the consumer"). Moreover, the word "commerce" cannot mean two different things in the same statute. Indeed, §§ 1, 2, and 3 of FAA (9 U.S.C. §§ 1-3) are integral parts of the whole. *See Bernhardt v Polygraphic Co. of America,* 350 U.S. 198 (1956). The Supreme Court has held that phrase "commerce" in § 2 of the FAA, covers all commerce, without any limitation to only the movement of goods. *See e.g., Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (interpreting the term "involving commerce" in the FAA as being "perfectly clear that the FAA encompasses a wider range of transactions than those actually "in commerce"--that

16

is, 'within the flow of interstate commerce,'") (citing *Allied-Bruce Terminix Cos.* v.

*Dobson*, 513 US 265, 273-74 (1995)). The same definition of commerce must be

applied to § 1, as each part of the FAA are integral parts of the whole, and the § 1

exclusion properly covers transportation workers involved in *all* types of interstate

commerce, not limited to those solely involved with the movement of *goods*.

Surely neither the Supreme Court nor Congress intended the FAA exclusion to

apply differently to a seaman working on a freighter rather than a cruise liner, or that

somehow the FAA should apply to an Amtrak engineer but not the engineer of a freight

train. Such distinctions are nonsensical and unsupported in the language of the statute.[11]

This court must apply the FAA's § 1 exclusion to the plaintiffs as they are transportation

workers engaged in interstate commerce and reject the defendants motion to compel

arbitration.

### 3. The Arbitration Provisions in the UFA Are Not Valid And Enforceable Because They Are Unconscionable And Must be Stricken Because They Operate to Deny Plaintiffs the Ability to Vindicate Their Rights

Courts will not compel arbitration if a plaintiff cannot effectively vindicate his or

her statutory rights in the arbitral forum. *See Green Tree Fin. Corp.-Alabama v.*

*Randolph*, 531 U.S. 79, 90 (2000); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20,

---

[11] Indeed, should the Court find that the "movement of goods" is required to be excluded under § 1, the plaintiffs still must be found to be excluded from FAA coverage as the exclusion applies to a "class" of worker in the transportation industry, rather than the individual worker (for example, all train engineers would be covered, regardless of whether an individual worker is a passenger or freight engineer). *See Kowalewski v. Samandarov*, 590 F. Supp. 2d at 484 and fn7. Here, the plaintiffs' FAA class is workers in the transportation industry who drive vans. The plaintiffs' FAA §1 exclusion class, *i.e.*, van drivers in the transportation industry, can and do transport goods and/or passengers, and are thus covered by the FAA exclusion as a qualifying class. This is significantly different from the *Kowalewski* plaintiffs, whose class was "black car" or sedan drivers, who rarely, if ever, would be used to transport goods rather than passengers.

28 (1991); *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 282-83 (4th Cir. 2007);

*Murray v. UFCW Int'l, Local 400*, 289 F.3d 297, 301-02 (4th Cir. 2002). Provisions in

arbitration agreements that deny parties the benefits of proceeding in court are

unenforceable. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir.

2003); *Murray*, 289 F.3d at 303-04; *Shankle v. B-G Maintenance Management of

Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999); *Paladino v. Avnet Computer

Technologies, Inc.*, 134 F.3d 1054, 1062 (11th Cir. 1998); *Cole v. Burns Intern. Sec.

Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997); *Graham Oil Co. v. Arco Products Co.*,

43 F.3d 1244, 1247-48 (9th Cir. 1993).

Here, the following clauses operate to deny plaintiffs the ability to vindicate their

rights: (1) the fee-splitting provision requiring each party to pay half of the fees and costs

of the arbitrator; (2) the inability to proceed as a class action; (3) the limitation on

damages and (4) the truncated statute of limitations. These clauses operate together to

ensure that plaintiffs cannot adequately vindicate their statutory rights, and, therefore, the

entire provision must be stricken and this Court must deny defendants' request to compel

arbitration.

> **a.** **Defendants' Fee-splitting Provision Prevents Plaintiffs
> From Vindicating Their Rights and is Thus
> Unenforceable**

Defendants' arbitration provision is unenforceable because it requires the

plaintiffs to split the costs of arbitration, thus creating an extreme disincentive for

plaintiffs to pursue any claims against defendants. The UFA provides:

> The parties shall bear their own costs including without limitation
> attorney's fees, and shall each bear one-half (1/2) of the fees and costs of
> the arbitrator.

Ricksecker Decl. at Ex. 1, ¶ 15G.  If enforced, this would allow defendants to continue their widespread violations with little fear of liability.

It is undisputed that fee splitting can render an arbitration agreement unenforceable where the arbitration fees and costs are so prohibitive as to effectively deny the employee access to the arbitral forum.  *See Green Tree*, 531 U.S at 90-91; *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 553-54 (4th Cir. 2001).  Although the Fourth Circuit has recognized that there is no *per-se* rule invalidating any agreement containing a fee-splitting provision, it will apply a case-by-case analysis to determine whether such provision prevents plaintiffs from vindicating their statutory rights in the arbitral forum.  *Bradford*, 238 F.3d at 556.  In this analysis, the court evaluates whether the arbitral forum in the particular case is "an adequate and accessible substitute to litigation" by focusing on the plaintiffs' ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation, and whether that cost differential is so substantial that it would deter a plaintiff from bringing claims in arbitration.  *Id.*

Here, the arbitral forum is not an adequate and accessible substitute to litigation for these plaintiffs.  Although the Fourth Circuit in *Bradford* ultimately concluded that the cost-splitting provisions did not deter the plaintiff from arbitrating, the facts of this case demonstrate otherwise.[12]  As alleged in this lawsuit, while working for defendants, plaintiffs are regularly paid less than the federal minimum wage of $7.25 per hour

---

[12] In *Bradford*, the court found three reasons for upholding the fee-splitting provision: (1) plaintiff had initiated the arbitration; (2) he conceded that he had received a full and fair arbitration hearing that adjudicated his case on the merits; and (3*) he was earning a base salary of $115,000 at the time of his discharge and did not provide any evidence that he was unable to pay the arbitration costs*.  *Id.* at 558, fn6.  As discussed above, the plaintiffs at issue here are not similarly situated.

required under the FLSA and receive no overtime pay, even though they work hours well above the statutory threshold for overtime pay. *See* Am. Compl. at ¶¶34-36; the accompanying Declaration of Kevin A. Gadson, dated July 1, 2010, ("Gadson Dec.") at ¶ 7; the accompanying Declaration of Okieriete O. Enajekpo, dated July 1, 2010, ("Enajekpo Dec.") at ¶ 7.[13] Plaintiffs' 2009 U.S. Individual Income Tax Returns further demonstrate a complete inability to pay any costs associated with arbitration. On his 2009 U.S. Individual Income Tax Return, plaintiff Kevin Gadson listed a net loss of income. *See* Gadson Dec. at ¶ 8, Ex. 1. Plaintiff Okieriete Enajekpo also listed a loss. *See* Enajekpo Decl. at ¶ 8, Ex. 1. And Plaintiff Sam Muriithi's adjusted gross income (taking into account the self-employment tax as he was laid off by defendants in 2009) was less than $6,000. *See* Muriithi Dec. at ¶ 8, Ex. 1.

In the past, the fee-splitting provision has denied plaintiffs a forum to adjudicate valid disputes with defendants. While employed by SuperShuttle, Plaintiff Muriithi attempted to resolve a commercial dispute under the lease agreement for his SuperShuttle van. *See* Muriithi Dec. at ¶ 9. However, due to an identical fee-splitting provision, he was unable to afford arbitration and thus unable to adjudicate his claims. As such, plaintiffs clearly do not have the ability to pay even minimal arbitration fees.

If required to proceed in arbitration, plaintiffs would be responsible for the following arbitration-related costs (each individually if they are not permitted to proceed on a class/collective or multi-plaintiff basis):

---

[13] Plaintiff Samuel Muriithi is no longer employed by defendants. However, he is currently only earning $225 a week. *See* the accompanying Declaration of Samuel D. Muriithi, dated July 1, 2010, ("Muriithi Dec.") at ¶ 7.

(1)     administrative fees to the American Arbitration Association which include filing fees ($775 and up), final fees ($200 and up), potentially proceed fees (depending on the arbitration model used), postponement/cancellation fees (where applicable), hearing room rental and other expenses. *See* Commercial Arbitration Rules at http://www.adr.org/si.asp?id=5379;[14] and

(2)     Arbitrator fees ranging from approximately $800 to $2,200 per day and which must be paid for the arbitrator's time before and at the hearing and for the time it takes the arbitrator to research and issue his decision after the hearing. *See Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 261-62 (3d Cir. 2003)(discussing AAA arbitrator rates).

There is no indication in the AAA's rules, particularly if plaintiffs are forced to proceed under the commercial rules, that an arbitrator's fees may be reduced or waived in cases of financial hardship.

Even the most conservative estimate of the arbitrator's fees will likely exceed the potential individual recovery. For example, if the arbitrator costs $800 per day and the hearing, combined with the arbitrator's time before the hearing and the time it takes the arbitrator to research and issue his decision after the hearing total only seven days, or one week of his time, that alone is already $5600 and potentially much more. At this time, without having conducted any discovery, plaintiffs estimate that total recovery, while varying for each individual, will on average consist of a few thousand dollars.

In contrast, if this action proceeds in court, Plaintiffs are *collectively responsible* for only a minimal filing fee of $350. 28 U.S.C. § 1914(a).

---

[14] Although plaintiffs have set out the fees that are applicable under the Commercial Rules, as dictated in the arbitration provision of the UFA, should this Court agree that this dispute would more appropriately fall under the Employment Arbitration Rules, (*see* Section III. B (1) above), the fee structure may potentially be the same. *See* http://www.adr.org/si.asp?id=5380.

**b.    Defendants' Prohibition on Class Actions Prevents Plaintiffs From Vindicating Their Rights and Is Thus Unenforceable**

Similarly, prohibiting plaintiffs from proceeding collectively ensures that Plaintiffs cannot fully vindicate their statutory rights.  The UFA provides:

> The parties acknowledge that their relationship is unique and that there are and will be differences from the relationships City Licensee may have with other franchisees or licensees.  Therefore, any arbitration, suit, action or other legal proceeding shall be conducted and resolved on an individual basis only and not on a class-wide, multiple plaintiff, consolidated or similar basis.

Ricksecker Decl. at Ex. 1, ¶ 15G.  The United States Supreme Court has recognized the importance of relief by way of a class action. *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985); *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980) ("[W]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974).

While it may be true that the presence of a class action waiver does not render an arbitration agreement *per se* unconscionable, the Fourth Circuit analyzes such waivers on a case-by-case basis, and considers the unique circumstances of each case.  *Adkins v. Labor Ready, Inc.*, 303 F.3d at 502-03 (recognizing that if a party could demonstrate that the prohibition on class actions likely would make arbitration prohibitively expensive, such a showing could invalidate an agreement); *Schultz v. AT&T Wireless Servs.*, 376 F. Supp. 2d 685, 690 (N.D. W. Va. 2005).

In *Kristian v. Comcast Cable Holdings, LLC*, 446 F.3d 25 (1st Cir. 2006), the First Circuit explicitly applied the "vindication of statutory rights" analysis to strike down a class action waiver where each individual would have received an estimated recovery ranging from a few hundred dollars to, at most, a few thousand dollars. Although the class action prohibition was not in direct conflict with the relevant statutes, the court found that the clause "ostensibly conflict[ed] with the Federal Rules of Civil Procedure, which provide for class actions." *Kristian,,* 446 F.3d at 54.[15] Therefore, the court held that this bar on class arbitration threatened the ability of the plaintiffs to fairly and adequately enforce their statutory rights by means of arbitration. *Id.* In so holding, the court relied on the Supreme Court's decision in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), which stated that "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Id.* at 617.[16]

Here, the realistic alternative to a class action is not multiple arbitration proceedings, but zero individual suits. The cost of each individual arbitration has the potential to far exceed the value of any recovery. Although the parties have not engaged in discovery, plaintiffs estimate that the total recovery for each individual will be small, on average a few thousand dollars per person. As demonstrated above, the cost of the

---

[15] The clause in *Kristian* only banned class arbitration, and not class actions generally, whereas here, the UFA purports to ban all class actions whether in arbitration or court or otherwise.

[16] The *Kristian* court went so far as to distinguish this facts presented from *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002), which was cited by defendants here. The court noted two important facts in *Snowden* that are worth highlighting; in that case, (1) attorney's fees and costs were recoverable and (2) plaintiffs raised claims against banks or other financial lenders under the Truth in Lending Act, 15 U.S.C. 1601 et seq., which contains a bar on class action litigation. *Kristian*, 446 F.3d at 55. The First Circuit refused to extend the rationale for class action bars in the TILA context to the antitrust claims at issue because, among other things, the anti-trust claim involved in *Kristian* involved complicated factual matters and would be cost prohibitive to individual plaintiffs. This Court should hold the same in the employment context.

arbitrator alone (from on average $800-$2200 a day) is likely to exceed the potential individual recovery.  In addition, if class certification is granted in federal court, plaintiffs will share the burden of discovery expenses rather than proceeding individually under the terms of the arbitration agreement.  *See Cole.*, 105 F.3d at 1484 (noting that arbitrators fees are "unlike anything" a party would have to pay in court, particularly since "the services of a judge" are free).  For these reasons alone, the denial of class action litigation likely prevents plaintiffs from vindicating their statutory rights, thus rendering the provision unenforceable.

Unlike the plaintiffs in *Adkins*, plaintiffs here have established (to the best of their ability at this initial stage of the proceedings before any discovery) how much it would cost to proceed individually and how those increased costs would affect their ability to proceed in arbitration.  *See* Section III(B)(3)(a) above.

Further, Section 16(b) of the FLSA, expressly authorizes employees to bring collective wage and hour actions "in behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b).  And this right to collective actions in FLSA cases has been recognized by the Supreme Court.  *Hoffmann-La Roche v. Sperling*, 493 U. S. 165 (1989).  Therefore, if plaintiffs are unable to proceed through a class/collective or multi-plaintiff action, they would be denied an essential statutory right specified in the FLSA.

c.    **Defendants' Provision Limiting Damages Prevents Plaintiffs' From Vindicating Their Rights**

Perhaps most egregiously, Defendants have attempted to use their arbitration provision to severely limit the remedies that plaintiffs could obtain through filing claims. The UFA states:

> Neither party to this Agreement shall assert against the other party any claim for special, exemplary or punitive damages arising out of the franchisor-franchisee relationship, the formation or performance of this Agreement, any breach of this Agreement, or the operation of the franchised business. *The parties also agree and acknowledge that neither party shall be required to pay more in damages than the amount Franchisee has paid to City Licensee pursuant to this Agreement.*

Ricksecker Decl. at Ex. 1, ¶ 15H. (emphasis supplied).[17]  These provisions sharply limit the relief available to plaintiffs through arbitration and bar plaintiffs from obtaining the relief to which they would be entitled to in a court action.  For example, under the FLSA, plaintiffs are entitled to liquidated damages, as well as attorney's fees and costs.  29 U.S.C. § 216(b).

The Supreme Court has recognized the unenforceability of arbitration provisions limiting available relief.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*, 473 U.S. 614, 637 (1985) (stating that if the arbitration agreement at issue had operated "as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.").

Here, not only does the arbitration provision prevent plaintiffs from obtaining entire categories of damages to which they are entitled, but it also imposes rather severe

---

[17] The plaintiffs, however, do not necessarily believe that this provision limits recovery of liquidated damages or attorneys' fees and costs, as such damages under the FLSA involve the employee/employer relationship, rather than the franchisor/franchisee relationship.

restrictions on compensatory damages by limiting damages to "the amount Franchisee has paid to City Licensee pursuant to this Agreement."[18] As such, these provisions operate to circumscribe available remedies so severely that the plaintiffs are unable to vindicate their statutory rights and therefore the clause should be stricken.

> ### d. Defendants' Provision Truncating the Statute of Limitations Prevents Plaintiffs' from Vindicating Their Rights

The UFA also requires that any claims must be brought within one year after the occurrence of the act or omission that is the subject of the arbitration, suit, action or other legal proceeding.  Under the FLSA, a 2-year statute of limitations applies to the recovery of back pay, except in the case of a willful violation, in which case the limitations period is extended to 3 years. 29 U.S.C. § 255(a).[19]

In cases involving enforcement of employment laws, employees cannot be forced to comply with a limitations period that is shorter than the limitation period for their statutory employment claims, particularly in a mandatory arbitration context. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1076-77 (9th Cir. 2007); *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (invalidating "a strict one year statute of limitation" against bringing employment-related statutory claims as substantively unconscionable).

This shortened limitations period clearly infringes on plaintiffs' rights, as the claims raised in the complaint have longer limitations periods.  This one-year statute of limitations bars plaintiffs from pursuing claims that would be available in court under the

---

[18] City Licensee is the title used to describe defendant SEI in the UFA.  *See* Ricksecker Decl. at Ex. 1, p. 1.

[19] Although there is no statute of limitations written into the Maryland Wage and Hour Law, the statute of limitations is three years under the provisions for general civil actions under Maryland Law.  *See* Md. Code Ann. § 5-101 (2010).

three year statute of limitations (or two year if no willful violation is found). In *Davis v. O'Melveny & Myers*, the Ninth Circuit struck down a one-year limitation period in an employer's arbitration policy, noting "particular concern[]" that the one-year period would bar claims asserted under a continuing violation theory. *Davis*, 485 F.3d at 1077.

Likewise, the provision imposed by defendants' functions to bar any "continuing violations" theory because it specifically bars any claims not brought within a year after the occurrence of the act or omission. Furthermore, the provision essentially seeks to waive plaintiffs' rights to be paid minimum wage, which is illegal and thus should be invalidated. *See Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (Noting that the Supreme Court, in interpreting the FLSA, has "frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay" under the FLSA).

### 4.  The Arbitration Provision Is Unconscionable

The Court must refuse to enforce the arbitration provision because it is both procedurally and substantively unconscionable under state contract law principles.

In their discussion of § 2 of the FAA, defendants curiously omit an integral portion of that provision. Section 2 provides that an agreement to arbitrate "shall be valid, irrevocable and enforceable, **save upon such grounds as exist at law or in equity for the revocation of any contract.**" 9 U.S.C. §2 (emphasis added). Thus the FAA specifically contemplates that parties may seek revocation of an arbitration agreement under generally applicable state contractual defenses such as fraud, duress, and unconscionability. 9 U.S.C. § 2; *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d at 83, 87; *Murray*, 289 F.3d

at 302-03 (holding an arbitration unconscionable and therefore unenforceable under which the prospective litigant could not effectively vindicate the statutory cause of action); *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 205 (4th Cir. 2001); *Hooters*, 173 F.3d at 937 (revoking an arbitration agreement which contained procedural rules that were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding").

According to the Supreme Court, courts must "remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.'" *Mitsubishi*, 473 U.S. at 624.  In conducting this analysis, courts must look to state law contract principles, here being Maryland state law on unconscionability.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, (1995); *Perry v. Thomas*, 482 U.S. 483, 492 fn.9, (1987) (state law determines questions "concerning the validity, revocability, or enforceability of contracts generally."); *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (holding that although federal law governs the arbitrability of disputes, ordinary state-law principles resolve issues regarding the formation of contracts).

For a contract or one of its provisions to be unconscionable, there must be both procedural and substantive unconscionability.  *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir.1989); *Britton v. Tech., Automation & Mgmt., Inc.*, 2008 U.S. Dist. LEXIS 47411, at *4-5 (D. Md. June 16, 2008).

Procedural unconscionability "concerns deceptive practices employed at the bargaining table." *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. Ct. Spec. App.

2007).  Courts will look to the bargaining strength of each party, the age and intelligence

of each party, who drafted the contract and whether alterations to the contract would have

been permitted. *Id.*  Courts will also look to whether the arbitration provision was

inconspicuous.  *Dieng v. College Park Hyundai*, 2009 U.S. Dist. LEXIS 58785, *14-15

(D. Md. July 9, 2009).

To determine substantive unconscionability, courts look to the terms of the

contract or the provision.  *Doyle,* 918 A.2d at 1274.  A provision will be found to be

substantively unconscionable if the terms unreasonably favor the more powerful party or

if the terms "impair the integrity of the bargaining process or otherwise contravene the

public interest or public policy."  *Walther v. Sovereign Bank*, 386 Md. 412, 426, 872

A.2d 735, 744 (Md. 2005) (quoting 8 Richard A. Lord, Williston on Contracts § 18:10

(4th ed. 1998)).

Both procedural and substantive unconscionability permeate the arbitration

provision at issue here.  As alleged in plaintiffs' Complaint, the arbitration provision is

procedurally unconscionable because the defendants employed deceptive practices at the

bargaining table by misleading plaintiffs in order to induce them to sign the UFA

containing the arbitration provisions.  Prior to entering into the UFA, defendants (large

national and international corporations) arranged trial periods for the plaintiffs (low-

wage, mostly immigrant workers) to operate a SuperShuttle vehicle.  Purportedly, these

trial periods would demonstrate to plaintiffs their earning potential should they enter into

a UFA. Am. Compl. at ¶ 21.  During these trial periods, defendants failed to withhold the

extensive fees and costs that are customarily withheld from the revenue of each driver

during the normal course of business, and which are outlined in the UFA.  *Id.*  Based on

these strategic omissions by the defendants, the plaintiffs' were left with the misimpression that their inflated earnings during these trial periods would continue during the term outlined in the UFA. *Id.* at ¶ 22. Instead, defendants failed to explain that costs and fees would be deducted from their earnings once they signed the UFA. *Id.*

Further, the arbitration agreement at issue was inconspicuous. Unlike the clause that the court upheld in *Dieng*, this clause was buried on page 30 of the 40 plus page UFA. Moreover, the arbitration provision was not specially designated or distinguished from any other term in the UFA and, therefore, was not easily identifiable.

The substantive unconscionability of the arbitration provisions hinges on the fact that the arbitration provision is designed to prevent the plaintiffs from vindicating their statutory employment rights. Indeed, the terms that are so one-sided that they give defendants an automatic upper-hand in any arbitration proceeding.

### a. It is Unconscionable that Plaintiffs Cannot Vindicate Their Statutory Rights In Arbitration

Plaintiffs will avoid a duplicative account of all the offending provisions (the fee-splitting provision; the limitation on damages; the inability to recover attorneys' fees and the inability to proceed as a class action)[20] and the reasons the arbitration terms are unconscionable and unreasonably favor defendants, as this is already discussed at length in Section III (B)(3)(a)-(d) above.

---

[20] In fact, several courts confronting class action waivers in the arbitration context have found that an arbitration clause that defeats the prospect of class-action treatment in a setting where the practical effect affords the defendant immunity is unconscionable. *See e.g.*, *Kristian,* 446 F.3d 25; *Ingle,* 328 F.3d 1165 (holding a bar on class-wide arbitration was patently one-sided and substantively unconscionable); *Ting v. AT&T,* 319 F.3d 1126, 1130 (9th Cir. 2003) (finding class-action ban violated California's unconscionability law); *Skirchak et al v. Dynamics Research Corp.*, 432 F.Supp. 2d 175 (D.Mass 2006*); State of West Virginia ex rel. Dunlap v. Berger*, 567 S.E.2d 265 (W. Va. 2002).

### b.  Defendants Retention of Sole Discretion to Waive Provisions Under the Agreement is Unconscionable

To clinch the matter, the defendants are not even obligated to abide by the terms of the UFA arbitration agreement.  In fact, defendants retain sole discretion regarding whether to waive any terms, as the UFA provides:

> [Defendants] may in its sole discretion elect from time to time to waive obligations of Franchisee under this Agreement upon such terms and conditions as [defendants] may, in its sole discretion, set forth in such waiver.

Ricksecker Decl. at Ex. 1, ¶ 15F.

Under Maryland law, to be binding and enforceable, an arbitration agreement must be a valid contract, supported by consideration. *Hill v. PeopleSoft USA Inc.*, 412 F.3d at 543; *Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003).  A "promise becomes consideration for another promise only when it constitutes a binding obligation." *Cheek*, 835 A.2d at 661.  Unlike a binding obligation, an "'illusory promise appears to be a promise, but it does not actually bind or obligate the promisor to anything." *Id.* at 662.  Because an illusory promise is not binding on the promisor, it cannot constitute consideration. *Id.*

In *Cheek*, the Maryland Court of Appeals examined an arbitration agreement in which both parties promised to arbitrate their disputes but in which one party reserved the right to modify or revoke the agreement at any time. The court held that the right to modify or revoke the arbitration agreement rendered the party's promise to arbitrate illusory; and because there was no valid promise, the arbitration agreement failed for want of consideration.

31

While defendants are free to modify or revoke any obligations, plaintiffs are afforded no parallel rights.  Therefore, this term is so one-sided it must render the party's agreement to arbitrate void, illusory and thus unenforceable.

**c.  The Application of the American Arbitration Association's Commercial Rules and Procedures Is Unconscionable**

By dictating that any arbitration must follow the American Arbitration Association's Commercial Rules and Procedures and the arbitrator must have commercial experience, the arbitration clause automatically favors defendants.  The UFA provides:

> Except as provided below, any controversy arising out of this Agreement shall be submitted to the AAA at its offices in or nearest to Baltimore, MD for final and binding arbitration in accordance with its commercial rules and procedures which are in effect at the time the arbitration is filed.

> The arbitrator shall be a former judge or have at least five (5) years' experience in either commercial business legal practice or representation of clients in the transportation industry.

Ricksecker Decl. at Ex. 1, ¶ 15G.  If this Court ignores the clear construction that this only applies to commercial disputes, and determines that this clause covers the employment dispute at issue here (*see* Section III (B)(1)), the parties should logically proceed under the AAA's Employment Arbitration Rules.   Whether plaintiffs are properly classified as employees (which is consistent with the finding of the Maryland Department of Labor, Licensing and Regulation, the six-factor economic realities test set out by the Supreme Court in *United States v. Silk*, 331 U.S. 704 (1947) and adopted by both the Fourth Circuit and the Maryland State Courts, *see Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304-05 (4th Cir. 2006); *Heath v. Perdue Farms, Inc.*, 87 F.Supp.2d 452, 456 (D. Md. 2000)) or independent contractors, the underlying dispute is based on employment law principles.   By dictating that commercial rules apply to every

32

arbitration, no matter the subject, defendants have created a one-sided agreement that must be struck down.

### d.      The Offending Clauses May Not Be Severed

Because of the sheer volume of objectionable clauses governing arbitration, as set forth above, the arbitration provision must be stricken in its entirety, as severing will not suffice.  Although plaintiffs recognize that the UFA contains a severability clause (*see* Ricksecker Decl. at Ex. 1, ¶ 15 J) courts have recognized that severability is not always an appropriate remedy for an unconscionable provision in an arbitration clause, particularly where there are multiple offending provisions or where, as here, the provisions render the agreement unenforceable as a whole.  *See e.g., Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1293 (9th Cir. 2006) (holding that flaws in an arbitration provision in the parties' franchise agreement was so permeated by substantive unconscionability that it could not be remedied by severance or any action short of rewriting the contract); *Perez v. Globe Airport Sec. Services, Inc.*, 253 F.3d 1280, 1287 (11th Cir. 2001) opinion vacated pursuant to stipulation of dismissal by parties, 294 F.3d 1275 (11th Cir. 2002) (refusing to sever an unenforceable cost-splitting provision explaining that if the employer could rely on the courts to sever an unlawful provision then the employer would have an incentive to include such provisions which may deter unknowledgeable employees from initiating arbitration); *Alexander v. Anthony Intern., L.P.*, 341 F.3d at 271 (finding the limitation period, limitation on remedies and requirement that the losing party pay arbitration expenses were unenforceable and could not be severed because "unconscionability permeates the agreement…and thoroughly taints its central purpose of requiring arbitration of employment disputes."); *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 34-35 (2007).  Particularly pertinent to the facts

here is the proclamation by the D.C. Circuit that "[i]f illegality pervades the arbitration agreement such that only a disintegrated fragment would remain after hacking away the unenforceable parts, the judicial effort begins to look more like rewriting the contract than fulfilling the intent of the parties." *Booker v. Robert Half Intn'l Inc*, 413 F.3d 77, 84-85 (D.C. Cir. 2005)

Applying these concepts, the Supreme Court of South Carolina refused to sever an arbitration provision where the clause was wholly unconscionable and unenforceable when looking at the cumulative effect of three "oppressive and one-sided provisions" within the clause. *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. at 34-35. Here, there are six "oppressive and one-sided provisions" at issue. Given the sheer number of unconscionable provisions, the result, should this Court sever the offending provisions, would leave the parties with a skeleton of an agreement, requiring this court to essentially draft a new agreement. Instead, the Court should find the provisions unconscionable, unenforceable and invalid, and therefore deny defendants motion to dismiss to compel arbitration.[21]

## C. PLAINTIFFS' MARYLAND FRANCHISE ACT CLAIM WAS PLED WITH SUFFICIENT PARTICULARITY

The plaintiffs alleged facts in their complaint to satisfy the requirements of Fed.R. Civ. P. 12 (b)(6) and 9(b). Plaintiffs are required to provide additional detail when pleading a fraud claim under Rule 9(b)'s standard that the "circumstances constituting the fraud be stated with particularity." Fed.R. Civ. P. 9 (b). The requirements of Rule 9(b) have been held to apply to claims of misrepresentation under state franchise acts that are

---

[21] However, should the Court decide that severance is appropriate, plaintiffs ask that the court sever out the unconscionable provisions.

almost identical to the Maryland Franchise Act. *See Bonfield v. Aamco Transmissions, Inc., 708 F. Supp. 867, 873, 876 (N.D. Ill. 1989).* The Maryland Franchise Act states that the franchisor is civilly liable to the franchisee if the franchise is sold:

> by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, if the person who buys or is granted a franchise does not know of the untruth or omission.

*Md. Code Ann. § 14-227.* The plaintiffs have properly pled information with the required particularity for their allegations under the Maryland Franchise Law claim.

The defendants fault the plaintiffs for not identifying the "time, place and contents of the false representations."[22] Contrary to the defendants' assertion, the plaintiffs demonstrated the required particularity. Indeed, the plaintiffs pled the proper time, place and contents of the false representations. The false representations and omissions were made to the plaintiffs by representatives of the defendants, prior to entering into the UFAs with defendants.[23] As stated in the complaint, prior to signing the UFAs, the defendants arranged for trial periods in which plaintiffs operated a SuperShuttle van in order to allegedly demonstrate the potential income they could earn as a franchisee. *See* Am. Compl. at ¶ 21. During those trial periods, controlled by the defendants, the defendants and their agents misled the plaintiffs, as well as omitted material information regarding their earning potential as franchisees. By failing to withhold the numerous fees and costs that are withheld from the revenue each primary driver earns for defendants,

---

[22] As stated above, such particularity is not required in omission claims.

[23] As noted in the complaint, plaintiff Kevin Gadson entered into a Unit Franchise Agreement ("UFA") with defendants on or around May 17, 2009. Plaintiff Okierieta Enajekpo entered into a UFA with defendants on or around August 20, 2004. At this time he signed a one year agreement with defendants. On or around August 20, 2005, he signed a 10 year UFA with defendants. Plaintiff Samuel Muriithi entered into a UFA with defendants on or around April 3, 2007. *See* Am. Compl., ¶¶18-20.

defendants omitted facts regarding these costs and fees and induced plaintiffs into signing the UFAs by inflating the earning potential of a franchisee. *Id.* at 22.  Once the UFAs were signed, the defendants controlled all compensation received by the drivers, and started withholding fees for (1) dispatching equipment, (2) vehicle payment, (3) vehicle insurance, (4) revenue sharing, and (5) an outbound fee for defendants' customers picked up from BWI.  *See* Am. Comp. at ¶ 27.

It should be noted, however, that fraud allegations claiming omissions, such as in this case, require a less exacting pleading standard.  As noted by this Court, the particularity requirements of Rule 9(b) do not apply to omissions or allegations of concealment.  *See Penn Mut. Life Ins. Co. v. Berck,* 2010 U.S. Dist. LEXIS 27432 (D. MD, March 23, 2010); *Hill v. Brush Engineered Materials, Inc.*, 383 F.Supp.2d 814, 819-821 (D.Md. 2005) (describing the pleading requirement threshold for fraudulent concealment as low and the particularity standard for omissions as a "relaxed 9(b) analysis"); *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D. Md. 1997); *Flynn., v. Everything Yogurt.*, 1993 US Dist LEXIS 15722, *24 (D.Md. Sept 14, 1993) ("omissions cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation."). Assuming *arguendo* that the Court finds that the plaintiffs have not provided sufficient particularity under 9(b) for the misrepresentation claims and those claims must be dismissed without prejudice, the plaintiffs have provided enough particularity in the pleading regarding the omissions allegations to satisfy Rule 12(b)(6) and the more relaxed Rule 9(b) analysis.  *See Brush*, 383 F.Supp.2d at 819-821 (describing the pleading requirement threshold for fraudulent concealment as low and the particularity

standard for omissions as a "relaxed 9(b) analysis"). As this Court held, an actionable omission claim obviously cannot be particularized as to the time, place and contents, or the identity of the person omitting the information. *Id.* at 823.

In the complaint, the plaintiffs pled that the defendants had a policy and practice of omitting the existence of, and failing to explain to the plaintiffs, various costs, fees, etc., related to the franchise. *Id.* at ¶60. Thus, the plaintiffs are alleging that by omitting and failing to explain these fees, costs, etc., defendants have violated, and continue to violate, Maryland Franchise Law, Md. Code Ann. § 14-201, *et seq.* As stated, the time of the misrepresentation and omissions are detailed, *i.e.*, ***prior*** to each plaintiff signing the UFA. Thus, the allegations regarding the fraudulent omissions in violation of the Maryland Franchise Act, as detailed above and in the complaint, satisfy the pleading requirements, provide sufficient particularity, and must not be dismissed.

Furthermore, in the present case, contrary to assertions otherwise, the defendants are aware of the factual basis of plaintiffs' claims. Courts should hesitate to dismiss a complaint under Rule 9(b) "if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The defendants are aware that the plaintiffs were given trial periods to drive a SuperShuttle van prior to signing the UFAs. The defendants are also aware of the method by which plaintiffs were compensated during these trial periods, as compared to after signing the UFA. In this case, defendants have full knowledge of the circumstances for which it will have to prepare a defense. Furthermore, it is clear from the complaint that plaintiffs have substantial evidence of general facts regarding the difference between

how they were compensated during the trial periods compared to after the UFAs were signed, as the plaintiffs detailed that the defendants failed "to withhold the numerous fees and costs that are withheld from the revenue each primary driver earns for defendants completion of the underwriting report and application, and payment of premiums." Am. Compl. at ¶¶21, 22, 27, 60, 61. Therefore, the plaintiffs are able to support their claims adequately for this stage of the proceedings, and defendants' motion to dismiss must be rejected.

### D. PLAINTIFF ENAJEKPO'S MARYLAND FRANCHISE LAW CLAIM SHOULD NOT BE TIME BARRED BASED ON EQUITABLE PRINCIPLES

Plaintiffs disagree with the contention that Plaintiff Enajekpo's statute of limitations has run for his claim under the Maryland Franchise Law. Further discovery on this issue is needed to determine the date on which the time period for this claim began to run. Based on equitable principles such as equitable tolling, the Court should not allow Defendants to hide behind a statute of limitations claim to escape liability for their unconscionable franchise agreement.

### E. DEFENDANTS SSI, SFC, VEOLIA AND VEOLIA ENVIRONMENT ARE PROPERLY NAMED DEFENDANTS

Defendants contend that SuperShuttle International, Inc. ("SSI"), SuperShuttle Franchise Corporation ("SFC"), Veolia Transportation, Inc. ("Veolia"), and Veolia Environment North America Operations LLC ("Veolia Environment") are improperly named defendants because plaintiffs have not alleged any facts establishing that they are employed by any of these four defendants. Plaintiffs' claims against these defendants, however, are proper, because these defendants all have parent-subsidiary relationships rendering each defendant an "employer" for purposes of the FLSA.

Disclosure Statement, Dkt. No. 25.  Defendant SSI is also wholly-owned subsidiary of

Veolia Transportation On Demand, Inc, which is a wholly-owned subsidiary of defendant

Veolia.  *See* Defendants' Corporate Disclosure Statement, Dkt. No. 25.  Defendant

Veolia Environment itself is a wholly-owned subsidiary of Veolia Transport S.A.  *Id.*

Further, defendant SFC is a wholly-owned subsidiary of defendant SSI and grants a

license agreement to defendant SEI, which is incorporated into the UFA.  *Id.; see also*

Am. Compl. at ¶ 8-14; Ricksecker Decl. at Ex. 1, p. 1.

      Plaintiffs' allegations of a parent-subsidiary relationship and defendants'

admission of such a relationship precludes dismissal in this instance, as discovery is

needed to ascertain the specific relationships and control exerted between defendants.  In

fact, defendants, in their memorandum accompanying the present motion to dismiss,

admit that discovery may show a relationship between the defendants, warranting their

inclusion in this case, by stating: "[d]efense counsel even suggested dismissing [SSI],

SEC and Veolia without prejudice to alleviate any concerns Plaintiffs may have regarding

any facts they might learn in the future."  *See* Defendants Memorandum of Law In

Support of Their Motion to Compel Arbitration and Dismiss the First Amended

Complaint, dated June 18, 2010, at p. 5.  This tacit admission that discovery is needed to

show the closeness of the relationship between the defendants clearly precludes dismissal

of any defendants at this time.  Therefore, plaintiffs maintain that all named are liable as

joint employers under the FLSA.

It is well established that for the purposes of FLSA, the term "employer" has been broadly interpreted and may include one or more joint employers depending on the nature of the relationship between the employers. *Zheng v. Liberty Apparel*, 556 F.Supp.2d 284 (2d Cir. 2003); *Falk v. Brennan*, 414 U.S. 190, 195, (1973); 29 C.F.R. 791.2. The Federal Regulations clearly contemplate inclusion of a parent-subsidiary corporate relationships, such as those found here, within the definition of "employer" stating that joint employers exist under the FLSA "[w]here the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, or is controlled by, or is under common control with the other employer." 29 C.F.R. 791.2(b)(3).

If a joint employment relationship does exist, both employers are jointly and individually responsible for FLSA compliance, including overtime and minimum wage provisions, with respect to the employee. *See Lehman v. Legg Mason, Inc.*, 532 F. Supp. 2d 726, 733 (M.D. Pa. 2007); 29 C.F.R. § 791.2(a) & (b)(3). In *Lehman*, the Court found that liability for FLSA violations attached to a parent corporation for the acts of a subsidiary when the parent substantially controlled the terms and conditions of employment at its subsidiary on a regular basis. *Lehman*, 532 F. Supp. 2d at 733; *see also Wabash Radio Corp. v. Walling*, 162 F.2d 391 (6th Cir. 1947).

In the present case, plaintiffs have clearly alleged that a parent-subsidiary relationship exists between the defendants. *See* Am. Compl. at ¶ 8-14. Defendants do not contend that defendant Shuttle Express, Inc. ("SEI") is an improper party, which is a wholly owned subsidiary of defendant SSI. *Id.* at ¶ 8-14; *see also* Defendants' Corporate

IV.   **CONCLUSION**

Based on the foregoing analysis, Defendants Motion to Compel Arbitration and to Dismiss the First Amended Complaint Must be denied in full because:

1)   the language in the arbitration clause does not cover the claims alleged in Plaintiffs' Amended Complaint;

2)   the FAA is inapplicable because plaintiffs are transportation workers engaged in interstate commerce;

3)   even if the FAA applies and the arbitration clause is broad enough to cover the present dispute, the arbitration agreement must be stricken because the following clauses operate to deny plaintiffs the ability to vindicate their rights: (1) the fee-splitting provision requiring each party to pay half of the fees and costs of the arbitrator; (2) the inability to proceed as a class action; (3) the limitation on damages and (4) the truncated statute of limitations;

4)   even if the FAA applies and arbitration clause is broad enough to cover the present dispute, the arbitration agreement must be stricken because the following clauses are unconscionable under state contract law:  (1) the fee-splitting provision requiring each party to pay half of the fees and costs of the arbitrator; (2) the prohibition on class actions; (3) the limitation on damages; (4) the truncated limitations periods; (5) sole discretion given to defendants to waive obligations; and (6) the requirement that any arbitration proceed under the American Arbitration Association's Commercial Rules.

5) given the sheer number of clauses that plaintiffs contend are unconscionable, the entire arbitration provision must be stricken;

6) even if this Court does not strike the entire arbitration provision, the Court should strike the following clauses:  (1) the fee-splitting provision requiring each party to pay half of the fees and costs of the arbitrator; (2) the prohibition on class actions; (3) the limitation on damages; (4) the truncated limitations periods; (5) sole discretion given to defendants to waive obligations; and (6) the requirement that any arbitration proceed under the American Arbitration Association's Commercial Rules.

7)  the plaintiffs Maryland Franchise Act Claim was pled with sufficient particularity;

8) Defendants SSI, SFC, Veolia, and Veolia Environment are properly named defendants; and

9) Plaintiff Enajekpo's Maryland Franchise Law Claim should not be time barred based on equitable principles.

In the alternative, should this Court decide to compel arbitration, plaintiffs' request that this Court exercise its authority under the Federal Arbitration Act to stay these court proceedings.

Respectfully Submitted,


/s/ David Ricksecker
Molly A. Elkin (#14201)
Gregory K. McGillivary
David Ricksecker
Diana J. Nobile
WOODLEY & McGILLIVARY
1101 Vermont Ave., N.W.
Suite 1000
Washington, DC 20005
Phone: (202) 833-8855
Fax: (202) 452-1090

Laura Brown
Arthur Rogers
D.C. Employment Justice Center
727 15th Street NW, 2nd Floor
Washington, DC 20005 USA
Phone: (202) 828-9675
Fax: (202) 828-9190
Attorneys for Plaintiffs

## Certificate of Service

This is to certify that a true and accurate copy of the Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Compel Arbitration and to Dismiss the First Amended Complaint was served on defendants' counsel by electronic filing on July 16, 2010 to the following counsel for the defendants:

Russell R. Bruch, Esq.
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
202-739-5293
202-739-3001 (fax)
rbruch@morganlewis.com

Christopher A. Parlo, Esq.
Melissa C. Rodriguez, Esq.
Leni D. Battaglia, Esq.
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
212-309-6000
212-309-6001 (fax)
cparlo@morganlewis.com
mcrodriguez@morganlewis.com
lbattaglia@morganlewis.com

/s/ David W. Ricksecker
David W. Ricksecker