**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

------------------------------------------------------------x

KEVIN A. GADSON, et al.,             :
                                     :

           Plaintiffs,         :
                                     :

           v.               :  Civil Action No. 10-cv-01057-AW
                                     :

SUPERSHUTTLE INTERNATIONAL, INC., et al.,:
                                     :

           Defendants.      :

------------------------------------------------------------x

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**
**AND TO DISMISS THE FIRST AMENDED COMPLAINT**

Russell R. Bruch, Esq. (Bar No. 17108)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC  20004
202-739-5293
202-739-3001 (fax)
rbruch@morganlewis.com

Christopher A. Parlo, Esq.  *(admitted pro hac vice)*
Melissa C. Rodriguez, Esq.  *(admitted pro hac vice)*
Leni D. Battaglia, Esq.  *(admitted pro hac vice)*
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
212-309-6000
212-309-6001 (fax)
cparlo@morganlewis.com
mcrodriguez@morganlewis.com
lbattaglia@morganlewis.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

I.   PLAINTIFFS' CLAIMS ARE DEPENDANT ON, AND CLEARLY FALL
     WITHIN THE SCOPE OF THE ARBITRATION PROVISION OF, THE UFAS. ......... 3

II.  PLAINTIFFS DO NOT FALL UNDER THE FAA'S "TRANSPORTATION
     WORKER EXCLUSION" AND, THEREFORE, THEIR CLAIMS ARE
     ARBITRABLE. .................................................................................................. 5

III. THE TERMS OF THE ARBITRATION PROVISION DO NOT PREVENT
     PLAINTIFFS FROM VINDICATING SUBSTANTIVE RIGHTS. ............................... 11

     A.   The Fee-Splitting Aspect Of The Arbitration Provision Does Not Impose
          An Undue Hardship On Plaintiffs ................................................................ 12

     B.   The Class And Collective Actions Waiver Is Enforceable ................................. 15

     C.   The Requirement That The Rules And Procedures Of The AAA Govern
          Any Arbitration Between The Parties Is Not Unconscionable. .......................... 16

IV.  PLAINTIFFS' ASSERTION THAT THE UFA AS A WHOLE IS
     UNCONSCIONABLE IS AN ISSUE FOR THE ARBITRATOR AND NOT THE
     COURT. .......................................................................................................... 16

     A.   The One-Year Limitations Period On Bringing Claims Does Not Deprive
          Plaintiffs Of Their Substantive Rights. ......................................................... 17

     B.   The Nonwaiver Provision In The UFAs Is Not Unconscionable ........................ 19

     C.   The Limitation On Damages (Moot Here) Is Enforceable ................................. 19

     D.   Plaintiffs Have Not Established Procedural Unconscionability ......................... 20

     E.   Should The Court Find Any Provision In The UFAs Unconscionable, It
          Should Modify Or Sever This Provision And Still Compel Arbitration. ............ 21

V.   PLAINTIFFS' GENERAL, CONCLUSORY AND NONSPECIFIC
     ALLEGATIONS OF FRAUD CANNOT SURVIVE THE MOTION TO
     DISMISS ......................................................................................................... 22

VI.  SSI, SFC, VEOLIA AND VEOLIA ENVIRONMENT SHOULD BE
     DISMISSED. ..................................................................................................... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*14 Penn Plaza LLC. v. Pyett*, 129 S. Ct. 1456 (2009) ....................................................5

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986) ..........5

*Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002) ...................................*Passim*

*Alexander v. Anthony International, L.P.*, 341 F.3d 256 (3d. Cir. 2003) ...............................13, 22

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ........................................6

*American Postal Workers Union v. United States Postal Service*, 823 F.2d 466 (11th Cir. 1987) ......................................................................................10

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ...................................................................24

*Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592 (6th Cir. 1995) ...................................7

*Benson v. Candor Mortg. Corp.*, Civil. No. L-10-481, 2010 WL 1741379 (D. Md. Apr. 27, 2010) ..................................................................................23

*Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549 (4th Cir. 2001) ......................................................................................12, 13, 14

*Brown v. Herron*, Civ. AW-08-2696, 2009 WL 2366131 (D.Md. July 28, 2009) .......................14

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) .................................................6, 7

*Cline v. S. Star Ctr. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203 (D. Kan. 2005)............................18

*Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C. Cir. 1997)...........................6

*CompuSpa v. International Business Machines, Corp.*, 228 F. Supp. 2d 613 (D. Md. 2002) ......................................................................................24

*Costar Realty Information, Inc., v. Field*, 612 F. Supp. 2d 660 (D. Md. 2009) ..........................21

*In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274 (4th Cir. 2007) ..................................*Passim*

*DePhillips v. United States*, No. 8:09-cv-00905, 2009 WL 4505877 (D. Md. Nov. 24, 2009) ..................................................................................25

*Dieng v. College Park Hyundai*, No. DKC 2009-0068, 2009 WL 2096076 (D. Md. July 9, 2009) ...................................................................................................11, 13, 18

*Francis v. Giacomelli,* 588 F.3d 186 (4th Cir. 2009) ...................................................24

*Gill v. World Inspection Network International, Inc.*, No. 06-CV-3187 (JFB)(MLO), 2006 U.S. Dist. LEXIS 52426 (E.D.N.Y. July 31, 2006)...........................................13

*Glunt v. GES Exposition Services, Inc.*, 123 F. Supp. 2d 847 (D. Md. 2000) ...............................24

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000).....................................11

*Hadnot v. Bay, LTD.*, 344 F.3d 474 (5th Cir. 2003) .....................................................20

*Harmon v. Bankunited*, No. WDQ-08-3456, 2009 WL 3487808 (D. Md. Oct. 22, 2009)............25

*Harrsion v. Westinghouse Savannah River Co.*, 176 F.3d 776 (4th Cir. 1999)............................22

*Hartford Fire Insurance Co. v. Pettinaro Construction Co., Inc.*, 820 F. Supp. 154 (D. Del. 1993) ...................................................................................................................21

*Higgins v. Food Lion, Inc.*, No. CIV. A. AW00CV2617, 2001 WL 77696 (D. Md. Jan 23, 2001) ...................................................................................................................18

*JTH Tax, Inc. v. Lee*, No 2:06cv486, 2007 WL 1795751 (E.D. Va. June 19, 2007)..............17, 20

*James C. Justice Companies v. Deere & Co.*, No. 5:06-cv-00287, 2008 WL 828923 (S.D. W.Va. Mar. 27, 2008) ...............................................................................................20

*Johnson v. Wheeler*, 492 F. Supp. 2d 492 (D. Md. 2007) ............................................................23

*Kordize v. Fannie Mae Corp.*, 593 F. Supp. 2d 863 (E.D. Va. 2009) .....................................13, 14

*Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008) ................................................8

*Kristian v. Comcast Cable Holdings, LLC*, 446 F.3d 25 (1st Cir. 2006)................................15, 20

*L & E Corp. v. Days Inns of America, Inc.*, 992 F.2d 55 (4th Cir. 1993)....................................16

*Lewis v. Potter*, No. DKC 2008-2249, 2009 WL 2168969 (D. Md. July 17, 2009).....................24

*Lorntzen v. Swift Transportation, Inc.*, 316 F. Supp. 2d 1093 (D. Kan. 2004)................................9

*McDonald v. Friedman*, No. RDB-02-2812, 2004 WL 3397805 (D. Md. Feb. 3, 2004).............23

*McNamara v. Yellow Transportation, Inc.*, 570 F.3d 950 (8th Cir. 2009) ......................................9

*Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315 (4th Cir. 1982) ..................................................................................................................21

*Motor Bagels, L.L.C. v. American Bagle Co.*, 50 F. Supp. 460 (D. Md. 1999)...........................23

*Myers v. Western-Southern Life Insurance Co.*, 849 F.2d 259 (6th Cir. 1988)...........................18

*Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)........................................................22

*O'Neil v. Hilton Head Hospital*, 115 F.3d 272 (4th Cir. 1997)........................................................9

*Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004) .....................................................10

*Parkman v. Elam*, No. 3:08-cv-690, 2009 WL 736067 (E.D. Va. Mar. 17, 2009).......................25

*Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir. 1997) ..................................................6

*Pietro Scalzitti Co. v. International Union of Operating Engineers*, 351 F.2d 576 (7th Cir. 1965) ..................................................................................................................10

*Powers v. Fox TV Stations*, 923 F. Supp. 21 (S.D.N.Y. 1996) ........................................................8

*Reid v. SuperShuttle International, Inc.*, No. 08-cv-4854 (JG)(VVP), 2010 WL 1049613 (E.D.N.Y. Mar. 22, 2010) ...................................................................3, 12, 13, 14, 15

*Rent-a-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) ......................................................17

*Rojas v. TK Communications, Inc.*, 87 F.3d 745 (5th Cir. 1996) .....................................................7

*Rumpz v. American Drilling & Testing, Inc.*, No. 09-10971, 2009 WL 3464826 (E.D. Mich. Oct. 23, 2009) .........................................................................................18

*Sedelnikova v. The Cheesecake Factory Restaurant, Inc.*, No. AW-09-2398, 2010 WL 2367387 (D. Md. June 7, 2010) .................................................................................5

*Snowden v. CheckPoint Check Cashing*, 290 F.3d 631 (4th Cir. 2002) .......................................15

*Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001)........................16, 17

*United States v. Wadford*, 331 F. App'x 198 (4th Cir. 2009)...........................................................7

*Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851 (N.D. Cal. Apr. 5, 2004) ...............................................................................................9

*Wauben v. Protego (USA), Inc.*, No. 05-2780-PMD-RSC, 2007 WL 775614 (D.S.C. March 9, 2007)................................................................................................24

*Wooton Enterprises, Inc. v. Subaru of America, Inc.*, 134 F. Supp. 2d 698 (D. Md. 2001) .............................................................................................................23

*Zeno v. Chevy Chase Bank*, No. PJM 08-2236, 2009 WL 4738077 (D. Md. Dec. 4, 2009)...................................................................................................23

## STATE CASES

*Aetna Casualty & Surety Co. v. Insurance Commissioner*, 293 Md. 409, 445 A.2d 14 (1982)..........................................................................................................4

*Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 731 A.2d 441 (1999)..................4

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (Md. 2003) ...........................................................................................................19

*DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 829 A.2d 626 (2003)...................................................4

*Holmes v. Coverall North America, Inc.*, 336 Md. 534, 649 A.2d 365 (1994) ...........................11

## STATUTES

9 U.S.C. § 1  ....................................................................................................................5

Md. Code Ann. § 14-227 ...........................................................................................11, 19, 22

Cts & Jud. Proc. § 3-206...........................................................................................11

<u>PRELIMINARY STATEMENT</u>

Plaintiffs' Opposition ("Opposition" or "Opp.") to Defendants' Motion to Compel

Arbitration and to Dismiss seeks a new interpretation of the Federal Arbitration Act ("FAA") and

ignores the overwhelming body of law favoring and enforcing arbitration agreements.  As such,

none of Plaintiffs' arguments have any merit and Defendants' Motion should be granted in its

entirety.

Plaintiffs first argue that their claims do not fall within the scope of the arbitration

provision in their Unit Franchise Agreements ("UFAs").[1]  To the contrary, Plaintiffs' claims are

intertwined with and arise directly out of their UFAs.  Specifically, Plaintiffs' Fair Labor

Standards Act ("FLSA") and Maryland Wage and Hour Law ("MWHL") claims are based on

their contention that Defendants misclassified them <u>in their</u> UFAs as independent

contractors/franchisees instead of as employees.  Plaintiffs' claims thus stem from the

independent contractor relationship created by the UFAs and are covered by the broad arbitration

provision in those agreements.  Similarly, Plaintiffs' Maryland Franchise Law claim is within the

scope of the arbitration provision in the UFAs because this claim is based on an alleged failure to

disclose the franchise fees required and governed <u>by the</u> UFAs.  Moreover, Plaintiffs seek relief

for fee payments, including restitution of franchise fees, that were due, owing, and paid under the

express terms <u>of the</u> UFAs.  In sum, no valid argument can be made that Plaintiffs' claims do not

"arise out of" the UFAs, and, therefore, those claims are arbitrable under the terms of the UFAs.

Plaintiffs next argue that they are exempt from the FAA under the "transportation worker

exclusion" in Section 1 of the FAA.  This argument fails as a matter of law.  The Supreme Court

and courts within the Fourth Circuit have narrowly applied the FAA transportation worker

---

[1] The UFAs are the franchise agreements between each Plaintiff and Shuttle Express, Inc. ("SEI").  *See* UFA, attached as Exhibit 1 to Declaration of David Ricksecker, Dkt. No. 32-8 at p. 1.

1

exclusion to only those workers actually engaged in the transportation of goods in interstate commerce.  Here, in contrast, Plaintiffs provide ground transportation to airport passengers and do not transport any goods.  Further, even if the FAA did not apply, Maryland law also favors contractual agreements to arbitrate claims.

Plaintiffs' third argument is that the fee splitting requirement and class and collective action waivers set forth in the UFAs are unenforceable.  Plaintiffs' argument fails, however, because they have not established that arbitration of their individual claims would be prohibitively expensive.  Furthermore, Fourth Circuit law is clear that Plaintiffs are not prohibited from knowingly and voluntarily waiving their procedural rights to bring class and collective action claims and agreeing to arbitrate their substantive rights on an individual basis, as they have done here.

Plaintiffs also argue that several provisions in the UFA, independent from the arbitration provision, are unconscionable.  However, because these arguments relate to the terms of the UFA as a whole, and not to the arbitration provision itself, these arguments must be decided by an arbitrator and not by this Court.  Regardless, Plaintiffs' unconscionability arguments lack merit because the UFAs do not unduly favor SEI and because the UFAs do not deprive Plaintiffs of any substantive rights.

Finally, Plaintiffs argue that they have pled their Maryland Franchise Law claims with the requisite particularity and have sufficiently averred that all of the Defendants are liable for the claims asserted in the Amended Complaint.  These arguments fail because Plaintiffs still have not alleged the requisite facts to support their legal conclusions.  Consequently, dismissal of Plaintiffs' Franchise Law claims, and all claims against all Defendants other than SEI, is warranted.

Accordingly, the Court should compel Plaintiffs to submit their individual claims to arbitration and grant Defendants' Motion in its entirety.

## ARGUMENT

### I.     PLAINTIFFS' CLAIMS ARE DEPENDANT ON, AND CLEARLY FALL WITHIN THE SCOPE OF THE ARBITRATION PROVISION OF, THE UFAS.

The arbitration provision in the UFAs applies to "any controversy arising out of this Agreement . . ." UFA at §15(G). Plaintiffs' claims unquestionably arise out of the UFAs. First, Plaintiffs allege that Defendants misclassified them as "franchisees" and/or "independent contractors," as opposed to employees, and consequently failed to comply with the FLSA and the MWHL. *See* Am. Compl. at ¶¶ 33-37. That classification occurred through the UFAs, which specifically provide that Plaintiffs are independent contractors who independently own and have full control over their franchises. *See* UFAs at § 15(N)(1-2). Thus, Plaintiffs' allegations of misclassification arise directly out of the UFAs. Indeed, the United States District Court for the Eastern District of New York recently held, in a case involving UFAs essentially identical to Plaintiffs' UFAs, that the plaintiffs' FLSA misclassification claims arose out the UFAs. *See Reid v. SuperShuttle Int'l, Inc.*, No. 08-cv-4854 (JG)(VVP), 2010 WL 1049613, at *6 (E.D.N.Y. Mar. 22, 2010). As a result, the court in *Reid* compelled the plaintiffs to submit their claims to arbitration. *Id.* The same result is appropriate here.[2]

Plaintiffs' Maryland Franchise Law claims are also inseparable from and arise out of the franchisor/franchisee relationship created and governed <u>by the</u> UFAs. In particular, Plaintiffs' Franchise Law claims are based on Plaintiffs' allegation that Defendants misrepresented and/or failed to disclose that, as part of their franchise agreement, Plaintiffs would be responsible for the payment of various fees and costs. *See* Am. Compl. at ¶ 61. All of those fees and costs are

---

[2] In their Opposition, Plaintiffs do not even mention, much less seek to distinguish, the *Reid* decision.

expressly enumerated in the UFAs.  *See* UFA at §§ 1, 2, 7.  Plaintiffs also seek the recovery of

franchise fees that they paid to Defendant SEI.  *See* Am. Compl. at ¶ 64.  The payment of the

franchise fees Plaintiffs seek to have reimbursed is also governed by the UFAs.  *See* UFA at §§

1(B), 7.  Accordingly, Plaintiffs' state law claims also necessarily arise out of the UFAs.

Plaintiffs attempt to avoid arbitration by advancing a tortured reading of the arbitration

provision in the UFAs.  Conveniently ignoring that the arbitration provision in the UFAs clearly

states that "any controversy arising out of this agreement" should be submitted to arbitration

(UFA at § 15(G)) (emphasis added), Plaintiffs assert that arbitration is limited to "commercial

disputes arising out of the agreement."  Opp. 13, 8.  That is not, however, what the provision

says.  The express language states "any controversy arising out of…," not any commercial

dispute arising out of.  Plaintiffs' interpretation of the arbitration provision improperly renders

nugatory the unqualified words "any controversy," and that is not permissible.  *See DIRECTV,*

*Inc. v. Mattingly*, 376 Md. 302, 320, 829 A.2d 626, 637 (2003) ("A recognized rule of

construction in ascertaining the true meaning of a contract is that the contract must be construed

in its entirety and, if reasonably possible, effect must be given to each clause so that a court will

not find an interpretation which casts out or disregards a meaningful part of the language of the

writing unless no other course can be sensibly and reasonably followed.") (citation omitted);

*Auction & Estate Representatives, Inc. v. Ashton*, 354 Md. 333, 340, 731 A.2d 441, 444 (1999)

("[T]he clear and unambiguous language of an agreement will not give way to what the parties

thought the agreement meant or was intended to mean."); *Aetna Cas. & Sur. Co. v. Insurance*

*Comm'r*, 293 Md. 409, 420, 445 A.2d 14, 19 (1982) ("Where the language of the contract is

unambiguous, its plain meaning will be given effect.  There is no need for further

construction.").  Moreover, the fact that the arbitration provision states that commercial rules and

procedures should apply to "<u>any</u> controversy" that arises does not in any way restrict the

arbitration provision only to commercial disputes.  The commercial rules and procedures can be

used for any type of controversy.  In light of the unambiguous language mandating arbitration of

<u>any</u> <u>controversy</u> arising out of the UFAs, Plaintiffs' argument that the "parties only intended to

submit commercial disputes to arbitration" (Opp. 10) must be rejected.[3]

 In short, Plaintiffs' claims clearly arise out of the UFAs and, thus, are subject to the

UFAs' arbitration provision.  Any doubt should be resolved in favor of arbitrating these claims.

*See AT&T Techs, Inc.. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (stating that

courts should find the dispute at issue subject to arbitration, "unless it may be said with positive

assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute."); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (stating that

ambiguities as to the scope of an arbitration clause should be resolved in favor of arbitration);

*Sedelnikova v. The Cheesecake Factory Rest., Inc.*, No. AW-09-2398, 2010 WL 2367387, at *7

(D. Md. June 7, 2010) (Williams, J.) (noting that courts must interpret arbitration agreements as

broadly as possible).  Accordingly, Plaintiffs should be compelled to arbitrate their claims.

## II. PLAINTIFFS DO NOT FALL UNDER THE FAA'S "TRANSPORTATION WORKER EXCLUSION" AND, THEREFORE, THEIR CLAIMS ARE ARBITRABLE.

 Section 1 of the FAA states in relevant part that "[n]othing herein contained shall apply

to contracts of employment of seamen, railroad employees, or any other class of workers

engaged in foreign or interstate commerce."  9 U.S.C.  § 1. Plaintiffs argue that the

---

[3] Plaintiffs' citation to cases involving discrimination claims, including *14 Penn Plaza LLC. v. Pyett*, 129 S. Ct. 1456 (2009), are inapposite.  In *14 Penn Plaza*, the Supreme Court stated that "an agreement to arbitrate statutory *antidiscrimination* claims [must] be 'explicitly stated' in the *collective-bargaining agreement*." *Id.* at 1465 (emphasis added).  The Supreme Court has not extended its holding outside the collective bargaining context, or held that an arbitration agreement between two private parties must expressly reference an agreement to arbitrate FLSA claims.

"transportation worker exclusion" contained in Section 1 applies here because they are working

in the "realm of transportation." Opp. 14.  Plaintiffs fail to explain, however, or provide any

citation to, where in the FAA Congress created a "realm of transportation" exception.  *Id.*

Plaintiffs also ignore clear Supreme Court and Fourth Circuit precedent instructing courts to

narrowly construe the transportation worker exception.  Specifically, in *Circuit City Stores, Inc.*

*v. Adams*, the Supreme Court addressed the meaning of Section 1 and noted that most Courts of

Appeals have interpreted this exclusion narrowly, limiting it to "those workers 'actually *engaged*

*in the movement of goods* in interstate commerce.'" 532 U.S. 105, 112 (2001) (quoting *Cole v.*

*Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1471 (D.C. Cir. 1997)) (emphasis added); *see also*

*Adkins*, 303 F.3d at 505 ("Section 1 of the FAA represents a narrowly targeted exception to the

well-established, broad preference in favor or arbitration.  As such it must be construed

narrowly.") (citation omitted).

As the Court of Appeals for the Eighth Circuit has held, the words "engaged in

commerce" as used in Section 1, "describe only those workers actually involved 'within the

flow' of interstate commerce."  *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 835-36 (8th

Cir. 1997) (citing *Cole*, 105 F.3d at 1471-72).  This is in contrast to the phrase "involving

commerce," as used in Section 2 of the FAA to describe the scope of coverage of the Act.  That

phrase is broader than "in commerce" and covers "more than 'only persons or activities within

the flow of interstate commerce.'"  *Patterson*, 113 F.3d at 836 (citing *Allied-Bruce Terminix*

*Cos. v. Dobson*, 513 U.S. 265, 273 (1995)); *see also Circuit City Stores, Inc.*, 532 U.S. at 115-16

(distinguishing between the phrase "involving commerce," as used in Section 2 of the FAA,

which "signals an intent to exercise Congress' commerce power to the full" from the phrase

"engaged in commerce," which is "understood to have a more limited reach") (citations omitted). Accordingly, Plaintiffs' argument clearly has no merit.

In analyzing the scope of the exclusion contained in Section 1, the Supreme Court has relied on the statutory canon of *ejusdem generis,* which provides that "[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding words." *Circuit City*, 532 U.S. at 114-15 (internal quotation marks and citation omitted).  As such, the Supreme Court has concluded that the language in Section 1 pertaining to "any other class of workers engaged in foreign or interstate commerce," "should be read to give effect to the terms 'seamen' and 'railroad employees,' and should itself be controlled and defined by reference to the enumerated categories of workers which are recited just before it." *Id.* at 115.  Thus, the Supreme Court held that Congress intended only to exempt from the FAA a narrow category of workers, who like "seamen" and "railroad workers" engaged in the "free flow of goods." *Id.* at 121; *see also Rojas v. TK Commc'ns, Inc.*, 87 F.3d 745, 748 (5th Cir. 1996) ("'The exclusionary clause of §1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of good in interstate commerce in the same way that seamen and railroad workers are.'") (quoting *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 600-01 (6th Cir. 1995); *Adkins*, 303 F.3d at 505 (rejecting plaintiffs' assertion that if any Labor Ready employees had been assigned to a transportation-related job, plaintiff should be exempted from the FAA). [4]

---

[4] Notably, the phrase "interstate commerce" has a different definition and meaning under the FAA than it does under other statutes.  In making the argument that Plaintiffs are not engaged in "interstate commerce" with the meaning of Section 1 of the FAA, therefore, Defendants have not waived and reserve the right to raise any applicable claims or defenses under other statutes, including any applicable federal or state wage and hour statutes.  *See Circuit City*, 532 U.S. at 115-16; *see also United States v. Wadford*, 331 F. App'x 198, 204 (4th Cir. 2009) (noting that Congress uses different modifiers to the word "commerce" in the design and enactment of its statutes).

The holdings of the Supreme Court and numerous Courts of Appeals that the exemption contained in Section 1 of the FAA must be construed narrowly is determinative here as Plaintiffs do not allege anywhere in the Amended Complaint that they engaged in the requisite transportation of *goods* necessary to qualify for the exemption.  To the contrary, they state that they were hired as drivers of "passenger shuttles" to pick up customers at airports.  Am. Compl. ¶¶ 10, 17, 24, 25 (emphasis added).  This fatal flaw in Plaintiffs' argument was discussed in detail in the analogous case of *Kowalewski v. Samandarov*, 590 F. Supp. 2d 477 (S.D.N.Y. 2008).  In *Kowalewski,* the defendant was a franchisor in the "Black Car" industry, in which the franchisee plaintiffs paid a fee to enter into a Subscription Agreement which, as here, entitled subscribers to "participate in the Company's referral and dispatch network."  *Id.* at 479.  As here, the Subscription Agreement included an arbitration provision that covered "any claim or controversy" between the parties.  *Id.* at 480.

As part of the car service, the plaintiffs occasionally transported passengers across state lines.  *Id.* at 481-82.  Based on that, the plaintiffs argued that their RICO and other claims against defendant were exempt from the Subscription Agreement's arbitration provision because they were involved in interstate commerce and, therefore, Section 1 of the FAA applied.  *Id.* at 480.  The court rejected this argument, finding that, under the FAA, the movement of physical goods is "an indispensable element to being 'engaged in commerce in the same way that seamen and railroad workers are.'" *Id.* at 484 (citing *Powers v. Fox TV Stations*, 923 F. Supp. 21, 23 (S.D.N.Y. 1996)).  Consequently, the court held that plaintiffs did not qualify for the exemption because "transporting passengers interstate as part of a car service is too far removed from the type of work engaged in by seamen and railroad workers – that is, being a member of an industry

that primarily involves the actual, physical movement of goods through interstate commerce." *Id.* at 484.

The same is true here.  Plaintiffs are not involved in transporting goods interstate within the meaning of the FAA.  Rather, as the Amended Complaint and the UFAs make clear, they provide ground transportation to airport passengers.  *See* Am. Compl. at ¶¶ 10, 17, 24, 25; UFA § A.[5]  Accordingly, the transportation worker exclusion of the FAA is inapplicable to Plaintiffs and their claims are subject to arbitration.  *See O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997) (stating that the Section 1 exemption is limited to "seamen, railroad workers, and other workers actually involved in the interstate transport of goods" and "[t]herefore, since O'Neil was not engaged in the interstate transportation of goods, she does not fall within the section 1 exclusion, and the FAA applies."); *see also McNamara v. Yellow Transp., Inc.*, 570 F.3d 950 (8th Cir. 2009) (holding plaintiff was not a transportation worker exempt from the FAA because plaintiff did not supervise employees directly involved in the transportation of goods); *Lorntzen v. Swift Transp., Inc.*, 316 F. Supp. 2d 1093, 1097 (D. Kan. 2004) (holding that plaintiff was not an exempt transportation worker under the FAA because she did not "handle goods that traveled interstate, nor supervise employees who were themselves transportation workers"); *Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851, at *5-6 (N.D. Cal. Apr. 5, 2004) (conducting a survey of cases addressing this issue and concluding that plaintiffs who are not

---

[5] Plaintiffs vaguely argue in their Opposition that they "do not solely transport goods."  Opp. 15.  However, nowhere in the Amended Complaint do they allege that they transport any goods whatsoever.  To the contrary, Plaintiffs clearly allege that they "transport <u>passengers</u> to and from BWI."  Am. Compl. ¶ 24 (emphasis added).  Further, the UFAs make clear Plaintiffs provide "transportation to <u>passengers</u>."  UFA § A (emphasis added).  In any event, the law is clear that incidental transportation of passenger luggage or packets is insufficient for the transportation worker exclusion to apply, as it is not Plaintiffs' primary function.  *See Veliz v. Cintas Corp.*, No. C 03-1180 SBA, 2004 WL 2452851, at *5 (N.D. Cal. Apr. 5, 2004) (indicating that a plaintiff only falls under the FAA exemption where his or her "<u>primary function</u> is to deliver [goods] from one state to another.") (emphasis added).

directly transporting goods and do not work in the transportation industry itself are not exempt under Section 1 of the FAA).

The cases cited by Plaintiffs to support their argument that they are exempt from the FAA are inapposite. For example, in *Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004), the defendant was a transportation and delivery company that shipped packages. It employed the plaintiff as a Field Services Supervisor. Her duties included supervising 30 to 35 delivery drivers who both delivered and picked up packages and monitoring the drivers "to ensure timely and efficient delivery of packages." *Id.* at 590. The court found that "[s]uch direct supervision of package shipments makes Palcko's work 'so closely related [to interstate and foreign commerce] as to be in practical effect part of it'" and, therefore, held that she fell under the transportation worker exclusion. *Id.* at 593. (citations omitted). Here, none of Plaintiffs' respective duties involved shipping goods or package shipments across state lines, or supervising anyone who did.

Plaintiffs' citation to the quote in *Am. Postal Workers Union v. U.S. Postal Serv.*, 823 F.2d 466, 473 (11th Cir. 1987), that "[n]umerous courts have limited the exclusion to 'workers actually engaged in interstate commerce,' including bus drivers and truck drivers" (Opp. 14 n.10) is misleading. Not only does that decision predate *Circuit City* but, more importantly, the decision concerned postal workers, not bus drivers -- let alone vans used to transport passengers to and from airports. Further, the case the court in *Am. Postal Workers* cites as support for its statement about bus drivers, *Pietro Scalzitti Co. v. Int'l Union of Operating Eng'rs*, 351 F.2d 576 (7th Cir. 1965), does not make any mention of bus drivers.[6] In sum, Plaintiffs are not

---

[6] Plaintiffs' final assertion that they qualify for the Section 1 exemption because they fall within a self-defined "class" of van drivers (Opp. 17 n.11) is also without merit. To hold that Plaintiffs qualify for the exemption merely because someone else who drives a van may transport goods in the van would be "[t]o apply the term 'transportation workers' in [a way that] stretches it past the breaking point." *Adkins*, 303 F.3d at 505. Taken to its logical

transportation workers subject to the exclusion of Section 1 of the FAA, and, therefore, Plaintiffs' claims are subject to arbitration pursuant to the terms of the UFAs.

Even if this Court were to find that the FAA is inapplicable to Plaintiffs, Maryland law favors arbitration. *See Holmes v. Coverall N. Am., Inc.*, 336 Md. 534, 541, 649 A.2d 365, 368 (1994) (stating the "same policy favoring enforcement of arbitration agreements is present in both" Maryland and federal law). The Maryland Uniform Arbitration Act ("MUAA") codifies this public policy in favor of arbitration and essentially mirrors the language of the FAA except that it does not contain a "transportation worker exclusion." *See* Md. Code Ann., Cts & Jud. Proc. § 3-206; *Dieng v. Coll. Park Hyundai*, No. DKC 2009-0068, 2009 WL 2096076, at *2 (D. Md. July 9, 2009) (noting that the MUAA contains nearly identical language to Section 2 of the FAA). Thus, the UFAs are enforceable agreements that require arbitration under Maryland law.

## III.   THE TERMS OF THE ARBITRATION PROVISION DO NOT PREVENT PLAINTIFFS FROM VINDICATING SUBSTANTIVE RIGHTS.

In a further attempt to avoid having to arbitrate their claims, Plaintiffs assert that the Court should decline to enforce the UFA arbitration provision because it allegedly precludes them from effectively vindicating their statutory rights. Opp. 19-25. It is Plaintiffs' burden to establish such a deprivation of rights. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). The Fourth Circuit has noted that "[t]his burden is a substantial one and cannot be satisfied by a mere listing of ways that the arbitration proceeding will differ from a court proceeding, or by speculation about the difficulties that *might* arise in arbitration." *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 286-87 (4th Cir. 2007) (emphasis in the original). As

---

conclusion, Plaintiffs' proposition would have any employee who uses motorized transportation on their job qualify for the exemption because such vehicles can be used to transport goods. That is not the law.

discussed in detail below, Plaintiffs' speculative arguments about their alleged inability to vindicate their statutory rights fall well short of satisfying this burden.

**A.      The Fee-Splitting Aspect Of The Arbitration Provision Does Not Impose An Undue Hardship On Plaintiffs.**

To establish that an arbitration agreement is unenforceable because it imposes an undue financial hardship, a party cannot rely on mere speculation, but rather must establish with concrete evidence both the costs of arbitration and the corresponding financial hardship imposed. *See, e.g.*, *Cotton Yarn*, 505 F.3d at 285 ("This kind of uninformed speculation about cost falls far short of satisfying the plaintiffs' burden of proving that the costs of proceeding individually against the defendants would be prohibitive . . ."); *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 559 n. 6 (4th Cir. 2001) (stating that plaintiff's conclusory assertion that "arbitration would be significantly more expensive than the costs in federal court" was insufficient to establish financial hardship); *Reid*, 2010 WL 1049613, at *4 (holding that plaintiffs' failed to establish that arbitration of their individual claims would cause financial hardship).  In the instant matter, Plaintiffs fail to carry their burden of establishing that arbitration of their claims would cause them undue financial hardship.

To start, Plaintiffs wildly speculate about the potential costs and fees associated with arbitration without providing any factual evidence to support their averments.  For example, Plaintiffs' assert that they will forced to pay American Arbitration Association  ("AAA") administrative fees, but neglect to mention that, in cases of hardship, the AAA can defer or reduce its administrative fees.  *See* Commercial Arbitration Rules, at Rule R-49, attached to the Reply Declaration of Russell Bruch, at Ex. 1.  Further, Plaintiffs fail to provide any concrete evidence regarding the arbitrator's potential fee[7] or the likely duration of the arbitration.[8]

---

[7] Plaintiffs' assertion that an arbitrator would charge a fee of $800 to $2200 per day (a fee to be split between a

Perhaps most critical, however, is that Plaintiffs fail to establish how much, if any, additional cost they would incur in arbitrating this matter compared to litigating it in court.  In the analogous case of *Dieng*, the plaintiffs failed to provide any evidence as to their respective financial ability to pay the arbitration costs measured against a baseline of their expected costs for litigation.  2009 WL 2096076, at *7.  Instead, the plaintiffs speculated that arbitration would cost "anywhere from $1,500 to $2,000 per day."  *Id.*  The court held that this "kind of uninformed speculation about costs falls far short of satisfying plaintiffs' burden of proving that the costs of proceeding against Defendant would be prohibitive . . ." *Id.; see also Bradford*, 238 F.3d at 556 n. 5 (stating that the inquiry regarding financial hardship "must focus upon a claimant's expected or actual arbitration costs and [her] ability to pay those costs, measured against a baseline of the claimant's expected costs for litigation and his ability to pay those costs."); *Kordize v. Fannie Mae Corp.*, 593 F. Supp. 2d 863, 871 (E.D. Va. 2009) (holding that, "in the end, [plaintiff's] failure to present *any* evidence estimating her cost of litigation delivers the fatal blow to plaintiff's opposition to arbitration here."); *Reid*, 2010 WL 1049613, at *4 (rejecting plaintiffs' unsupported assertions that individual arbitration would be cost-prohibitive); *Gill v. World Inspection Network Int'l, Inc.*, No. 06-CV-3187 (JFB) (MLO), 2006 U.S. Dist. LEXIS 52426, at *25 (E.D.N.Y. July 31, 2006) (holding that "[m]ere conclusory

---

plaintiff and Defendant SEI) to decide their claims (Opp. 21) is speculative.  Plaintiffs provide no evidence that an arbitrator here would charge the same amount as the arbitrators in *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256 (3d. Cir. 2003).  To the extent Plaintiffs claim they need discovery to determine the amount of potential fees, the Fourth Circuit has rejected similar excuses.  *See Adkins*, 303 F.3d at 503 ("Adkins' plea that he could not [provide evidence about the amount of the arbitration fee] because the district court cut off discovery is unconvincing.  It was within his power to obtain this information by simply investigating the option of arbitration in the first place.").

[8] Plaintiffs' unfounded claim that an arbitrator may spend a week on each of their individual claims (Opp. 21) is also wholly speculative.  Plaintiffs' individual claims are straight-forward, do not require expert testimony, and are easily tried in a few days before an arbitrator, who will decide the threshold question of whether they are franchisees/independent contractors or employees.  Contrast that with the extensive trial which would be required if this matter were to proceed on a class, collective or mass basis in court.

assertions that costs associated with arbitration would be excessive do not alone render an arbitration agreement unenforceable").

Plaintiffs' sparse "evidence" about their past earnings also cannot establish undue hardship.[9]  As the courts have made clear, the question is not how much a litigant earned in the past, but, instead whether the litigant can presently or with future effort advance the cost of arbitration.  *See Bradford*, 238 F.3d at 556 (noting that plaintiffs must demonstrate a lack of "ability" to advance the arbitration costs); *Kordize*, 593 F. Supp. 2d at 869-70 ("plaintiff nonetheless fails to demonstrate her own *inability* to pay for such costs because she merely establishes that she does not *currently have the resources* to pay for arbitration, and not that she is *incapable* of doing so.") (emphasis added).  Here, while Plaintiffs provide some information about earnings in 2009, they provide no information regarding their financial savings or assets, current financial status or ability to generate income.  *See Adkins*, 303 F.3d at 503 (holding that plaintiffs failed to carry their burden regarding alleged financial hardship where they made "no showing of the specific financial status of any of the plaintiffs at the time this action was brought."); *see also Reid*, 2010 WL 1049613, at *4 (concluding that a 2008 annual Income Statement from a driver franchisee of SuperShuttle was not "probative" of plaintiffs' claim that they were currently unable to finance individual litigation).  Consequently, Plaintiffs should be compelled to arbitration because they have not established that the cost of arbitration would prevent them from effectively vindicating their statutory rights.[10]

---

[9] Plaintiffs' conclusory claim in their cookie-cutter Declarations that they are "unable to pursue [their] claims in arbitration" (Dkt. Nos. 32-1, 32-3, 32-5) are wholly insufficient to establish undue hardship.  *See, e.g., Brown v. Herron*, Civ. AW-08-2696, 2009 WL 2366131, at *3 (D.Md. July 28, 2009) (specifically rejecting plaintiff's argument that a "statement, unsupported by factual allegations, is enough to defeat a Motion to Dismiss pursuant to Rule 12(b)(6).").

[10] Plaintiffs also assert that their individual claims are only worth "a few thousand dollars."  Opp. 21.  However, this assertion is inconsistent with statements of the analogous plaintiffs in *Reid*, who alleged that their individual claims could be worth $300,000.  *Reid*, 2010 WL 1049631, at *3.  Regardless, here, Plaintiffs have failed to carry their burden regarding financial hardship, in part, because they provide no "basis for a serious estimatation of how much

B.      **The Class And Collective Actions Waiver Is Enforceable.**

The Fourth Circuit has consistently enforced class and collective action waivers

contained in arbitration agreements.  *See, e.g., Adkins*, 303 F.3d at 503 ("Adkins points to no

suggestion in the text, legislative history, or purpose of the FLSA that Congress intended to

confer a nonwaivable right to a class action under that statute.  His inability to bring a class

action, therefore, cannot by itself suffice to defeat the strong congressional preference for an

arbitral forum."); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002)

(rejecting argument that arbitration agreement was unenforceable due to inability to bring class

action, after noting that the FLSA did not specifically note a nonwaivable right to a class action).

Plaintiffs do not successfully distinguish this controlling Fourth Circuit precedent, and, instead,

assert in conclusory fashion that they have no "realistic alternative" to a class action because the

alleged recovery for each Plaintiff will be small.[11]  Opp. 23.  As discussed above, Plaintiffs' have

not carried their burden of establishing financial hardship or provided facts to confirm that any

individual recovery would be small.  *See, supra at* 12-14.  Accordingly, this failure "renders

[their] further complaint about the inability to bring a class action moot."  *Adkins*, 303 F.3d at

503; *see also Reid*, 2010 WL 1049613, at *4 (holding that plaintiffs failed to establish that

individual litigation would be cost-prohibitive and that their inability to bring a class action

would grant defendants "de facto immunity.").  Moreover, the prohibition on class and collective

actions does not preclude Plaintiffs from pursuing their claims, it simply requires Plaintiffs to

---

money is at stake for each individual plaintiff."  *Adkins*, 303 F.2d at 503.

[11] Plaintiffs' reliance on *Kristian v. Comcast Cable Holdings, LLC*, 446 F.3d 25 (1st Cir. 2006) is misplaced.  Unlike the instant dispute, *Kristian* involved cable subscribers bringing complex, antitrust claims where there was evidence that "competent attorneys would be required to expend several million dollars of attorneys' time and hundreds of thousands of dollars in expenses, including expert witness fees" to recover "a few hundred dollars to a few thousand dollars at most."  *Id.* at 58.  There simply is no evidence that the instant matter is similarly complex, costly, or will yield the limited recovery in *Kristian*.  Furthermore, the court in *Kristian* simply severed the unconscionable provisions in the arbitration agreement and still compelled the parties to arbitration.  *Id.* at 64.

pursue them on an individual basis, which they have not demonstrated is prohibitive.  Thus,

Plaintiffs are not being deprived of any substantive right.

### C. The Requirement That The Rules And Procedures Of The AAA Govern Any Arbitration Between The Parties Is Not Unconscionable.

"Unconscionability is a narrow doctrine whereby the challenged contract must be one

which no reasonable person would enter into, and the 'inequality must be so gross as to shock the

conscience.'"  *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 305 (4th Cir. 2001)

(*quoting L & E Corp. v. Days Inns of Am., Inc.*, 992 F.2d 55, 59 (4th Cir. 1993)).  While

Plaintiffs conclusorily assert that it would be unconscionable to have an arbitration governed by

the AAA's commercial rules and procedures (Opp. 32), they wholly fail to articulate a factual

basis to support their assertion that these neutral rules and procedures are "one-sided," let alone

establish that the application of these rules and procedures would create an inequality that shocks

the conscience.[12]  Consequently, Plaintiffs' unsupported argument regarding unconscionability

of the AAA's commercial rules and procedures must fail.

### IV. PLAINTIFFS' ASSERTION THAT THE UFA AS A WHOLE IS UNCONSCIONABLE IS AN ISSUE FOR THE ARBITRATOR AND NOT THE COURT.

Plaintiffs also make several arguments about the alleged unconscionability of the UFAs

as a whole.  Specifically, Plaintiffs challenge the UFAs' statute of limitations provision, § 15(I);

nonwaiver provision, § 15(F); damages provision, § 15(H); and the alleged procedural

unconscionability of the UFAs.  Opp. 25-33.  However, while "[p]rinciples of equity may

counsel for invalidation of an arbitration agreement if the grounds for revocation relate

specifically to the arbitration clause," where, as here, the party opposing arbitration alleges

---

[12] The UFAs are commercial agreements concerning franchisees, not employees.  Thus it is reasonable for the arbitration provision in the UFAs to mandate that the AAA commercial rules and procedures apply.  This reasonableness is apparent in that Plaintiffs' Maryland Franchise Law claims are <u>commercial</u> disputes over franchise

"unconscionability of the contract generally, these issues are determined *by an arbitrator* because the dispute pertains to the formation of the entire contract, rather than the arbitration agreement."  *Sydnor*, 252 F.3d at 305 (emphasis added); *see also Rent-a-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) (stating that only challenges to the agreement to arbitrate, and not challenges to the contract as a whole, are relevant to a court's determination whether the arbitration agreement at issue is enforceable); *JTH Tax, Inc. v. Lee*, No 2:06cv486, 2007 WL 1795751, at *4 (E.D. Va. June 19, 2007) (holding that plaintiffs' assertion that the franchise agreement is unconscionable was an issue for arbitration).  Thus, Plaintiffs' challenges to provisions in the UFAs, other than the arbitration provision, are issues for the arbitrator, and not this Court, to decide.  However, should the Court decide that it may rule on whether certain provisions of the UFAs (other than the arbitration provision) are unconscionable, the Court should find that these assertions are without merit.

A.      **The One-Year Limitations Period On Bringing Claims Does Not Deprive Plaintiffs Of Their Substantive Rights.**

In asserting that the one-year limitations period in the UFAs is unconscionable, Plaintiffs once again ignore directly controlling Fourth Circuit precedent that parties can establish a shorter statute of limitations by contract.  *See Cotton Yarn*, 505 F.3d at 288, 287-89 (stating that "statutory limitations periods may be shorted by agreement," and holding that the "one-year limitations period established in the arbitration agreements is reasonable" because it does not "dispossess plaintiffs of the substantive rights established by the statute under which their claims arose.").  As in this case, the plaintiffs in *Cotton Yarn* asserted that a one-year limitations period was unreasonable because it could "substantially reduce the amount of damages recoverable." *Id.* at 290.  The Fourth Circuit rejected this contention, stating that:

---

fees.

> We have explained that the crucial inquiry when considering a claim that an arbitration agreement prevents a plaintiff from vindicating his statutory rights is whether the particular claimant has an adequate and accessible substitute forum in which to resolve his statutory rights. . . .Given our conclusion that the Clayton Act's four-year limitation period does not create substantive, non-waivable rights…we cannot conclude that the arbitral forum is inadequate or inaccessible merely because the plaintiff may recover a lesser quantum of damages than he might have in a judicial forum.

*Id.* (citation and quotations omitted); *see also Dieng,* 2009 WL 2096076, at **7-8 (rejecting Plaintiffs' argument that "the 60/180 day limitations period prescribed by the agreement is unreasonably short because it is a drastic reduction from the otherwise applicable two and three year statutory limitation periods"); *Myers v. Western-Southern Life Ins. Co.*, 849 F.2d 259, 262 (6th Cir. 1988) (upholding a six-month limitations period on an employment claim).[13]  As in *Cotton Yarn*, the one-year limitations period in the UFAs does not prevent Plaintiffs' from asserting their substantive right to bring claims under the FLSA or MWHL; it merely limits the time period during which they needed to bring a claim.  As *Cotton Yarn* makes clear, such a limitation is not unconscionable.[14]

Plaintiffs next claim that the one-year limitations period would bar Plaintiff Muriithi from bringing claims under the Maryland Franchise Law because the alleged misrepresentations and omissions as to him took place in 2007.  Opp. 35 n. 23.  However, this argument has also been rejected by the Fourth Circuit Court of Appeals.  In *Cotton Yarn*, the court noted that where a

---

[13] Plaintiffs' reliance on Ninth Circuit cases is inapposite as these decisions are not binding on this Court and are at odds with controlling Fourth Circuit precedent.  Further, Plaintiffs' assertion about being deprived of asserting a continuing violation theory is a red herring as the continuing violation theory does not apply to their claims.  *See, e.g., Higgins v. Food Lion, Inc.*, No. CIV. A. AW00CV2617, 2001 WL 77696, at *2 (D. Md. Jan 23, 2001) (Williams, J.) (noting that under the FLSA a plaintiff can only recover wages and overtime that were owed within the three-year period prior to filing suit); *Rumpz v. Am. Drilling & Testing, Inc.*, No. 09-10971, 2009 WL 3464826, at *3 (E.D. Mich. Oct. 23, 2009) (holding that the continuing violation theory did not apply to plaintiff's FLSA claim); *Cline v. S. Star Ctr. Gas Pipeline, Inc.*, 356 F. Supp. 2d 1203, 1214-15 (D. Kan. 2005) (holding that the continuing violation theory did not apply to plaintiff's fraud claim).

[14] Plaintiffs' assertion that the one-year limitation period is essentially seeking to have them waive their right to be paid minimum wage is nonsensical: a limitation period is a restriction on the <u>time</u> one can bring a claim, not a restriction on the <u>right</u> to be paid the minimum wage.

contract establishes a reasonable limitations period, allowing a time-barred plaintiff to defeat the agreement would improperly "give plaintiffs a back-door escape from the effects of their agreement . . ." 505 F.3d at 290.  Accordingly, under *Cotton Yarn*, Plaintiff Muriithi's decision to sit on his rights does not allow him to escape his agreement to arbitrate.[15]

### B.     The Nonwaiver Provision In The UFAs Is Not Unconscionable.

Plaintiffs' argument that the UFAs are unenforceable because they contain illusory promises (Opp. 31) is nonsensical.  Plaintiffs' argument seems to be based on language in the UFAs allowing Defendant SEI "to waive obligations of Franchisee . . ." UFA at § 15(F).  The argument then seems to be that because SEI can decide to waive <u>its</u> obligations it really promised nothing in the agreement.  However, this provision only allows SEI to waive <u>Plaintiffs'</u> (the <u>Franchisees') obligations</u>, and not its own obligations under the UFA.  *Id.*  Accordingly, this provision does not create an unconscionable advantage for SEI, and, quite the opposite, creates an advantage for Plaintiffs.

*Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (Md. 2003), is distinguishable: the defendant there had the unilateral right to revoke its obligation to arbitrate at any time.  *Id.* at 149, 835 A.2d at 662.  SEI has no comparable right under the UFAs.  Accordingly, Plaintiffs have failed to establish that any promises in the UFAs are illusory.

### C.     The Limitation On Damages (Moot Here) Is Enforceable.

Should this Court rule on Plaintiffs' argument regarding the provision in the UFA limiting damages -- and it should not (*see, supra,* at 16-17) -- Plaintiffs' allegation that their

---

[15] This argument only applies to Plaintiff Muriithi as Plaintiff Gadson avers that the alleged misrepresentations and omissions were made to him in May 2009, and thus the one-year statute of limitation does not prevent him from bringing a Maryland Franchise Law claim as alleged.  Opp. at 35.  Plaintiff Enajekpo's Franchise Law claim is barred in any event by the statute's own three-year limitations period.  *See* Dkt. No. 28, at 20.  Plaintiffs' assertion that they need more discovery to determine when this claim began to run (Opp. 40) is disingenuous as Plaintiff Enajekpo avers that he signed the UFA in August 2005 (Am. Compl. at ¶ 19) and the statute is clear that a civil action "must be brought within 3 years after the grant of the franchise."  Maryland Franchise Law, Md. Code § 14-

claims are worth only a "few thousand dollars per person" (Opp. 21) defeats their own argument.

Specifically, the UFA restricts SEI's liability to the amount of the fees Plaintiffs paid to SEI.

UFA at § 15(H).  For Plaintiff Gadson alone those fees are at least $35,000 -- well more than his

alleged claim.  *See* UFA at § 1(B) (noting that Plaintiff Gadson paid SEI $35,000 as an initial

franchise fee).  Accordingly, Plaintiffs' alleged damages are not limited.[16]

### D.      **Plaintiffs Have Not Established Procedural Unconscionability.**

Plaintiffs' claim that Defendants fraudulently induced them into signing the UFAs is not

only appropriate for resolution in arbitration (*see JTH Tax*, 2007 WL 1795751, at *6 (noting that

"the language and policies of the FAA require that a party's claim that it was fraudulently

induced to enter into a contract be resolved in arbitration")), but also belied by the uncontested

facts.  Plaintiffs do not allege that the UFAs themselves contain any misrepresentations or fail to

disclose all the fees they would be required to pay.  Nor could they as the UFAs expressly set

forth all the fees and payments required of the Plaintiffs.  *See* UFA at §7.  Accordingly, the only

way that Plaintiffs could not have been aware of these fees and costs is if they failed to read the

UFA they willingly executed, and Plaintiffs do not allege that Defendants precluded them from

reading the UFAs.  *See* Dkt. No. 32-3 at ¶¶ 3-4; Dkt. No. 32-1, at ¶¶3-4; Dkt. No. 32-5 at ¶¶ 2-4.

The UFAs were signed after a one-week trial period (Am. Compl. at ¶ 21) and, in executing the

UFAs, Plaintiffs acknowledged that they: (1) read the UFA; (2) conducted an independent

investigation of the business and consulted with such professional advisors as they deemed

necessary; (3) agreed that they did not rely on any promise concerning potential revenues or

---

227.  Plaintiffs provide no authority on why equitable tolling is appropriate in this situation.

[16] Courts routinely sever unconscionable damage provisions and compel arbitration, where, as here, the contract contains a severability provision.  *See* UFA at §15(J); s*ee also Kristian*, 446 F.3d at 49; *Hadnot v. Bay, LTD.*, 344 F.3d 474, 478 (5th Cir. 2003); *James C. Justice Cos. v. Deere & Co.*, No. 5:06-cv-00287, 2008 WL 828923, at *4 (S.D. W.Va. Mar. 27, 2008).  Thus, if the Court found the UFA's limitation on damages unconscionable, it could sever or modify this clause and still compel Plaintiffs to arbitration.

profits; and (4) confirmed that no prior representations were contrary to the terms of the UFA. *See* UFA at § 16.  A party's failure to read a contract is not an excuse to invalidate the agreement.  *See, e.g., Mercury Coal & Coke, Inc. v. Mannesmann Pipe & Steel Corp.*, 696 F.2d 315, 318 (4th Cir. 1982) (holding that failure to read contract does not invalidate contract term); *Costar Realty Info., Inc., v. Field*, 612 F. Supp. 2d 660, 669 (D. Md. 2009) (Williams, J.) ("[F]ailure to read an enforceable online agreement, as with any binding contract, will not excuse compliance with its terms.") (internal citations and quotations omitted); *Hartford Fire Ins. Co. v. Pettinaro Constr. Co.*, 820 F. Supp. 154, 159 (D. Del. 1993) (finding unpersuasive a party's contention that it was not bound by a contract because it failed to read and appreciate the nature of the agreement).

Further, Plaintiffs' assertion that the arbitration provision was somehow hidden in the UFA is contradicted by the fact that the provision is clearly identified in the UFA's table of contents and is a separate and distinct provision of the UFA clearly entitled "Arbitration; Attorney's Fees."  *See* UFA at § 15(G).  Consequently, Plaintiffs' argument regarding procedural unconscionability fails.

  **E.**  **Should The Court Find Any Provision In The UFAs Unconscionable, It Should Modify Or Sever This Provision And Still Compel Arbitration.**

The UFAs each contain a severability clause stating that if any provision of the UFA is found to be invalid or unenforceable, the UFA shall be construed and enforced as if the provision was modified in scope or not included in the agreement.  *See* UFA at § 15(J).  Accordingly, should the Court find that any provision of the UFA is unconscionable, it should follow well-established precedent and sever or modify the offending provision and compel arbitration, rather

than invalidate the entire UFA.  *See Cotton Yarn*, 505 F.3d at 292 (collecting cases where circuit

courts have severed unconscionable provisions and compelled arbitration).[17]

## V.  PLAINTIFFS' GENERAL, CONCLUSORY AND NONSPECIFIC ALLEGATIONS OF FRAUD CANNOT SURVIVE THE MOTION TO DISMISS.

Plaintiffs have not sufficiently pled enough facts to establish claims for both fraudulent

misrepresentations and omissions under the Maryland Franchise Law.  First, with regard to their

allegations concerning misrepresentation, Plaintiffs ignore and do not even attempt to meet the

requirement that a misrepresentation claim must identify the person making the

misrepresentation, the specific content of the misrepresentation, and what the individual making

the misrepresentation gained by the misrepresentation.  *See Harrsion v. Westinghouse Savannah*

*River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999) (stating that plaintiffs must plead with

particularity under Rule 9(b) "the time, place, and contents of the false representations, as well as

the identity of the person making the misrepresentation and what he obtained thereby.") (citation

omitted).  With respect to identifying the person who made the misrepresentation, Plaintiffs'

vague reference to unnamed "representatives" of one or more of the seven alleged Defendants

(Opp. 35) is clearly not sufficient, and requires the dismissal of this claim as a matter of law.

As to the "specific content" of the alleged misrepresentations, Plaintiffs do not even

allege any affirmative statement but, instead, assert that Defendants omitted to tell Plaintiffs

about certain fees.  However, for an omission to give rise to liability under the Maryland

Franchise Law, the omission must be one of material fact and it must cause an affirmative

statement to be misleading.  *See* Md. Code Ann. § 14-227(a)(1)(ii).  Because Plaintiffs do not

---

[17] The cases Plaintiffs cite where courts have refused to sever unconscionable provisions are inapposite because, here, any unconscionability would not "permeate" the UFAs.  Opp. 33, *citing Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006) ("The only portion of the arbitration provision that may yet be viable is the fee-splitting clause."); *Alexander*, 341 F.3d at 271 (noting the general rule that "you don't cut down the trunk of a tree because some of its branches are sickly" but finding in this particular instance that the unconscionability was so draconian and pervasive that the sickness had "infected the trunk.") (citation omitted).

plead with the requisite particularity what alleged misrepresentations are misleading, their omission claim must fail.  Plaintiffs also do not identify what fees are at issue.  Instead, Plaintiffs merely aver that "various costs, fees, etc., related to the franchise" were omitted.  Am. Compl. at ¶ 60.  Putting aside the question of how there could possibly be any omission when the economic terms of the franchise agreement are fully spelled out in the UFAs,[18] Defendants are thus left to play a guessing game as to the nature and scope of Plaintiffs' claim that Defendants omitted to disclose fees associated with the franchise.  *See Zeno v. Chevy Chase Bank*, No. PJM 08-2236, 2009 WL 4738077, at *2 (D. Md. Dec. 4, 2009) (granting motion to dismiss and stating that it is "a clearly unacceptable state of affairs" where "Defendants are left to guess" at the nature of the claim); *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007) (holding that if plaintiffs had specific omissions in mind, they must state them with sufficient particularity).  As Plaintiffs' claims under the Maryland Franchise Law are insufficiently plead, they should be dismissed.

---

[18] Given the clear and unambiguous language in the UFAs spelling out all the fees that Plaintiffs are or were responsible for paying, Plaintiffs cannot establish reasonable reliance on any alleged misrepresentations as a matter of law.  *See, e.g. Benson v. Candor Mortg. Corp.*, Civil. No. L-10-481, 2010 WL 1741379 (D. Md. Apr. 27, 2010) (granting motion to dismiss fraudulent misrepresentation claim after concluding that plaintiff's reliance on alleged misrepresentations was unreasonable in light of the express terms of loan agreement that he signed); *see also McDonald v. Friedman*, No. RDB-02-2812, 2004 WL 3397805 (D. Md. Feb. 3, 2004) (holding that franchisee's reliance on alleged misrepresentations by franchisor contradicted by express terms of franchise was unreasonable); *Wooton Enters., Inc. v. Subaru of Am., Inc.*, 134 F. Supp. 2d 698 (D. Md. 2001) (franchisee's reliance on alleged misrepresentations by franchisor was unreasonable as a matter of law given that the parties subsequently signed a franchise agreement which made no reference to the alleged fraudulent statements); *Motor Bagels, L.L.C. v. Am. Bagle Co.*, 50 F. Supp. 460 (D. Md. 1999) (holding that franchisee's reliance on alleged misrepresentations concerning the average annual store sales of its franchises was unreasonable as a matter of law where franchisee signed franchise agreement containing unambiguous integration clauses disavowing previous contrary statements and not containing the alleged sales misrepresentations).

## VI.    SSI, SFC, VEOLIA AND VEOLIA ENVIRONMENT SHOULD BE DISMISSED.[19]

It is well-established that a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Accordingly, in determining the sufficiency of complaints on a motion to dismiss, a court should 'identify [] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950; *see also Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (a "plaintiff armed with nothing more than conclusions" should not survive a motion to dismiss).  Here, Defendants SSI, SFC, Veolia and Veolia Environment should be dismissed because Plaintiffs' Amended Complaint fails to allege <u>any</u> facts indicating that these entities are parties to the UFAs or employ/employed Plaintiffs.

Plaintiffs simply are incorrect that an allegation of a parent-subsidiary relationship between defendants is sufficient to establish that SSI, SFC, Veolia and Veolia Environment all "employed" Plaintiffs.  To the contrary, to sufficiently plead joint liability, there must be *facts* that the parent controlled the terms and conditions of employment at its subsidiary on a regular basis. *See Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 875 (D. Md. 2000) ("The mere fact of a parent-subsidiary relationship between co-defendants is not sufficient as a matter of law, to impute liability to the parent for the alleged discriminatory actions of its subsidiary"); *Wauben v. Protego (USA), Inc.*,  No. 05-2780-PMD-RSC, 2007 WL 775614, at *13 (D.S.C. March 9, 2007) ("In view of the strong policy against disregarding corporate forms in imposing

---

[19] Plaintiffs do not address Defendants' argument that the non-existent SEC should be dismissed for lack of personal jurisdiction.  *See* Dkt. No. 28, at 22 n.12.  Therefore, Plaintiffs concede this argument and SEC should be dismissed, with costs to Defendants.  *Lewis v. Potter*, No. DKC 2008-2249, 2009 WL 2168969, at *2 (D. Md. July 17, 2009) (holding that plaintiff conceded arguments in defendant's motion to dismiss to which it did not respond); *CompuSpa v. Int'l Bus. Machs., Corp.*, 228 F. Supp. 2d 613, 620 (D. Md. 2002) ("[B]y ignoring Defendant's argument regarding this alleged breach, Plaintiff appears to concede that it has failed to state a claim for this allegation.").

liability, there must be much more than common ownership of entities to establish liability."). No such facts are alleged here.[20]

As to Plaintiffs' request for discovery to establish a joint-employer relationship, Plaintiffs present no evidence beyond speculation that discovery may indicate that these four Defendants had the requisite control over Defendant SEI and, in turn, Plaintiffs.  Accordingly, the Court should deny Plaintiffs' obvious request for a fishing expedition, and dismiss all claims against SSI, SFC, Veolia and Veolia Environment.  *See DePhillips v. United States,* No. 8:09-cv-00905, 2009 WL 4505877, at *6 (D. Md. Nov. 24, 2009) (noting a party cannot oppose a motion to dismiss for lack of subject matter jurisdiction by conducting a "fishing expedition"); *Parkman v. Elam,* No. 3:08-cv-690, 2009 WL 736067, at *4 n.7 (E.D. Va. Mar. 17, 2009) (rejecting the plaintiffs' argument that discovery was needed to plead their claim with more specificity and stating that "federal courts are not to countenance 'fishing expeditions' on bare allegations of fraud.") (citations omitted).

## CONCLUSION

For the foregoing reasons and those set forth in Defendants' moving papers, Defendants respectfully request that their Motion be granted in its entirety.

Dated: August 9, 2010                    Respectfully submitted,

                                         MORGAN, LEWIS & BOCKIUS LLP

                                         By:  /s/ Russell R. Bruch
                                         Russell R. Bruch, Esq. (Bar No. 17108)

---

[20] Plaintiffs' conclusory allegation that SSI, SFC, Veolia and Veolia Environment are joint employers is also insufficient to plead a violation of the Maryland Franchise Law because, for a misrepresentation claim, conclusory allegations that one defendant controlled another, or that defendants are guilty by association, are insufficient under Federal Rule of Civil Procedure 9(b).  *See Harmon v. Bankunited,* No. WDQ-08-3456, 2009 WL 3487808, at *2 (D. Md. Oct. 22, 2009) ("When a complaint alleges fraud against multiple defendants, Rule 9(b) requires that the plaintiff identify each defendant's participation in the alleged fraud.").

Christopher A. Parlo, Esq.  *(admitted pro hac vice)*
Melissa C. Rodriguez, Esq.  *(admitted pro hac vice)*
Leni D. Battaglia, Esq.  *(admitted pro hac vice)*

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on August 9, 2010, I caused to be served by ECF a copy of the foregoing Defendants' Reply Memorandum of Law in Further Support of Their Motion to Compel Arbitration and To Dismiss the First Amended Complaint, on the following counsel for Plaintiffs:

Molly A. Elkin
Gregory McGillivary
David Rickseeker
Diana Nobile
Woodley & McGillivary
1101 Vermont Ave., NW
Suite 1000
Washington, DC 20005

Laura Brown
Arthur Rogers
DC Employment Justice Center
727 15th St. NW, 2nd Floor
Washington, DC 20005

/s/ Russell R. Bruch
Russell R. Bruch