IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| KEVIN A. GADSON, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| vs. | * | Civil Action No. 10-cv-01057-AW |
| | * | |
| SUPERSHUTTLE | * | |
| INTERNATIONAL., *et al,* | * | |
| | * | |
| Defendants. | * | |
| | * | |

**************************************************************************

## MEMORANDUM OPINION

On April 28, 2010, Plaintiffs Kevin G. Gadson, Okierieta O. Enajekpo, Samuel D. Muriithi, and on behalf of themselves and all others similarly situated (collectively, the "Plaintiffs") brought the instant action against Defendants SuperShuttle International, Inc., Shuttle Express Corp., Veolia Transportation, Inc., and Veolia Environment SA. Subsequently, Plaintiffs filed an Amended Complaint on June 3, 2010, against SuperShuttle International, Inc. ("SSI"), Shuttle Express Corp. ("SEC"), Shuttle Express, Inc. ("SEI"), SuperShuttle Franchise Corporation ("SFC") (collectively, "SuperShuttle"), Veolia Transportation, Inc. ("Veolia"), and Veolia Environment North America Operations LLC ("Veolia Environment") (collectively, "Veolia") (SuperShuttle and Veolia, collectively, "Defendants"). Pending before the Court is Defendants' Motion to Compel Arbitration and Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. No. 27). The Court reviewed the record in this case and deems that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons articulated below, the Court **DENIES** the Motion to Compel Arbitration and **DENIES-in-PART** and **GRANTS- in-PART**

the Motion to Dismiss by Defendants.

I.  FACTUAL & PROCEDURAL BACKGROUND

The Plaintiffs are employees or former employees of the Defendants and bring a collective action in accordance with 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FSLA") against Defendants on behalf of themselves and all others similarly situated because of Defendants' alleged unlawful deprivation of Plaintiffs' right to proper compensation. Plaintiffs are current and former shuttle van drivers, employed by Defendants to transport airline passengers to and from the Baltimore-Washington International ("BWI") Airport. Plaintiffs each entered into a Unit Franchisee Agreement ("UFA") with Defendants. Prior to entering into the UFAs, Defendants arranged for trial periods in which Plaintiffs operated a SuperShuttle van in order to allegedly demonstrate the potential income they could earn. According to the Plaintiffs, during these trials, Defendants did not withhold the numerous costs and fees that are withheld once the trials are over and the UFAs are signed.

Plaintiffs allege that in failing to withhold such fees, Defendants provided misleading information and induced Plaintiffs into signing the UFAs. Once the trial periods completed, and the drivers began normal operation of their shuttle vans, Plaintiffs assert that they earned significantly less. Plaintiffs contend that they consistently worked over 40 hours in each work week, but as a result of Defendants' misclassification of primary drivers as "independent contractors" and/or "franchisees," Defendants failed to record the actual hours worked by Plaintiffs and similarly situated primary drivers. Plaintiffs assert that once fees and costs were withheld, they were getting paid neither the minimum wage nor overtime due under the law.

In support of their claim that Defendants improperly classified them as franchisees rather

than employees, Plaintiffs point to the following working arrangements between the Parties. Defendants retain and operate extensive control over the work of the primary drivers, operating the shuttle service using an integrated network of communication implemented through a centralized dispatch system. Defendants assign customers and determine the time and locations for drop off and pick up of passengers, designate the geographical area where the drivers may work, employ dispatchers, customer service representatives, and other managerial employees at their dispatch facility who have supervisory responsibility over the primary drivers. Moreover, Defendants unilaterally control and limit the compensation paid to primary drivers, set the prices charged to customers, and prohibit drivers from offering special rates or discounts. Defendants are able to withhold fees for operating and insuring the requisite equipment and control all advertisement and promotions. Lastly, under the UFAs, Defendants retain the ability to terminate drivers for numerous reasons, such as traffic violations.

Plaintiffs allege that Defendants' classification and treatment of Plaintiffs as "independent contractors" and/or "franchisees" rather than as "employees" is, and during all material times, has been, unlawful. Thus, Plaintiffs have brought suit against the Defendants as a result of Defendants' failure to properly classify them as employees. As a result Defendants' purportedly unlawful conduct, Plaintiffs claim that Defendants have violated the Fair Labor Standards Act ("FSLA"), Maryland Wage and Hour Law, and the Maryland Franchise Law.

In response to Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(6) and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), Defendants move to dismiss Plaintiffs' Complaint or, in the alternative, move to stay the Complaint and have the Plaintiffs ordered to submit to arbitration in accordance with the UFA's arbitration provisions.

Defendants claim that Plaintiffs are current or former franchisees of SEI, not employees. As franchisees, Plaintiffs lease(d) or purchase(d) vans to transport customers, for a fee, to and from BWI Airport and the surrounding areas. Defendants argue that in order to become franchisees, Plaintiffs voluntarily entered into UFAs with SEI setting forth the terms of their independent contractor relationships as franchisees. Under the UFA terms, no franchisee has an employment relationship with SEI. Additionally, each of the UFAs contains an arbitration provision whereby each Plaintiff agreed to arbitrate any and all claims arising out of their UFAs. Moreover, Defendants argue, that in entering into the UFA, Plaintiffs voluntarily agreed to waive participation in any class action. Defendants also contend that Plaintiffs' claims should be dismissed to the extent that they are untimely under the one-year statute of limitations period contained in the UFAs.

Alternatively, Defendants seek the dismissal of Plaintiff Enajekpo's Maryland Franchise Law claim, arguing that Enajekpo's claim is time barred by the three-year statute of limitations under that Law. Additionally, Defendants contend that Plaintiffs' claims should be dismissed because their averments concerning alleged misrepresentations are not pled with the requisite particularity. Finally, Defendants seek to dismiss the improperly named Defendants in this case.

## II. ANALYSIS

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("the Act"), 9 U.S.C. § 1 *et seq.*, enunciates a strong "federal policy favoring arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), requiring courts to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Consequently, "the Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration...." *Moses H. Cone Hosp.*, 460 U.S. at 24-25. It "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218. However, the Act provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable," but only upon such grounds as exist in law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2 (1988).

In the Fourth Circuit, in considering a motion to compel, a litigant can compel arbitration under the FAA if she can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute. *Poteat v. Rich Products Corp.,* 91 F. App'x. 832, 834 (4th Cir. 2004) (*citing Adkins*, 303 F.3d at 500-01). Agreements to arbitrate are construed according to ordinary rules of contract interpretation, as augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,* 252 F.3d 707, 710 (4th Cir.2001). "The prevailing view is that both procedural and substantive unconscionability must be present in order for a court to invalidate a contractual term as unconscionable . . . ("gross inequality of bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion, or may show that the weaker party had no meaningful choice, no real alternative, or did not in fact assent or appear to assent to the unfair terms."). *Freedman v. Comcast Corp*, 190 Md.App. 179, 208 (2010)

Here, Plaintiffs bring three primary challenges to the arbitration agreement. First, Plaintiffs argue that the arbitration clause does not cover the claims pled in the complaint

because the plain language of the UFA arbitration provision applies to commercial claims–*i.e.*, only claims involving a franchisee/franchisor relationship.  Since Plaintiffs assert they are in fact *employees* rather than franchisees of the Defendants, they claim that their disputes are outside the bounds of the commercial disputes addressed in the arbitration clause.  Second, Plaintiffs argue that they are exempt from the application of the FAA because they are "transportation workers engaged in interstate commerce." 9 U.S.C. § 1.  Finally, the Plaintiffs argue that the UFAs are neither valid nor enforceable because they are unconscionable due to various ways in which the arbitration agreements contracted around or limited Plaintiffs' statutory rights.

1. **There is an existing dispute between the Parties and Plaintiffs Refuse to Arbitrate the dispute.**

It is clear to the Court that: (1) a dispute exists between Plaintiffs and the Defendants regarding the issues that arguably arise under the UFA and; (2) Plaintiffs have refused to pursue their claims in arbitration and contest the enforceability of the arbitration clause with this Court.

2. **The UFA's Arbitration Provision Covers The Dispute**

"The question of whether the parties have submitted a particular dispute to arbitration. . . is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (internal citations omitted).   Here, the arbitration provision states :

> Except as provided below, **any controversy arising out of this Agreement** shall be submitted to the American Arbitration Association at its offices in or nearest to Baltimore, Maryland, for final and binding arbitration in according with its commercial rules and procedures which are in effect at the time the arbitration is filed. (Doc. No. 32, at 15) (emphasis added).

Plaintiffs argue that the plain language of this provision does not apply to the Plaintiffs' claims as they are employment disputes, but rather, it should only be applied to commercial

claims. The Court disagrees with this reading. The express language of the arbitration provision states "any controversy arising out of…," and <u>not</u> any *commercial dispute arising out of,* as the Plaintiffs' strained interpretation suggests.

Moreover, if the crux of the dispute between the Parties is whether the Plaintiffs are employees or independent contractors as the Plaintiffs suggest, then such claims indisputably arise out of provisions of the UFAs. The UFAs provide the defining terms controlling the relationship between Plaintiffs and SEI. The classification as to whether Plaintiffs were employees or franchisees occurred through the UFAs, which specifically provide that Plaintiffs are independent contractors who independently own and have full control over their franchises. *See* UFAs at § 15(N)(1-2). Thus, Plaintiffs' allegations of any misclassification arise directly out of the UFAs. *See Reid v. SuperShuttle Int'l, Inc.*, No. 08-cv-4854 (JG)(VVP), 2010 WL 1049613, at *6 (E.D.N.Y. Mar. 22, 2010) (holding that the Plaintiffs' FLSA misclassification claims arose out the UFAs thus compelling the Plaintiffs to submit their claims to arbitration).

Additionally, it appears to the Court that Plaintiffs' Maryland Franchise Law claims also arise out of the franchisor/franchisee relationship created and governed by the UFAs. Specifically, Plaintiffs' Franchise Law claims are based on Plaintiffs' allegation that Defendants misrepresented and/or failed to disclose that, as part of their franchise agreement, Plaintiffs would be responsible for the payment of various fees and costs. *See* Am. Compl. at ¶ 61. All of those fees and costs are spelled out in the UFAs. *See* UFA at §§ 1, 2, 7. Accordingly, all of Plaintiffs' state law claims also arise out of the UFAs.

3. **The exclusionary clause of § 1 of the Arbitration Act**

FAA states that "[n]othing herein shall apply to contracts of employment of seaman, railroad employees, or any other workers engaged in foreign or interstate commerce." 9 U.S.C. §

1. In *Circuit City Stores, Inc. v. Adams*, the Supreme Court held that FAA provision did not exclude all employment contracts, but rather exempted from FAA only contracts of employment of transportation workers. 532 U.S. 105, 112 (2001). However, the Court went on to say that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers '*actually engaged in the movement of goods in interstate commerce*.' " *Id*. (emphasis added). Plaintiffs make much of the Supreme Court's use of the term "for instance" to advance their claim that the exemption is not limited to only those engaged in the transportations *of goods* through interstate commerce, such as seamen and railroad workers. They argue that the exclusion should be broadly applied to all transportation workers engaged in interstate commerce, whether or not they are carrying commercial goods.

This Court disagrees. Following the canon "ejusdem generis," general words that follow specific words in statutory enumeration should be construed to embrace only objects similar in nature to those objects enumerated by preceding specific words. *Circuit City Stores, Inc* 532 U.S. at 114-15 (citations omitted). Thus, the exclusionary clause of § 1 of the Arbitration Act should be narrowly construed to apply to employment contracts of seamen, railroad workers, and any other class of workers actually engaged in the movement of goods in interstate commerce in the same way that seamen and railroad workers are. *See Kowalewski v. Samadarov*, 590 F. Supp. 2d 477, 481 (S.D.N.Y. 2008) (citing *Rojas v. TK Commc'ns,* 87 F.3d 745, 748 (5th Cir.1996)). Here, Plaintiffs were not involved in the transportation of goods as railroad workers and seamen are, but rather, they provided ground transportation to airport passengers. Accordingly, the transportation work exclusion of the FAA is inapplicable to Plaintiffs.

4. **Vindicating Plaintiffs' Rights**

Plaintiffs argue that the UFAS does not allow them to vindicate their statutory rights. Courts should not compel arbitration if a plaintiff cannot effectively vindicate his or her statutory rights in the arbitral forum. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). However, the plaintiff bears the burden of showing that the terms of the arbitration agreement would preclude them from effectively vindicating their statutory rights. *Id.* This burden is a substantial one and cannot be satisfied by a mere listing of ways that the arbitration proceeding will differ from a court proceeding or by speculation about difficulties that might arise in arbitration. *Id.* Plaintiffs aver that the UFA denies them of their ability to vindicate their statutory rights because of four provisions: the fee splitting provision, the prohibition on class actions, the provision limiting damages, and the provision truncating the statute of limitations for claims brought under the UFA.

### a) Fee Splitting Provision

Fee splitting can render an arbitration agreement unenforceable where fees and costs are so prohibitively expensive as to deter arbitration. *See Green Tree*, 531 U.S. at 90-91; *Bradford v. Rockwell Semiconductor Systems, Inc.* 238 F.3d 549, 553-54 (4th Cir. 2001). Courts must inquire whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation. This is a case-by-case analysis that focuses upon the claimant's ability to pay the arbitration costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims. *Bradford*, 238 at 556.

In this case, the UFA fee-splitting provision states:

The parties shall bare their own costs including without limitation attorney's fees, and shall each bear one-half (1/2) of the fees and costs of the arbitrator.

According to the Plaintiffs, if the arbitration agreement is enforced, Plaintiffs could be responsible for covering administration fees to the American Arbitration Association, fees to the arbitrator along with various other fees that could potentially add up to total of $5,600. Plaintiffs maintain that these costs are further exasperated if Plaintiffs are forced to arbitrate their claims individually under the prohibition of class action provision set forth in the UFA. Moreover, Plaintiffs project that the total amount of individual recovery will be far below potential fees incurred in arbitration.

According to the Plaintiffs, as a result of their misclassification as franchisees instead of employees, along with the various fees they paid Defendants in order to drive its vans, Plaintiffs regularly made less that federal minimum wage of $7.25 per hour. (Doc. Nos. 23, 32). Plaintiffs' 2009 Individual Income Tax Returns demonstrate an inability to pay arbitration fees. Tax returns reflect a net loss of income for Plaintiff Kevin Gadson and Plaintiff Okieriete Enajekpo. (Doc. No. 32). Plaintiff Same Muriithi's adjusted gross income was less than $6,000. *Id.* Moreover, according to Plaintiffs, the fee-splitting provision has already proved to deter Plaintiff Muriithi from resolving his commercial dispute under the lease agreement for his SuperShuttle van. *Id.* Plaintiffs contend that due to his inability to cover the costs of an arbitrator, he was unable to adjudicate his case. (Doc. No. 32).

Defendants argue that Plaintiffs' projections regarding the costs of arbitration are speculative at best. However, although the Plaintiff speculates as to the total costs of arbitration, even the conservative cost speculations that the Plaintiff offers supports a strong likelihood that the Plaintiff will not be able to afford arbitration. The Court is required to determine the reasonableness of fee-splitting provisions on a *case-by-case* analysis. In the instant case, Plaintiffs have made a sufficient showing based on their individual salaries that fee-splitting

would be so prohibitively expensive as to deter arbitration. For that reason, the fee-splitting provision of arbitration agreement is unenforceable.

### b) Prohibition on Class Actions

Plaintiffs aver that the UFA is unconscionable because it prohibits them from vindicating their statutory rights though its prohibition on class actions.

The UFA states:

> The parties acknowledge that their relationship is unique and that there are and will be differences from the relationships City Licensee may have with other franchisees or licensees. Therefore, any arbitration, suit, action, or other legal proceeding shall be conducted and resolved on an individual basis only and on a class-wide, multiple plaintiff, consolidated or similar basis. (Doc. No. 32).

Class action relief provides a means to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. *Amchem Prods. Inc, v. Windsor*, 521 U.S. 591 (1997). While provisions that relinquish this important right do not render an arbitration agreement *per se* unconscionable, as is the case in the fee-splitting provisions, the Fourth Circuit reviews prohibition on class action on a case-by-case analysis. *Adkins v. Labor Read, Inc.* 303 F.3d at 502-03; *Schultz v. AT &T Wireless Servs*., 376 F. Supp. 2d 685, 690 (N.D. W. Va. 2005) (noting "the Fourth Circuit has not found that class action waivers render an arbitration clause unconscionable per se, and instead has considered the surrounding circumstances in each case.") In *Adkins*, the Fourth Circuit noted that "it is certainly possible that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal rights in the arbitral forum." 303 F.3d at 502. (internal quotations omitted).

Plaintiffs aver that the UFA'a prohibition on class actions prevents them from vindicating their statutory rights because "the realistic alternative to a class action is not multiple arbitration

proceedings, but zero individual suits. The cost of each individual arbitration has the potential to far exceed the value of any recovery." (Doc. No. 32, at 30). In *Jones v. DirectTV*, *Inc.* 381 F.Appx. 895, 896 (11th Cir. 2010), the Eleventh Circuit affirmed the district court's ruling, which found the arbitration clause to be unenforceable because of the class prohibition waivers in the agreement Referencing its opinion in *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007), the Court stated, "We ruled that the waiver of a class action in the Comcast contract was unconscionable because it undermined a public policy favoring the pursuit of small-value claims to deter companies from misconduct and discouraged arbitration by consumers who sought small judgments, but bore significant costs and would otherwise experience difficulty obtaining representation." *Jones,* 381 Fed.Appx. at 896.

Applying the same facts used in the analysis of the fee-splitting provision, it appears to the Court that prohibiting the Plaintiffs from proceeding collectively would prevent them from fully vindicating their statutory rights. The Court agrees with the Plaintiffs' argument that as class actions are prohibited by the UFA, the realistic alternative would be that no individual suits are brought given that the costs of each individual arbitration has the potential to exceed any recovery. Thus, the Court finds that as the UFA prohibits Plaintiffs from proceeding through a class action, enforcing the fee-splitting provision upon the individual Plaintiffs renders arbitration prohibitively expensive.

### c) Truncating the Statute of Limitations

Plaintiffs aver that the UFA's provision limiting the statute of limitations for all claims arising under the agreement to one year operates to prevent the Plaintiffs from vindicating their statutory rights. As a general rule, statutory limitations periods may be shortened by agreement, so long as the limitations period is not unreasonable. *In re Cotton Yarn Antitrust*

*Litigation*, 505 F.3d 274, 287 (4th Cir. 2007) (citing *Missouri, Kan., & Tex. Ry. Co. v. Harriman Bros.,* 227 U.S. 657, 672 (1913); *Atlantic Coast Line R. Co. v. Pope,* 119 F.2d 39, 44 (4th Cir.1941)).

Relying on the Fourth Circuit's decision in *Cotton Yarn*, Defendants argue that the one-year statutory limitation in the UFA is not unconscionable. 505 F. 3d at 287; (Doc. No. 33). However, *Cotton Yarn* is distinguishable from the facts in this case. In *Cotton Yarn*, the court was controlled by the language of the Clayton Act. 505 F.3d at 287 (concluding that there was no language in the Clayton Act that would prevent parties from agreeing contractually to a shortened limitations provision).

In this case, Plaintiffs bring claims under the Fair Labor Standards Act ("FSLA"). 29 U.S.C. § 255 (a). Under FLSA, the Ninth Circuit has held that forcing employees to comply with a strict one-year limitation period for employment-related statutory claims is oppressive in a mandatory arbitration context. *See Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1076 (9th Cir. 2007); *Ingle v. Circuit City Stores, Inc*. 328 F.3d 1165, 1175 (9th Cir. 2003); *Circuit City Stores, Inc. v. Mantor,* 335 F.3d 1101, 1107 (9th Cir. 2003); *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2007). Moreover, the Ninth Circuit has held that it was particularly concerned with limiting a "continuing violations" theory claim by employees. *See Davis,* 485 F. 3d at 1077.

Thus, based on the reasons stated above, this Court finds that the UFAs one-year statutory limitations period is substantively unconscionable because it imposes an unreasonably strict limitations period on an employee to arbitrate employment-related statutory claims.

5. **Severability**

The question of severability turns on whether the offending clause or clauses are merely "collateral" to the main purpose of the arbitration agreement, or whether the UFA is "permeated" by unconscionability. *See Davis*, 485 F. 3d at 1084. The Court has found three substantively unenforceable terms (1) the fee-splitting provision, (2) the prohibition of a class action suit, and (3) the one-year statutory limitation provision. It appears that the Parties' franchise agreement has been so permeated by substantively unconscionable provisions, that it cannot be remedied by severance. Although the UFA contains a severability clause, the Court deems such a measure unsuitable in the current case. The illegality of the fee splitting and the class action provision is such that attempting to sever these provisions would result in a near rewrite of the contract. Despite a "liberal federal policy favoring arbitration agreements," a court cannot rewrite the arbitration agreement for the parties. *Id.* (citing *Moses H. Cone Memorial Hospital,* 460 U.S. at 24)

Given the scope of procedural and substantive unconscionability, the arbitration clause is unenforceable. The Court notes that, "[t]here is no specific formula for analyzing substantive unconscionability; rather, it is a determination to be made in light of a variety of factors. . . while the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." *In re Checking Account Overdraft Litigation*, 734 F.Supp.2d 1279, 1284 (S.D.Fla. 2010) (internal quotations omitted). The Court finds that Plaintiffs have made a sufficient showing that the arbitration agreement contains several substantively unconscionable provisions in the form of the fee-splitting provision and the prohibition on class actions, as well as procedurally

unconscionable provisions in the form of the strict one year statute of limitations that the UFA imposes. Thus, Defendants Motion to Compel Arbitration is **DENIED.**

Because of these findings, the Court need not address the remaining arguments regarding the UFAs provisions regarding the limitations of damages or Defendants' sole discretion to waive provisions under the agreement. Having resolved the motion to compel arbitration, the Court next considers whether any of the plaintiffs' claims should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

### B. Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Generally, a complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Nevertheless, the Supreme Court has directed courts that "Rule 8 still requires a 'showing,'" of "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007). In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).

Normally, since the Plaintiffs in this case allege fraud, their claims would be subject to Fed.R.Civ.P. 9(b) which require that claimants plead fraud with particularity.[1] *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999). However, such

---

[1] Fed.R.Civ.P. 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

particularity cannot be met in a concealment case, because an omission "cannot be described in terms of the time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation." *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, (D.Md.,1997) (citing *Flynn v. Everything Yogurt,* 1993 WL 454355, at *9 (D.Md. Sept.14, 1993)). Thus, this Court has recognized that these particularity requirements are less strictly applied with respect to claims of fraud by concealment. *Id.*

1. **Statute of Limitations on all Claims**

Defendants argue that Plaintiffs' Amended Complaint should be dismissed to the extent that they are time-barred by the one-year statute of limitations contained in the UFAs. However, the Court has already discussed that it finds this limitations period unconscionable. Accordingly, the Court will not dismiss Plaintiffs' claims for this reason.

   a. **Plaintiff Enajekpo's claim**

Defendants aver that even if the statute of limitations in the UFA is not enforced, Plaintiff Enajekpo's Maryland Franchise Law claim is time-barred. Under the Maryland Franchise Law, a civil action "must be brought within 3 years after the grant of the franchise." Maryland Franchise Law, Md. Code Ann. § 14 - 227. Plaintiff Enajekpo was granted his franchise upon entering into the UFA on September 7, 2005. Am. Compl. ¶ 19. The Complaint against Defendants was filed nearly five years later on April 28, 2010. Plaintiffs' argument that equitable tolling should apply has no merit. Equitable tolling only applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action. *Moret v. Harvey*, 381 F.Supp.2d 458, 468 (D. Md. 2005) *(citing Mezu v. Morgan State Univ.,* 264 F.Supp.2d 292, 295 (D. Md. 2003) ; *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049 (4th Cir.1987)). Plaintiffs failed to allege that Defendants attempted to mislead Enajekpo

and that he reasonably relied on the misrepresentation by neglecting to file a timely claim. *See id.* Accordingly, Plaintiff Enajekpo's Maryland Franchise Law claim is time-barred and the Court **GRANTS** the Defendants' Motion to Dismiss Plaintiff Enajekpo's Maryland Franchise Law Claim.

2. **Maryland Franchise Act Claim**

Defendants argue that Plaintiffs have not pled their Maryland Franchise Law claim with sufficient particularity, under the mandates of Federal Rule of Civil Procedure, 9(b). Under the Maryland Franchise Act, a franchisor is civilly liable to the franchisee if the franchise is sold:

> By means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which they are made, not misleading, if the person who buys or is granted a franchise does not know the untruth or omission. Md. Code. Ann. § 14-227.

Plaintiffs' Complaint alleges that Defendants made false representations and omissions to the Plaintiffs prior to the time that Plaintiffs entered into their UFAs. Specifically, Plaintiffs claim that during the week-long trial periods in which Plaintiffs operated a SuperShuttle van in order to demonstrate the potential income they could earn as a franchisee, agents of the Defendants intentionally misled Plaintiffs and omitted material information regarding their earning potential. *See* Am. Compl. at ¶ 21. Defendants argue that "the Plaintiffs never aver who specifically made any alleged misrepresentation or omission, the specific content of the alleged representation, the specific time and place of the misrepresentations, or what was gained by the person making the alleged misrepresentation." (Doc. No. 28, at 27). The Complaint further alleges that in failing to withhold the numerous fees and costs that are withheld from the

revenues each primary driver earns for the Defendants, Defendants omitted facts regarding these costs and fees and induced plaintiffs into signing the UFAs by inflating the earning potential of a franchisee. (Doc. No. 32).

Having reviewed the Amended Complaint in this case, the Court finds that Plaintiffs' Maryland Franchise Law Claim is sufficiently pled. Thus, Defendants' Motion to Dismiss Claims under the Maryland Franchise Law is **DENIED.**

3. **Defendants SSI, SFC, Veolia, SEC and Veolia Environment**

Defendants argue that SSI, SFC, Veolia, SEC, and Veolia Environment have been improperly named as Defendants to this suit.[2] According to Defendants, Plaintiffs entered into the UFAs only with SEI, not with any of the other Defendants. There is no evidence from the pleading that Plaintiffs performed any actual work with SEC, SSI, SFC, Veolia and/or Veolia Environment, or that any of these entities controlled the terms of their UFAs. *See* Am. Compl.

Plaintiffs allege that there is a parent-subsidiary relationship between SSI, SFC, Veolia, and Veolia Environment, and hence they are "employers" pursuant to FLSA. (Doc. No. 32, at 45). Plaintiffs cite 29 C.F.R. 791.2(b)(3) for the proposition that parent-subsidiary relationships may fall within the definition of "employer" for purposes of FLSA. ( arguing that joint employers exist under FLSA "[w]here the employers are not completely dissociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, or is controlled by, or is under common control with the other employer." (Doc. No. 32).

Responding to Plaintiffs' averments, Defendants assert that to sufficiently plead joint liability, there must be *facts* that the parent controlled the terms and conditions of employment at

---

[2] It appears as though Defendant Shuttle Express Franchise Corporation (SFC), assuming that they are a recognized legal entity, has not been served as a party to this litigation.

its subsidiary on a regular basis. (Doc. No. 33, at 31) (citing *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 875 (D. Md. 2000) ("The mere fact of a parent-subsidiary relationship between co-defendants is not sufficient as a matter of law, to impute liability to the parent for the alleged discriminatory actions of its subsidiary.").

Additionally, Defendants argue that because the entity "SEC" does not exist, this Court lacks personal jurisdiction over it and thus must dismiss SEC as defendant on Fed. R. Civ. P. 12(b)(2) grounds as well. Plaintiffs do not respond to this argument. As the record provides sufficient evidence that SEC does not exist, the Court finds that it does not have personal jurisdiction over this entity, and thus, it will be **DISMISSED** from this case.

After a careful review of the Amended Complaint in this matter, the Court finds that Plaintiffs have failed to provide any facts to support their allegation that the defendants named above controlled any aspect of their employment. Moreover, none of these entities are even named in the UFAs. *Id.* With the exclusion of SEI, it does not appear that the Plaintiffs have alleged sufficient facts to demonstrate that any of the remaining Defendants had any influence over Plaintiffs' employment with SEI.[3] Accordingly, Defendants Motion to Dismiss Defendants SSI, SFC, SEC, Veolia, and Veolia Environment is **GRANTED.**

### III. CONCLUSION

As the Court found that the Motion to Compel Arbitration was unconscionable, the Court will deny the Motion to Compel Arbitration. Moreover, the Court will dismiss Plaintiff Enajekpo's Maryland Franchise Law claim, as this claim is time-barred. Additionally,

---

[3] Defendants note that there is no legal entity named Shuttle Express Corporation ("SEC"). Therefore, it appears as though this entity was improperly named in the complaint, and the proper Defendant to this action is Shuttle Express, Inc. ("SEI"). The Court directs that the parties confer and advise the Court within seven days from the date of the corresponding Order whether Shuttle Express, Inc. should be substituted for Shuttle Express Corporation as a party in this case. Additionally, the parties shall advise the Court whether Shuttle Express, Inc. will accept service of process in this matter. Upon receiving the requested information from the parties, the Court will issue a Scheduling Order for this case.

Defendants SEC, SSI, SFC, SEC, Veolia, and Veolia Environment will be dismissed from this matter. Plaintiffs' Maryland Franchise Law claim, FLSA claim, and Maryland Wage and Hour claim will remain against Defendant Shuttle Express Incorporated ("SEI"). For the foregoing reasons, the Court **DENIES** the Motion for to Compel Arbitration, and **GRANTS- in-PART** and **DENIES-in-PART** the Motion to Dismiss by Defendants. A separate Order will follow.


Date:  <u>March 30, 2011</u>                              <u>        /s/         </u>
                                                Alexander Williams, Jr.
                                                United States District Judge